# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH FERENCE,<br><br>Plaintiff,<br><br>vs.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG,<br><br>Defendant. | ELECTRONICALLY FILED<br><br>No. 2:22-cv-00797-MPK<br><br>Magistrate Judge Maureen P. Kelly<br><br>JURY TRIAL DEMANDED |

## REPLY BRIEF FURTHER SUPPORTING MOTION TO DISMISS

Kenneth Ference ("Plaintiff") argues that termination on the basis of sex, due to his homosexuality and canonically invalid same-sex marriage, is not religious discrimination. This is despite Plaintiff acknowledging via Roman Catholic Diocese of Greensburg's ("Diocese") onboarding forms that he could be terminated for contradicting and defying Catholic doctrine on homosexuality and marriage. Plaintiff cannot state a claim as a matter of law under Title VII against Diocese.

**A.     The Court Should Consider Plaintiff's Onboarding Documents**

Plaintiff improperly seeks to shield from scrutiny the very documents that created his employment relationship with Diocese and set the stage for his lawful termination. (ECF No. 13 pp. 7, 17; ECF Nos. 11-1, 11-2, 11-3, 11-4.) In his complaint, Plaintiff refers to "several standard employment forms" that he "had to complete" as "part of the new-hire orientation." (ECF No. 1 ¶¶ 7–8.) One such form was the "election to waive group medical insurance," which he completed on September 2, 2021. (Id. ¶ 11; ECF No. 11-4.) Plaintiff claims that Diocese learned of his same-sex marriage because Plaintiff disclosed that information on the "election to waive group medical insurance" form. (ECF No. 1 ¶ 26.) That apparently caused his termination. (Id. ¶¶ 25, 29–30.)

Plaintiff is the master of his complaint. But candor to the Court matters more. Of all the onboarding documents that Plaintiff "had to complete" to become a teacher at a religious school, he conveniently emphasizes the one he believes establishes his claim. (ECF No. 11-4; ECF No. 1 ¶ 25.) He mocks as "canned forms" those onboarding documents fatal to his suit. (ECF Nos. 11-1, 11-2, 11-3; ECF No. 13 p. 17.)

This is why the Third Circuit permits district courts to consider, at the motion to dismiss stage, documents that are "integral to or explicitly relied upon in the complaint . . . ." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citation omitted). Plaintiff cannot rationally deny that he had notice of those onboarding documents or that he used them to frame his complaint. Id.; (ECF No. 1 ¶¶ 7–8, 11, 25, 29–30; ECF Nos. 11-1, 11-2, 11-3, 11-4.) As stated in Burlington Coat Factory, "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." 114 F.3d at 1426.

The Court should consider all of Plaintiff's Diocesan onboarding documents (ECF Nos. 11-1, 11-2, 11-3, 11-4) in deciding the motion to dismiss. This would result in "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

**B.      Alexander v. Gardner-Denver Co. is Inapposite**

Plaintiff puzzlingly cites to the Supreme Court's decision in Alexander v. Gardner-Denver Co. and contends that Diocese cannot make him prospectively waive his Title VII rights. 415 U.S. 36, 51 (1974); (ECF No. 13 pp. 6, 17.) This is a straw man argument. Neither Diocese nor Plaintiff agreed, via Plaintiff's onboarding documents, that Plaintiff was trading his right to file a Title VII claim in exchange for employment as a Catholic school teacher. (ECF Nos. 11-1, 11-2, 11-3, 11-4.) Alexander holds that an

employee, via a collective bargaining agreement, cannot waive his individual right to file a Title VII suit. 415 U.S. at 51. Alexander is irrelevant here.

**C.     The Third Circuit's Decision in Little v. Wuerl Controls**

Despite the mandatory nature of the Third Circuit's ruling in Little v. Wuerl, 929 F.2d 944 (3d Cir. 1991), Plaintiff claims that Diocese's reliance on it is "unpersuasive." (ECF No. 13 pp. 5–6, 13.) Not so.

The Third Circuit framed the issue in Wuerl as follows: "whether Title VII applies to a Catholic school that discriminates against a non-Catholic because her conduct does not conform to Catholic mores." 929 F.2d at 945. The Wuerl court concluded that Title VII did not apply. Id. The plaintiff in Wuerl, a teacher in a Catholic school, was terminated because she entered into a canonically invalid marriage. Id. at 946. Plaintiff's same-sex marriage was also canonically invalid and purportedly caused his termination from his position as a Catholic school teacher. (ECF No. 1 ¶¶ 25–26, 29–30; ECF Nos. 11-1, 11-2.) Wuerl thus defeats Plaintiff's Title VII claim.

