IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH FERENCE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG,<br><br>　　　　Defendant. | **ELECTRONICALLY FILED**<br><br>No. 2:22-cv-00797-NR-MPK<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly<br><br>JURY TRIAL DEMANDED |

**Defendant's Objections to Magistrate Judge's Report and Recommendation to Deny Defendant's Rule 12(b)(6) Motion**

**I.   Introduction**

This case cuts to the heart of our nation's guarantee of religious freedom. The Roman Catholic Diocese of Greensburg ("Diocese"), like Catholic dioceses across the country, insists that all teachers in its Catholic schools uphold basic Catholic teachings, including its millennia-old teaching on marriage. In accordance with this policy, the Diocese dismissed Kenneth Ference ("Mr. Ference"), a sixth-grade teacher at Aquinas Academy, for knowingly violating the essence of the Church's teaching on marriage. Mr. Ference now seeks to hold the Diocese liable under Title VII for requiring Catholic-school teachers to uphold rather than intentionally affront basic Catholic teaching.

But Title VII expressly allows the Diocese to make employment decisions on the basis of "religion"—which Title VII broadly defines to include not just association with a particular denomination, but "all aspects of religious observance and practice." There is no dispute that Mr. Ference's conduct—being married to a man via a canonically invalid marriage—contradicts Catholic doctrine.

The Diocese filed a Rule 12(b)(6) motion. Magistrate Judge Kelly's Report and Recommendation ("R&R") urges the Court to deny the Diocese's motion. The R&R contains several errors.

First, it misreads Title VII's religious exemption. According to the R&R, when a plaintiff claims sex discrimination against a religious employer and the employer asserts a religious basis for the employment decision, the case proceeds to discovery. Yet here, the Diocese's allegedly sex-based motive and its indisputably religious motive are identical—Mr. Ference's same-sex relationship is irreconcilable with his role as a spiritual exemplar in a teaching ministry of the Church. Under these circumstances, the relevant legal question for judicial resolution is not a factual dispute over why the Diocese took the action it took, but whether that action is prohibited by Title VII. And under the plain terms of the statutory religious exemption, the answer is no—Title VII entitles the Diocese to maintain a community "composed solely of individuals faithful to [its] doctrinal practices," including the Catholic Church's millennia-old teachings on marriage. Little v. Wuerl, 929 F.2d 944, 951 (3d Cir. 1991). Mr. Ference's claim should be dismissed outright due to the Diocese's religious basis for his termination, as mandated by Third Circuit precedent.

Second, despite Mr. Ference alleging that he completed "standard" employment documents when the Diocese hired him (ECF No. 1 ¶ 7), the R&R concludes that the Court cannot consider those documents at the Rule 12(b)(6) stage. Those employment documents are integral to Mr. Ference's complaint. This is because those documents establish the terms of Mr. Ference's employment, which Mr. Ference characterizes in his complaint as being a purely "secular" teacher within a parochial elementary school. The Diocese's onboarding documents instead show that Mr. Ference's teaching role was

ministerial in nature. Mr. Ference conveniently conceals the religious nature of the onboarding documents in his complaint. He instead emphasizes only the onboarding document in which he disclosed to the Diocese that he was married to a man. Third Circuit precedent permits the Court to consider Mr. Ference's other onboarding documents at the Rule 12(b)(6) stage.

The R&R's third and fourth errors were rejecting the Diocese's arguments that the church autonomy doctrine and ministerial exception barred Mr. Ference's claim. By disregarding Mr. Ference's onboarding contractual documents, the R&R failed to recognize the religious significance of Mr. Ference's position. This allowed the R&R to reject the religious autonomy doctrine and ministerial exception with minimal scrutiny. The church autonomy doctrine precludes claims against religious organizations for personnel decisions rooted in religious belief. As for the ministerial exception (itself a sub-category of the broader church autonomy doctrine), the onboarding documents unambiguously demonstrate that Mr. Ference's role as a parochial school teacher was ministerial in nature.

In addition, the R&R adopted without question Mr. Ference's conclusory statement that the Diocese hired him as a secular teacher with no religious role. Numerous Supreme Court decisions recognize that Catholic primary and secondary schools are an essential part of the Church itself, not some secular offshoot. Given the central role of the teacher as a primary means of expression of the Church's teaching and spiritual formation ministry, one cannot be a "secular" teacher within a Catholic elementary school. But under the R&R's erroneous logic, if a plaintiff alleges they were hired as a "secular" employee within a religious ministry, that plaintiff will be permitted to reach discovery.

