IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH FERENCE, | CIVIL ACTION NO. 2:22-cv-797 |
| Plaintiff, | |
| v. | |
| ROMAN CATHOLIC DIOCESE OF GREENSBURG | |
| Defendant. | |

**Response to Defendant's Objections to Judge Maureen Kelly's Report and Recommendation to Deny Defendant's Rule 12(b)(6) Motion**

**I.      Introduction**

This Court should adopt Judge Kelly's Report and Recommendation because the Complaint states a claim of sex discrimination under Title VII, which is not barred by any constitutional or statutory grounds.  In recommending the denial of the Roman Catholic Diocese of Greensburg's Motion, Judge Kelly applied the statutory text of Title VII and controlling legal precedent.  Contrasted with that approach, the Diocese asks this Court to engage in judicial activism to reach the Diocese's preferred conclusion.  In support of its arguments, the Diocese conjures up fears of court-sanctioned religious persecution, which distract from what really matters in this case—the law.

First, the plain text of Title VII, its legislative history, and controlling Third Circuit precedent hold that a religious organization cannot discriminate on the basis of sex.  When a religious organization asserts a religious justification for sex discrimination, its recourse is to look to the ministerial exception as a defense, not Title VII's narrow religious exceptions.  Unsupported concerns of religious persecution have no place in the analysis of Title VII's text.

Second, Mr. Ference is the master of his Complaint. The claim of sex discrimination asserted in the Complaint is not based on the extrinsic documents that the Diocese seeks to introduce. Instead, the extrinsic documents pertain to the Diocese's affirmative defenses, which does not justify their introduction when testing the legal sufficiency of the Complaint.

Third and fourth, the Diocese seeks to turn the standard of review for a motion to dismiss on its head. The Diocese asks this Court to accept its documents and its factual assertions that a Catholic school employee cannot possibly be in a secular position. As Judge Kelly recognized, Mr. Ference's factual allegations must be accepted as true, not the Diocese's. When those allegations are accepted as true, the Diocese's affirmative defenses under the church autonomy doctrine and ministerial exception must be denied at this stage.

Fifth, there is no support for the Diocese's RFRA argument, except for one highly criticized decision from a different circuit. Additionally, even if RFRA applies, it does not operate as a bar to Mr. Ference's claims due to the compelling government interest in preventing workplace discrimination. Also, the factual record will show that the application of Title VII is the least restrictive means of furthering that interest.

**II.     Response to Objections**

   A.     Title VII prohibits sex discrimination by employers.

When a religious organization discriminates on the basis of sex, it violates Title VII. "Title VII 'does not confer upon religious organizations the right to make…[employment] decisions on the basis of race, sex, or national origin.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 303 (3d Cir. 2006) (quoting *Rayburn v. Gen'l Conf. of Seventh Day Adventists*, 772 F.2d 1164, 1166 (4th Cir.1985)). Every other circuit to consider this issue agrees: Title VII's religious exemption "merely indicates that such institutions may choose to employ members of their own

religion without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination." *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996); *accord Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011); *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 173 (2d Cir. 1993); *EEOC v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1276 (9th Cir. 1982) *abrogation recognized by Alcazar v. Corp. of Cath. Archbishop of Seattle*, 598 F.3d 668 (9th Cir. 2010).

As detailed in the Complaint, the Diocese fired Mr. Ference because of his sexual orientation, which is sex discrimination under Title VII. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1743 (2020). The Diocese offers no rebuttal to Judge Kelly's conclusion that Mr. Ference states a claim of sex discrimination under *Bostock*. ECF No. 20 p. 4. The unambiguous holding of *Bostock* mandates that conclusion. "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991). The Diocese's motives are not relevant. The Diocese's explicit sex discrimination is what controls.

In support of its objections, the Diocese misinterprets Judge Kelly's R&R as implying that the *McDonnell Douglas* framework will apply in this matter. In referring to a jury's potential conclusion, Judge Kelly simply found that Mr. Ference's factual allegations, when viewed through the lens of the applicable standard of review, were sufficient to support a sex discrimination claim. ECF No. 20 p. 4. There was no discussion of direct versus indirect evidence.

Next, the Diocese describes the dire implications of the Court's adoption of the R&R. These arguments rely on emotion, not substance. The interpretation of Title VII is not impacted by such arguments because its text is clear, and the First Amendment is the appropriate source of law for ensuring that religious freedom is respected. *See Petruska*, 462 F.3d at 303 n.4.