Religious discrimination—in the form of the application of Catholic doctrine on the sacrament of marriage—not sex discrimination, caused Plaintiff to lose his job. Wuerl recognized that "attempting to forbid religious discrimination against non-minister employees where the position involved has any religious significance is uniformly recognized as constitutionally suspect, if not forbidden." 929 F.2d at 948. The religious mission (their "*raison d'être*") and significance of Catholic schools, like the one Plaintiff used to teach at, is undeniable. Id.

In a feeble attempt to dodge Wuerl's case-ending effect, Plaintiff claims his termination was based on sex discrimination, not religious discrimination, and that Diocese is attempting to use its religious status as cover for sex discrimination. (ECF

3

No. 13 pp. 1–10.) If the Court accepted Plaintiff's argument at the motion-to-dismiss stage, the Parties would have to engage in discovery on whether Diocese terminated Plaintiff because he is a man that sexually prefers men or because Plaintiff's actions contradict Catholic doctrine on homosexuality and the sacrament of marriage. Plaintiff apparently believes that sex is distinct from religion under Title VII. In some scenarios, that may be true. But Plaintiff assumes that Diocese can be liable for releasing a teacher at a Catholic school for being a male married to another male despite that violating Catholic religious doctrine. Religion and sex, in this case, cannot be separated due to: (1) the undisputed religious nature of Plaintiff's Diocesan employer; and (2) the demand that this Court utilize the federal judiciary's coercive power to suppress Diocese's teaching ministry engaged in the spiritual formation of young Catholics.

This is why Wuerl cited to three cases in which plaintiffs unsuccessfully attempted to sue religious organizations for prohibited sex discrimination: EEOC v. Mississippi College, 626 F.2d 477 (5th Cir. 1980), cert. denied, 453 U.S. 912 (1981); Maguire v. Marquette Univ., 627 F. Supp. 1499 (E.D. Wis. 1986), aff'd in part, vacated in part, 814 F.2d 1213 (7th Cir. 1987); Feldstein v. Christian Science Monitor, 555 F. Supp. 974 (D. Mass. 1983). Wuerl, 929 F.2d at 948. The Third Circuit determined that scrutiny of such claims would force it "to determine what constitutes 'the official teachings, doctrine[,] or laws of the Roman Catholic Church' and whether plaintiff has 'rejected' them." Id. The Court would have to undertake the same perilous analysis here. But that would infringe upon the Diocese's Free Exercise rights and create excessive judicial entanglement with religion in violation of the Establishment Clause. Id. at 946–49.

Similar to Plaintiff here, the plaintiff in <u>Wuerl</u> argued that she was a Protestant Christian and that the parish did not discriminate against her on the basis of her religious denomination. <u>Wuerl</u>, 929 F.2d at 950; (ECF No. 13 pp. 1, 6, 16–17.) The Third Circuit in <u>Wuerl</u> squarely rejected that argument:

> Title VII's permission to employ persons 'of a particular religion' includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts. Thus, it does not violate Title VII's prohibition of religious discrimination for a parochial school to discharge a Catholic or a non-Catholic teacher who has publicly engaged in conduct regarded by the school as inconsistent with its religious principles.

929 F.2d at 951. <u>Wuerl</u> remains good law.

Title VII's prohibition of sex discrimination yields to the First Amendment when a religious employer terminates an employee for conduct that contradicts religious doctrine. Plaintiff's suit fails as a matter of law.

| **MEYER, DARRAGH, BUCKLER,** **BEBENEK & ECK, P.L.L.C.** | **BALL, MURREN & CONNELL, LLC** |
|---|---|
| /s/ Bernard P. Matthews, Jr., Esq. | /s/ Philip J. Murren, Esq. |
| **BERNARD P. MATTHEWS, JR., ESQ.** | **PHILIP J. MURREN, ESQ.** |
| PA. I.D. #54880 | PA. I.D. #21426 |
| bmatthews@mdbbe.com | bmc-law2@msn.com |
| **ALEXANDER W. BROWN, ESQ.** | **KATHERINE M. FITZ-PATRICK, ESQ.** |
| PA. I.D. #322661 | PA. I.D. #208863 |
| abrown@mdbbe.com | fitz-patrick@bmc-law.net |
| 40 North Pennsylvania Ave., Suite 410 | **DAVID R. DYE, ESQ.** |
| Greensburg, PA 15601 | PA I.D. #88665 |
| Telephone No.: (724) 836-4840 | dye@bmc-law.net |
| Fax No.: (724) 836-0532 | 2303 Market Street |
| *(Attorneys for Defendant)* | Camp Hill, PA 17011 |
| | Telephone No.: (717) 232-8731 |
| | Fax No.: (717) 232-2142 |
| | *(Attorneys for Defendant)* |