Fifth and finally, the R&R rejected the Diocese's argument that the Religious Freedom Restoration Act ("RFRA") barred Mr. Ference's claim. According to the R&R, RFRA does not apply because the government is not a party to the case. Yet the government, i.e., the EEOC, issued a right to sue letter permitting Mr. Ference to pursue the case. Furthermore, Mr. Ference is using governmental power via this lawsuit to prosecute a sex discrimination claim that burdens the Diocese's sincerely held religious beliefs. Discovery is not needed before the Court decides to apply the RFRA's standards. The complaint's allegations show that the Diocese's decision to terminate Mr. Ference was protected by RFRA.

**II.   Objections**

   *A.   Mr. Ference's Title VII Suit Should be Dismissed Under Title VII's Religious Exemption and Third Circuit Precedent*

Taking Mr. Ference's allegations as true, this suit is nonetheless barred by Title VII's religious exemption. Under that exemption, Title VII "shall not apply" to a religious organization "with respect to the employment of individuals of a particular religion," 42 U.S.C. § 2000e-1(a). And the statute defines "religion" to include not just religious "belief" but "all aspects of religious observance and practice." Id. § 2000e(j); see also 42 U.S.C. § 2000e-2(e). Here, Mr. Ference alleges he was terminated because he entered a same-sex relationship—conduct that is undisputedly inconsistent with the observance and practice of Catholic teaching prohibiting same-sex marriage. (ECF No. 1 ¶ 25; ECF No. 13 pp. 1, 12.) The exemption therefore applies.

In concluding otherwise, the R&R reasoned that the facts alleged by Mr. Ference, if proven, "would permit a jury to conclude that the Diocese's decision to terminate [him] was not based on his religious preferences, but on his sexual orientation." (ECF No. 20

4

pp. 4–7.) This implies that rather than Mr. Ference's complaint being dismissed at the pleadings stage, the standard McDonnell Douglas framework will apply.

But the purpose of McDonnell Douglas is to provide a framework for adjudicating whether the "legitimate reasons offered by the defendant" were its "true reasons," or whether they instead "were a pretext for discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515–16 (1993) (internal quotation marks omitted). That framework has no application where the reason for the decision is undisputed, and the only question is whether it violates Title VII. Here, all agree on the reason Mr. Ference was terminated— it was because he was in a same-sex marriage, which constitutes an undisputed rejection of Catholic doctrine. Even if that decision would otherwise constitute sex discrimination (as Mr. Ference alleges), it is expressly protected under the terms of Title VII's express religious exemption—requiring dismissal of Mr. Ference's complaint. To hold otherwise is to rule that Title VII was clearly and affirmatively intended by Congress to outlaw the practice by the Church of the Catholic faith's beliefs concerning marriage. Similarly, to adopt Mr. Ference's (and the R&R's) view of the law is to decide that Congress clearly and affirmatively intended Title VII to be utilized in order to coerce religious institutions into employing individuals in religiously sensitive positions of trust when those individuals intentionally defy and deny the doctrinal integrity of the Church's teaching ministry.

Third Circuit precedent demonstrates the proper interpretation of Title VII. In Wuerl, a Catholic parish declined to renew an elementary teacher's contract after she entered a canonically invalid marriage. 929 F.2d at 945–46. The plaintiff sued under Title VII, but the Third Circuit held her claims were barred under Title VII's religious exemption. The court explained that "Congress intended the explicit exemptions to Title VII to enable religious organizations to create and maintain communities composed

solely of individuals faithful to their doctrinal practices, whether or not every individual plays a direct role in the organization's 'religious activities.'" Id. at 951. Thus, the exemption's "permission to employ persons 'of a particular religion' includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts." Id.

Wuerl is dispositive here: "it does not violate Title VII" for the Diocese "to discharge a . . . teacher"—like Mr. Ference—"who has publicly engaged in conduct regarded by the school as inconsistent with its religious principles." Id. ("[W]e interpret the exemption broadly[.]"). Rather, the Diocese is permitted "to employ only persons whose beliefs and conduct are consistent" with Church teaching on same-sex marriage. Id.