Again falling back on *Little v. Wuerl*, the Diocese argues that its holding extends beyond religious discrimination claims, due to the following language in 42 U.S.C. § 2000e-1(a): "[t]his subchapter shall not apply." That argument omits the rest of the sentence, which says that this subchapter shall not apply only "with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a). Thus, the entire subchapter of Title VII does not apply to religious organizations with respect to discrimination because of an individual's religion but *does* apply with respect to discrimination "because of such individual's race, color, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The Diocese's reliance on *Curay-Cramer v. Ursuline Academy of Wilmington, Del.* in support of its Title VII argument fails to acknowledge that the Third Circuit decided the case on First Amendment grounds and not on the statutory text of Title VII. 450 F.3d 130, 137 (3d Cir. 2006). In *Curay-Cramer*, the plaintiff's allegations required the court to evaluate whether a church's doctrinal beliefs about abortion were equivalent to its doctrinal beliefs about the Iraq War. *Id*. at 139. That analysis is wholly inapplicable where an employment decision facially discriminates on the basis of race, color, sex, or national origin. *See Johnson Controls, Inc.*, 499 U.S. at 199.

The Diocese also cites Judge Easterbrook's solo concurrence in *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, which stems from the erroneous assumption that "[o]ne function of § 702(a) is to permit sex discrimination by religions that do not accept women

4

as priests." 41 F.4th 931, 946.  To the contrary, that function is already accomplished by the ministerial exception and by the exception for positions in which sex is a bona fide occupational qualification.  *See* 42 U.S.C. § 2000e-2(e)(1).  The only "function" of applying Section 702 to sex discrimination claims would be to authorize sex discrimination against non-ministerial employees, which is contrary to controlling Third Circuit and Supreme Court precedent.  *See* ECF No. 20 p. 11 ("The well-pleaded factual allegations therefore remove Mr. Ference from the scope of the ministerial exception, and he states a plausible claim for relief under Title VII.").

Despite the Diocese's assertions, *Petruska* does not undercut Mr. Ference's argument, and it was not decided on constitutional concerns related to a pretext analysis.  The Court dismissed Ms. Petruska's Title VII claims because she was in a ministerial position, unlike Mr. Ference.  462 F.3d at 307.  Finally, the Diocese's reference to *Geary v. Visitation of Blessed Virgin Mary Parish Sch.* is extraneous as the R&R did not rely upon that decision, 7 F.3d 324 (3d Cir. 1993).  Also, the Diocese fails to address that *Geary* expressly held that applying the applicable federal employment discrimination statute "to the lay faculty of a religious school does not present a significant risk of entanglement." *Id.* at 327.

   B.  The R&R correctly excluded the Diocese's extrinsic documents.

Mr. Ference's claim of sex discrimination is not based on the extrinsic documents that the Diocese seeks to introduce.  Mr. Ference states a claim of sex discrimination that relies solely upon the direct evidence statement of Dr. Maureen Marsteller, the Diocese's Superintendent of Catholic Schools.  ECF No. 1 ¶25.  Rather, the Diocese's documents support its affirmative defenses, which is not an appropriate justification to consider extrinsic documents at the motion to dismiss stage.  *See Mesta v. RBS Citizens N.A.*, 2014 WL 7272270, at *4 (W.D. Pa. Dec. 18,

2014) (holding that an extrinsic document could not be considered as it was only relevant to an affirmative defense.)

The Diocese's argument that it is impossible for a teacher at a Catholic school to hold a secular position, and therefore its documents must be admitted, does not survive minimal scrutiny. The plaintiffs in *Our Lady of Guadalupe Sch.* and *Hosanna-Tabor Lutheran Church Sch.* were teachers. 140 S. Ct. 2049, 2056 (2020)*;* 565 U.S. 171, 178 (2012). If teachers in Catholic schools are automatically ministers, as argued by the Diocese, then those Supreme Court decisions are superfluous, including the Supreme Court's holding that a fact-specific analysis is required in evaluating who is a minister. *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2063-64.