While the plaintiff in Wuerl brought a Title VII religious discrimination claim instead of a sex discrimination claim, the same result follows here. Id. at 945. For one thing, the exemption on its face says that "[t]his subchapter"—i.e., all of Title VII—"shall not apply" when the religious exemption's requirements are met. 42 U.S.C. § 2000e-1(a). Moreover, the Third Circuit has already applied Wuerl's understanding of the religious exemption to bar a sex discrimination claim, recognizing that such claims (like claims of religious discrimination) can "jeopardize[]" a religious organization's ability to maintain a community of faithful adherents. Curay-Cramer v. Ursuline Academy of Wilmington, Del., 450 F.3d 130, 137—41 (3d Cir. 2006). As here (and in Wuerl), Curay-Cramer involved a teacher at a Catholic school, and as here it arose at the Rule 12(b)(6) stage. Id. at 133; see also Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc., 41 F.4th 931, 947 (7th Cir. 2022) (Easterbrook, J., concurring) ("The Diocese is carrying out its

theological views; that its adherence to Roman Catholic doctrine produces a form of sex discrimination does not make the action less religiously based.").

As instructed by the Supreme Court's decision in NLRB v. Catholic Bishop of Chicago, 440 U.S. 490 (1979), Wuerl also recognized the constitutional pitfalls federal courts would face if they pried into whether a religious employer's purported religious-based employment decision was pretext for a different category of discrimination Title VII prohibits. 929 F.2d at 948–51. Wuerl warned federal courts not to engage in the very analysis adopted by the R&R. The R&R's analysis would invite this Court to dance with the same dilemma.

Petruska v. Gannon Univ., emphasized by the R&R, does not protect Mr. Ference's case from dismissal. 462 F.3d 294 (3d Cir. 2006). Petruska recognized that Title VII, by its terms, "'does not confer upon religious organizations the right to make those same decisions on the basis of race, sex, or national origin.'" Id. at 303 (quoting Rayburn v. Gen. Conf. of Seventh Day Adventists, 772 F.2d 1164, 1166 (4th Cir. 1985)). But this language does not overrule Curay-Cramer or impose a new, atextual limitation on the religious exemption's scope; it is simply a statement of the uncontroversial proposition that religious organizations are not exempt from Title VII when the exemption's terms are not met. In any event, Petruska nevertheless dismissed the plaintiff's Title VII sex discrimination claim because a fact finder would have had to decide whether Gannon University's decision to restructure was based on religious reasons or as cover for sex discrimination. 462 F.3d at 307–08. Petruska undercuts Mr. Ference's claim.

Geary v. Visitation of Blessed Virgin Mary Parish Sch. offers no help to Mr. Ference either. 7 F.3d 324 (3d Cir. 1993). The Geary court allowed a plaintiff to bring an age discrimination retaliation claim even after dismissing her claim that the ADEA prohibited

7

the religious institution that employed her from terminating her employment because she entered into a canonically invalid marriage. Id. at 325, 328–29. It was not disputed that the alleged retaliatory age discrimination in the form of the cancellation of insurance benefits following the assertion of an ADEA claim in Geary lacked a religious component. Id. at 328–29. There is no Catholic religious principle implicated by an employment decision based on age alone. But here, it is impossible to artificially distinguish whether the Diocese terminated Mr. Ference because of his sex due to his marriage with a man or for religious reasons because a same-sex marriage indisputably violates Catholic doctrine. (ECF No. 1 ¶ 25; ECF No. 13 pp. 1, 12.)

The Court should sustain the Diocese's objections to the R&R and grant its Rule 12(b)(6) motion with prejudice.

### B. The R&R Erred in Not Considering Mr. Ference's Diocesan Onboarding Documents

Nothing more than the complaint itself is needed to adjudicate the applicability of Title VII's religious exemptions. But with respect to the Diocese's other defenses, the R&R declined to consider the employment documents Mr. Ference completed in order to obtain his teaching position with the Diocese in addressing the Diocese's motion. That was error.

District courts can consider "undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). This rule prevents plaintiffs from shielding legally deficient claims from motions to dismiss "by failing to attach a dispositive document on which" they relied. Pension Ben. Guar. Corp., 998 F.2d at 1196. It is also, at best,

misleading for Mr. Ference to conceal the complete onboarding documents from the Court, especially when those complete documents were integral to his hiring and to the religious nature of the conditions to which he agreed, and will be part of the full record considered by this Court when deciding any subsequent dispositive motion.