The Diocese's claims of concealment and lack of candor on the part of Mr. Ference have no legal support. "[T]he situation presented here is not the one the rule seeks to prevent, i.e., where the 'plaintiff is able to maintain a claim ... by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document it would be clear that the statement was not [actionable].'" *Mesta*, 2014 WL 7272270, at *3 n.1 (*quoting In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)*.* In this case, the Diocese told Mr. Ference that his sex was the reason for his termination. ECF No. 1 ¶25. The Diocese's documents do not change that outcome. Furthermore, the parties dispute the extent to which the Diocese's documents apply to Mr. Ference as the Complaint states that he was orally told to perform only secular duties. ECF No. 1 ¶16. As a result, "dismissal is not appropriate here because several antecedent questions of fact exist which must be resolved to determine whether those documents provide an affirmative defense to [Mr. Ference's] claims." *Mesta*, 2014 WL 7272270, at *4.

  C.  The church autonomy doctrine does not bar Mr. Ference's sex discrimination claim.

None of the Diocese's cases support its assertion that when a church makes a **personnel** decision based on religious doctrine, even if the employee is not a minister, the "broader church autonomy doctrine" applies. *Bryce v. Episcopal Church in the Diocese of Colo.* was a case about a religious organization's speech about its employment decisions, not the legality of the employment decisions themselves. 289 F.3d 648, 653 (10th Cir. 2002). The plaintiff employee in *Bryce* was a youth minister, who did not challenge the church's decision to terminate her employment, but instead attempted to challenge the church's speech about the termination decision as a form of sexual harassment. *Id*. at 651-53.

The complete sentence partially quoted from *Bryce* by the Diocese is as follows: "Bryce's claims are *based solely on communications* that are protected by the First Amendment under the broader church autonomy doctrine." *Id*. at 658 n.2 (emphasis added). That holding has no bearing on this case because Mr. Ference is not challenging the Diocese's speech about its religious beliefs; he is challenging the Diocese's actions in firing him. Additionally, the court made clear that "rooted in religious belief" does not exempt religious organizations from Title VII scrutiny, where the challenged "decision does not involve the church's spiritual functions." *Id*. at 657 (*quoting Rayburn,* 772 F.2d at 1171). As a youth minister, the plaintiff in *Bryce* was unquestionably involved in the church's spiritual functions, unlike Mr. Ference.

The Diocese also argues, incorrectly, that Judge Kelly erred in the R&R by not considering its affirmative defense at this stage of the pleadings. "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Unless the satisfaction of an affirmative defense is apparent from the face of

a Complaint, it is not appropriate to rule on the defense at the motion to dismiss stage.  *Id*. "Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses…" *Id.* at 248.  As Judge Kelly noted, there is a "factual determination" that must be made regarding the scope of Mr. Ference's employment, which prevents the application of the Diocese's affirmative defense at this stage.  ECF No. 20 p. 9.

Allowing this case to proceed will not require the Court to improperly examine the application of Catholic doctrine, as alleged by the Diocese.  The fact-specific analysis that the Diocese fears is simply that which has been endorsed by the Supreme Court.  *See Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2063-64.  A delineation of where religion begins and ends at a religious employer is the very purpose of the ministerial exception.  "[N]otwithstanding [non-ministerial employees'] apparent general employment obligation to be a visible witness to the Catholic Church's philosophy and principles, a court [can] adjudicate [their] claims without the entanglement that would follow were employment of clergy or religious leaders involved."  *Geary*, 7 F.3d at 331.

        D.       The Court should reject the Diocese's attempts to turn the ministerial exception into a rubber stamp affirmative defense.

As described above, the ministerial exception requires a fact-specific analysis.  *See Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2063-64.  The Diocese's argument that the Court must accept its characterization that Mr. Ference is a minister would render existing Supreme Court precedent meaningless.  "Take the question of the title 'minister.'  Simply giving an employee the title of 'minister' is not enough to justify the exception." *Id*. at 263.  Judge Kelly correctly found that this issue requires discovery.  ECF No. 20 pp. 11–12.  The Diocese's extrinsic documents, which were properly excluded, do not change that outcome.  If considered, those documents are relevant only to the extent that Mr. Ference acted in conformity with them.  *See Palmer v.*

8

*Liberty Univ., Inc.,* No. 6:20-CV-31, 2021 WL 6201273, at *8 (W.D. Va. Dec. 1, 2021), *appeal filed* ("The question is not what Palmer was supposed to do or encouraged to do, but what she actually did."); *Ostrander v. St. Columba Sch.*, No. 3:21-CV-00175-W-LL, 2021 WL 3054877, at *6 (S.D. Cal. July 20, 2021) (holding that language from an employment agreement was not relevant without evidence that the teacher actually followed that language).