The R&R concluded that "the four documents attached to the Diocese's brief in support of the Motion to Dismiss are neither integral to nor explicitly relied on in Mr. Ference's Complaint." (ECF No. 20 p. 3.) Those documents, according to the R&R, "raise factual matters in defense of Mr. Ference's claim that should be sorted out through discovery." (Id. p. 4.) But there is no factual dispute that Mr. Ference signed the Diocese's onboarding documents. (ECF Nos. 11-1, 11-2, 11-3, 11-4; No. 1 ¶¶ 7–8.) The "factual matter[]" to be "sorted out through discovery" seems to be whether Mr. Ference worked as a secular teacher in a Catholic school. (ECF No. 20 pp. 1, 4, 8–9, 11–12.) The R&R thus implicitly assumes that, as a matter of law, one can be a "secular" teacher in a Catholic elementary school. That assumption is wrong based on settled judicial precedent issued by the Nation's court of last resort.

Catholic elementary and secondary schools are not secular off-shoots of the Church; they are part of the Church. Lemon v. Kurtzman, 403 U.S. 602, 615–18, 620 (1971); Meek v. Pittenger, 421 U.S. 349, 364–66, 371 (1975); Tilton v. Richardson, 403 U.S. 672, 685–87 (1971); Aguilar v. Felton, 473 U.S. 402, 411–14 (1985); Grand Rapids Sch. Dist. v. Ball, 473 U.S. 373, 379 (1985); Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S. Ct. 2049, 2066 (2020); McCormick v. Hirsch, 460 F. Supp. 1337, 1352 (M.D. Pa. 1978). The "raison d'etre" of Catholic schools "is the propagation of a religious faith." Catholic Bishop of Chicago, 440 U.S. at 503. Mr. Ference's assertion that, as a sixth-grade teacher controlling a classroom in a Catholic elementary school, he was a

9

"secular employee" (ECF No. 1 ¶¶ 6, 16)—an absurd assertion the R&R adopted without question (ECF No. 20 pp. 1, 4, 8–9, 11–12)—contradicts decades of Supreme Court precedent.

Mr. Ference's unusual claim that he was a secular teacher within a Catholic elementary school justifies considering the employment forms he referred to in his complaint. Those were forms he "had to complete" as "part of the new-hire orientation." (ECF No. 1 ¶¶ 7–8.) Mr. Ference directs the Court's attention to the "election to waive group medical insurance" onboarding form he completed. (Id. ¶ 11; ECF No. 11-4.) This is because the Diocese learned of Mr. Ference's marriage to a man when he submitted that document. (ECF No. 1 ¶¶ 25–26, 29–30; ECF No. 11-4.) But Mr. Ference conveniently does not mention the other onboarding forms that unambiguously show the religious nature of his teaching position and the religious doctrines he agreed to follow. (ECF Nos. 11-1, 11-2, 11-3.) Surely Mr. Ference did not forget them.

It is understandable why Mr. Ference would pick and choose which employment documents to cite in his complaint and which to conceal. He wants to help rather than hurt his cause. But complete candor to the Court is more important than advocacy. To prevent plaintiffs like Mr. Ference from hiding dispositive documents from scrutiny at the motion to dismiss stage, the Court may consider documents that are "integral to or explicitly relied upon in the complaint . . . ." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citation omitted). The Third Circuit reasoned that "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." Id.

Mr. Ference's Title VII claim is based on the terms of his employment for the Diocese. Those terms, integral to his suit and imbued with religious doctrinal significance, are unambiguously shown in the Diocesan onboarding documents. (ECF Nos. 11-1, 11-2, 11-3, 11-4.) Mr. Ference cannot rationally deny that he had notice of the onboarding documents or that they are integral to his complaint. In re Burlington Coat Factory, 114 F.3d at 1426; (ECF No. 1 ¶¶ 7–8, 11, 25, 29–30; ECF Nos. 11-1, 11-2, 11-3, 11-4.) It would be unfair for the Court to overlook Mr. Ference's terms of employment with the Diocese by setting aside the documents that delineate those terms. Not considering those terms of employment would allow any similarly situated plaintiff to reach discovery by merely pleading that they are a secular employee of a religious institution, no matter how easily refuted that assertion may be.

The Court should sustain the Diocese's objections to the R&R, consider the onboarding forms attached to the Diocese's brief supporting its motion to dismiss, reject Mr. Ference's assertion that he was a merely secular employee, and grant the Diocese's Rule 12(b)(6) motion with prejudice.