Finally, it is important to note that no state actor made the Diocese hire Mr. Ference and limit him to secular instruction. The Diocese voluntarily hired Mr. Ference and then discriminated against him because of his religion by not entrusting him to teach its faith. ECF No. 1 ¶15. Because of the Diocese's own actions, it removed the First Amendment protections afforded to religious institutions. When the Diocese fired Mr. Ference, it stood in the shoes of a secular employer.

E.    RFRA does not provide a defense to Mr. Ference's claims.

RFRA's plain text makes clear that the statute does not apply to litigation between private parties. Furthermore, even if RFRA applies, Mr. Ference's sex discrimination claims survive. As the Sixth and Seventh Circuits have already recognized, RFRA does not apply to suits between private parties because "[t]he plain language [of the statute] is clear that RFRA only applies when the government is a party." *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir. 2015); *accord Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010).

The text of RFRA is unambiguous: RFRA provides that the "*[g]overnment* shall not substantially burden a person's exercise of religion" unless it "demonstrates" certain criteria, and that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding … against [the] *government*."

9

See 42 U.S.C. § 2000bb-1 (emphases added).  The statute also requires the "government" to "demonstrate[] that application of the burden to the person" survives strict scrutiny, and the statute defines "demonstrates" as "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C. §§ 2000bb-1(b), 2000bb-2(3). "It is self-evident that the government cannot meet its burden if it is not party to the suit." *Listecki*, 780 F.3d at 736; *accord McGill*, 617 F.3d at 410 ("Where, as here, the government is not a party, it cannot 'go[ ] forward' with any evidence.").

The Diocese attempts to contort RFRA's plain text by arguing that private parties suing under RFRA should be considered to be acting on behalf of the government.  However, a plaintiff's legal authorization to sue comes directly from Title VII itself, not from the EEOC's administrative action in providing a right-to-sue letter.  *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984) ("[S]uch a letter is not a 'jurisdictional' requirement in the constitutional sense, but rather a statutory requirement designed to give the administrative process an opportunity to proceed before a lawsuit is filed.").

In attempting to show error in the R&R, the Diocese cites *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).  Governmental action was found in *Edmonson* because of the unique confluence of government and private actors in the use of preemptory challenges, which inherently involve the "overt, significant assistance of the court." *Id*. at 624.  By contrast, the "private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action…" *Id*. at 622.

The Diocese also incorrectly claims that RFRA shields it from judgment, as the entering of judgment is governmental action.  In support of that argument, it cites *New York Times v. Sullivan*, 376 U.S. 254 (1964), which is a First Amendment case.  "As an initial matter, it is

important to clarify that RFRA does not operate under the First Amendment; therefore, cases in which the First Amendment has been permitted as a defense in suits between private parties are irrelevant." *Billard v. Charlotte Cath. High Sch.*, No. 3:17-CV-00011, 2021 WL 4037431, *15 (W.D.N.C. Sept. 3, 2021), *appeal filed.* "RFRA is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *City of Boerne v. Flores,* 521 U.S. 507, 532 (1997).

The Diocese's citation of *Kreshik v. Saint Nicholas Cathedral* is misplaced as that case concerned infringement of ecclesiastical government matters through the application of common law. 363 U.S. 190 (1960). Nowhere in the opinion does the Supreme Court hold that entering a judgment is governmental action for purposes of determining the applicability of a specific statutory remedy. Most importantly, RFRA does not apply to lawsuits where the government is not a party, as discussed above.

The lack of a compelling interest argument employed by the Diocese ignores the fact that "Title VII is an interest of the highest order, courts have held that Title VII properly applied to the secular employment decisions of a religious institution, such as those relating to a secular teacher in a church-approved school." *Rayburn,* 772 F.2d at 1169. Additionally, the factual record will show that the application of Title VII is the least restrict means of furthering that interest. With no factual record, this analysis is premature.

**III.   Conclusion**

Judge Kelly's Report and Recommendation should be adopted in its entirety.

Respectfully submitted,

/s/ *Nicholas W. Kennedy*
Nicholas W. Kennedy, Esquire
PA ID No. 317386

        Quatrini Law Group
        550 East Pittsburgh Street
        Greensburg, PA 15601
        Phone: (724) 837-0080
        Fax: (724) 837-1348
        nwk@qrlegal.com