   C.   *The R&R Erred by not Recommending the Dismissal of Mr. Ference's Title VII Sex Discrimination Claim via the Church Autonomy Doctrine*

Independent of the Title VII exemption, the fact that the Diocese's decision to terminate Mr. Ference is based on undisputed religious doctrine means his sex discrimination claim should also be dismissed with prejudice under the First Amendment. The church autonomy doctrine precludes claims challenging religious organizations' personnel decisions if "the alleged misconduct is 'rooted in religious belief.'" Bryce v. Episcopal Church in Diocese of Colorado, 289 F.3d 648, 657–58 (10th Cir. 2002) (quoting Wisconsin v. Yoder, 406 U.S. 205, 215 (1972)). The Religion Clauses

of the First Amendment "protect[] a religious group's right to shape its own faith and mission through its appointments" and "prohibit[] government involvement in such ecclesiastical decisions." Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171, 188–89 (2012); Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am., 344 U.S. 94, 116 (1952); Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709 (1976); Watson v. Jones, 80 U.S. 679, 733 (matters that concern church discipline or "the conformity of members of the church to the standard of morals required of them" are matters "strictly and purely ecclesiastical in its character . . . over which the civil courts exercise no jurisdiction.").

The R&R rejected the church autonomy doctrine because it assumed the truth of Mr. Ference's conclusory assertion that the Diocese hired him as a secular employee. (ECF No. 20 pp. 8–9.) That assertion is belied by Supreme Court precedent and the unambiguous terms of Mr. Ference's employment. See Section II(B). That assertion also confuses the broader church autonomy doctrine—which requires a religious rationale but does not turn on the employee's religious duties—with the ministerial exception—which turns on the employee's religious duties but does not require a religious rationale for an employment decision. See Bryce, 289 F.3d at 658 n.2 (finding ministerial exception inquiry "unnecessary," because the plaintiff's claims were foreclosed "under the broader church autonomy doctrine").

The R&R further claimed that the "church autonomy doctrine is an affirmative defense" that was "not appropriately raised at the motion to dismiss stage." (ECF No. 20 p. 9.) The Third Circuit, however, permits district courts to adjudicate affirmative defenses when they are apparent from the face of the complaint and attached documents. Guidotti v. Legal Helpers Debt Res., LLC, 716 F.3d 764, 773–74 (3d Cir. 2013); see also,

12

Curay-Cramer, 450 F.3d at 132–33, 142 (upholding dismissal of a Title VII sex discrimination claim on a 12(b)(6) motion).

The district court should apply the church autonomy doctrine and dismiss Mr. Ference's sex discrimination claim. It is impossible to state that the Diocese terminated Mr. Ference solely because of his sex when his marriage to a man violates Catholic doctrine. (ECF No. 1 ¶¶ 25, 30; ECF No. 13 pp. 1, 12.) The Court cannot divorce the religious basis for Mr. Ference's termination from the purported sexually discriminatory basis. (Id.)

If Mr. Ference's claim survives the motion to dismiss, under the reasoning of the R&R, the Court would have to examine whether the Diocese properly applied Catholic doctrine in terminating Mr. Ference. It is Mr. Ference's averments regarding the purported secular nature of his employment as a Catholic elementary school teacher that require such an inquiry. (ECF No. 1 ¶¶ 5–6, 15–16, 18, 22–23, 25.) Adjudicating his claim thus requires a delineation of where religion begins and ends within a parochial school. Catholic Bishop of Chicago, 440 U.S. at 503 ("It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions."). Federal courts are substantively barred from making such decisions under the church autonomy doctrine. Bryce, 289 F.3d at 657–58; Hosanna-Tabor, 565 U.S. at 188–89; Kedroff, 344 U.S. at 116; Serbian Eastern Orthodox Diocese, 426 U.S. at 709; Watson, 80 U.S. at 733.

The Court should sustain the Diocese's objections to the R&R and grant its Rule 12(b)(6) motion with prejudice.

13

D. *The R&R Erred by not Recommending the Dismissal of Mr. Ference's Title VII Sex Discrimination Claim via the Ministerial Exception*

The ministerial exception also independently requires the Court to dismiss Mr. Ference's claim with prejudice. The R&R chose not to apply the ministerial exception because: "no discovery has taken place"; the Diocese relies "on its description of Mr. Ference's . . . employment"; "Mr. Ference's allegations must be taken as true"; and those allegations "remove Mr. Ference from the scope of the ministerial exception . . . ." (ECF No. 20 pp. 11–12.) The Diocese does not merely rely on its own characterization of Mr. Ference's employment in asserting the ministerial exception; it relies upon the terms of employment Mr. Ference agreed to follow. (ECF Nos. 11-1, 11-2, 11-3, 11-4.) Those documents unambiguously demonstrate Mr. Ference's ministerial role. (Id.) The R&R's error in not considering the Diocesan onboarding documents led to its similarly erroneous rejection of the ministerial exception defense. See Section (II)(B).

To accept Mr. Ference's post hoc characterization of his employment over the Diocese's documented religious expectations would contradict settled precedent. As the Supreme Court explained in its most recent ministerial exception decision, in deciding whether Catholic school employees are ministers, "the schools' definition and explanation of their roles is important." Our Lady of Guadalupe, 140 S. Ct. at 2066. In Our Lady of Guadalupe, the Supreme Court held that two Catholic elementary school teachers were ministers because "their employment agreements and faculty handbooks specified in no uncertain terms that they were expected to help the schools carry out" their religious mission. Id. at 2066. The Court rejected the teachers' post hoc attempts to "diminish[] the [religious] significance of" their roles. Id. at 2068. The same result should follow here.

And indeed, as some Justices have put it, "the Religion Clauses require civil courts to defer to religious organizations' good-faith claims that a certain employee's position is 'ministerial.'" Our Lady of Guadalupe, 140 S. Ct. at 2069–70 (Thomas, J., concurring). "What qualifies as 'ministerial' is an inherently theological question, and thus one that cannot be resolved by civil courts through legal analysis." Id. at 2070.

Moreover, "it is impermissible for the government to contradict a church's determination of who can act as its ministers." Hosanna-Tabor, 565 U.S. at 185. "Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so," violates the Free Exercise and Establishment Clauses. Id. at 188–89, 194–95.

The Diocese's good-faith basis for classifying Mr. Ference as a minister is Mr. Ference's decision to sign documents acknowledging the ministerial nature of his teaching position. (ECF Nos. 11-1, 11-2, 11-3, 11-4.) Those diocesan onboarding documents contain language similar to what Justice Thomas cites in his concurring opinion in Our Lady of Guadalupe. 140 S. Ct. at 2071; (ECF Nos. 11-1, 11-2, 11-3, 11-4.) The First Amendment precludes interference with "a religious group's right to shape its own faith and mission through its appointments." Hosanna-Tabor, 565 U.S. at 188. It is the Diocese, not Mr. Ference's post-termination averments, this Court, or a jury, that authoritatively decides the scope of ministerial duties or the identities of ministers in Catholic schools. Id.

The Court should sustain the Diocese's objections to the R&R and grant its Rule 12(b)(6) motion with prejudice.

15

E.  *The R&R Erred by Failing to Apply the Religious Freedom Restoration Act to Protect the Diocese from Enforcement of Mr. Ference's Title VII Claim*

Because the RFRA protects the Diocese from the enforcement of Mr. Ference's sex discrimination claim, the Court should dismiss Mr. Ference's claim with prejudice. The R&R rejected applying RFRA because (1) the government is not a party and (2) lack of a factual record. (ECF No. 20 pp. 12–14.) Both reasons are incorrect.

First, the R&R repeats the mistake made by some prior federal decisions by concluding that RFRA applies only when the government is a party. (ECF No. 20 pp. 12–13.) Hankins v. Lyght permits RFRA to apply when the EEOC chooses not to enforce a federal employment discrimination statute. 441 F.3d 96, 103 (2d Cir. 2006). That's what occurred here. (ECF No. 1 ¶ 3.) While subsequent court decisions criticized Hankins, it remains good law in the Second Circuit.

RFRA defines "government" as "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States . . . ." 42 U.S.C. § 2000bb-2(1). The federal courts, federal agents, the Congress, and other people acting under color of law are the "government" for RFRA purposes. Id. All federal law and its implementation is covered by RFRA. 42 U.S.C. § 2000bb-3(a). The Supreme Court recognizes that a private party can act under color of law when it utilizes the federal judiciary's procedures in an unlawful manner. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 628 (1991) (holding that a private litigant cannot use preemptory challenges to exclude jurors on the basis of race and, when the private litigant so acts, is acting under color of law). The R&R failed to address Edmonson in its RFRA analysis. (ECF No. 20 pp. 12–14.) This is error because, per Edmonson, Mr. Ference is acting under color of law

16

to apply and enforce federal law in a manner that substantially burdens the Diocese's free exercise rights.

If Mr. Ference prevails and obtains a judgment against the Diocese, RFRA would shield the Diocese from that judgment. The imposition of civil liability is an exercise of state power. New York Times v. Sullivan, 376 U.S. 254, 265 (1964); Kreshik v. St. Nicholas Cathedral, 363 U.S. 190, 191 (1960). RFRA's language allows the Diocese to assert RFRA as a defense to "obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The appropriate relief could merely be an order precluding the Court from entering a judgment against the Diocese that could be enforced by federal agents. It is useless for the Court to permit Mr. Ference to pursue his Title VII suit when RFRA would not allow enforcement of a judgment against the Diocese.

Second, a factual record is not necessary for the Court to apply RFRA. It is undisputed that Mr. Ference's same-sex marriage violates Catholic religious principles. (ECF No. 1 ¶ 25; ECF Nos. 11-1, 11-2, 11-3, 11-4; ECF No. 13 pp. 1, 12.) If Mr. Ference succeeds in his Title VII sex discrimination suit, the Diocese will be held liable for terminating him despite the Diocese doing so to uphold its religious values. There is no compelling interest in forcing the Diocese to employ teachers at a parochial elementary school that openly contradict Catholic principles. 42 U.S.C. § 2000bb-1. While the government laudably seeks to eliminate sex discrimination in the workplace, the least restrictive means of doing so is not to force a religious organization to contradict its sincerely held religious beliefs. There are myriad other organizations that are non-religious and non-closely held to which Title VII's preclusion of sexual orientation discrimination apply. Moreover, Title VII's broad "carve outs" for large categories of secular employers "undermine" any argument that religious employers can be "forc[ed] .

17

. . to hire, retain, and accommodate employees who conduct themselves contrary to the employer's views regarding" same-sex marriage. Bear Creek Bible Church v. EEOC, 571 F. Supp. 3d 571, 611 n.22 (N.D. Tex. 2021).

The Court should sustain the Diocese's objections to the R&R and grant its Rule 12(b)(6) motion with prejudice.

## III. Conclusion

The R&R contains numerous errors that this Court must correct. The Third Circuit's decision in Wuerl controls and requires dismissal of Mr. Ference's Title VII claim. The Diocese's employment forms (onboarding documents), which Mr. Ference referenced in his complaint, should be considered in the Court's Rule 12(b)(6) analysis. Under the church autonomy doctrine, the Diocese's decision to terminate Mr. Ference as a parochial school teacher for violating Catholic doctrine must be respected under the Religion Clauses instead of scrutinized. As for the ministerial exception, the Diocese's decision to treat Mr. Ference (who expressly acknowledged the ministerial nature of his position) as a minister and fire him for not upholding Catholic ministerial standards is protected conduct under the First Amendment. Finally, RFRA defeats Mr. Ference's claim because he seeks to use Title VII as a blunt instrument to burden the Diocese's sincerely held religious beliefs.

The Court should sustain the Diocese's objections to the R&R and dismiss Mr. Ference's suit with prejudice.

Respectfully submitted,

| | |
|---|---|
| **MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.** | **BALL, MURREN & CONNELL, LLC** |
| /s/ Bernard P. Matthews, Jr., Esq. | /s/ Philip J. Murren, Esq. |
| **BERNARD P. MATTHEWS, JR., ESQ.** | **PHILIP J. MURREN, ESQ.** |
| PA. I.D. #54880 | PA. I.D. #21426 |
| bmatthews@mdbbe.com | bmc-law2@msn.com |
| **ALEXANDER W. BROWN, ESQ.** | **KATHERINE M. FITZ-PATRICK, ESQ.** |
| PA. I.D. #322661 | PA. I.D. #208863 |
| abrown@mdbbe.com | fitz-patrick@bmc-law.net |
| 40 North Pennsylvania Ave., Suite 410 | **DAVID R. DYE, ESQ.** |
| Greensburg, PA 15601 | PA I.D. 88665 |
| Telephone No.: (724) 836-4840 | dye@bmc-law.net |
| Fax No.: (724) 836-0532 | 2303 Market Street |
| *(Attorneys for Defendant)* | Camp Hill, PA 17011 |
| | Telephone No.: (717) 232-8731 |
| | Fax No.: (717) 232-2142 |
| | *(Attorneys for Defendant)* |