IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH FERENCE, | ) |
| | ) |
| Plaintiff, | ) 2:22-cv-797-NR-MPK |
| | ) |
| v. | ) |
| | ) |
| ROMAN CATHOLIC DIOCESE OF GREENSBURG, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING IN PART REPORT & RECOMMENDATION (ECF 20)**

Before the Court is the Magistrate Judge's Report and Recommendation (ECF 20), recommending that the Court deny Defendant Roman Catholic Diocese of Greensburg's Motion to Dismiss (ECF 10). The Diocese filed objections to the R&R, challenging every aspect of the Magistrate Judge's recommendation. ECF 21.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must now conduct a *de novo* review of the entire R&R. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a 'de novo determination' … Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." (cleaned up)). The Court may also recommit the matter to the magistrate judge with instructions.

After carefully considering the record and upon a *de novo* review of the R&R, the Court will sustain the Diocese's objection that the Magistrate Judge should have considered Mr. Ference's employment documents in making her Recommendation. All remaining objections will be overruled. The Court will decline to adopt Sections II(C)(1) and (2) of the Report; rather, the Court hereby modifies those sections as

discussed below. The Court will adopt the remainder of the R&R as the opinion of the Court.

I. **The Magistrate Judge should have considered the employment documents attached to the Diocese's filings.**

In the R&R, the Magistrate Judge concluded that "the four documents attached to the Diocese's brief in support of the Motion to Dismiss are neither integral to nor explicitly relied on in Mr. Ference's Complaint." ECF 20, p. 3. As a result, she did not consider them and advised that the "exhibits proffered by the Diocese raise factual matters in defense of Mr. Ference's claim that should be sorted out through discovery." *Id.* at p. 4. The Diocese objects, and argues that "[i]t would be unfair for the Court to overlook Mr. Ference's terms of employment with the Diocese by setting aside the documents that delineate those terms." ECF 21, p. 11. The Diocese has a point.

The claims in the complaint are based on, at a fundamental level, Mr. Ference's employment at Aquinas Academy. The terms of that employment are established by the Professional Services Agreement that he signed. ECF 11-1. Indeed, in his complaint, Mr. Ference even references certain "standard employment forms" that he had to complete as "part of the new-hire orientation." ECF 1, ¶ 7. Those are the extra documents that the Diocese attached. Therefore, his employment contract, its attachments, and the other onboarding forms, are properly considered at the motion-to-dismiss stage because they are integral to the claims here. *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 316 (E.D. Pa. 2017) ("Since there is no question that the Employment Agreement is integral to Curtis' claims, and there is no dispute of its authenticity, we will consider it.").

The Court will therefore sustain the Diocese's objection and consider those documents in deciding whether to adopt the rest of the R&R.

**II.    The Court modifies Sections II(C)(1) and (C)(2) of the Report because it is too early to determine whether Title VII's exemptions for religious discrimination and the "church autonomy doctrine" apply to this action.**

The Diocese moved to dismiss Mr. Ference's Title VII sex-discrimination claim based on the religious exemptions set forth in Sections 702(a) and 703. According to the Diocese, under these exemptions, it may discriminate against an individual on any basis, "so long as the employment decision was rooted in religious belief." ECF 11, p. 11. And since Mr. Ference was terminated "because he entered a same-sex relationship—conduct that is undisputedly inconsistent with the observance and practice of Catholic teaching prohibiting same-sex marriage," his claim is barred. ECF 21, p. 4. In Sections II(C)(1) and (C)(2) of the Report, the Magistrate Judge held that's too broad an interpretation of the religious exemptions. ECF 20, pp. 4-7. After careful consideration, the Court respectfully declines to adopt those sections, as it would be premature to decide the applicability of these exemptions.

Section 702 states that Title VII "shall not apply … to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a). Section 703 states that for religious educational institutions, "it shall not be an unlawful employment practice … to hire and employ employees of a particular religion if such school … is, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school … is directed toward the propagation of a particular religion." 42 U.S.C. § 2000e-2(e). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an

employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e-1(j).

Initially, in determining whether to apply the religious exemptions, the Court must decide "whether an institution's purpose and character are primarily religious by weighing all significant religious and secular characteristics." *Garcia v. Salvation Army*, 918 F.3d 997, 1003 (9th Cir. 2019) (cleaned up). "It does not suffice that an institution be merely affiliated with a religious organization." *Id.* "Over the years, courts have looked to the following factors: (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participated in the management, for instance by having representative on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007) (citations omitted). "[N]ot all factors will be relevant in all cases, and the weight given to each factor may vary from case to case." *Id.*

The Diocese, as "[t]he entity seeking the benefit of the [religious exemptions,] bears the burden of proving it is exempt." *Garcia v. Salvation Army*, 918 F.3d 997, 1003 (9th Cir. 2019) (citation omitted). But in the R&R, the Magistrate Judge assumes that the factual prerequisites for entitlement to the religious exemptions in Title VII have been met and instead focuses her analysis on the legal question of the scope of the exemption. ECF 20, pp. 4-7.

There is nothing in the record, though, regarding the "religious organization" factors mentioned above. Further, there's nothing in the record regarding the specific doctrines and beliefs at issue and whether the employment decision was rooted in those religious doctrines and beliefs. Mr. Ference certainly doesn't plead any of these necessary facts in his complaint, and the arguments of the Diocese's counsel do not count.[1]

Similarly, the Diocese's argument that the "church autonomy doctrine" bars the claim is premature. That doctrine is predicated on a religious organization making personnel decisions "rooted in a religious belief." As with the Title VII exemptions, more factual development is needed on this defense—which the Magistrate Judge rightly noted is typically raised as an affirmative defense, not at the motion-to-dismiss stage. ECF 20, p. 9 ("[T]he church autonomy doctrine is an affirmative defense and thus not appropriately raised at the motion to dismiss stage." (cleaned up)).

For these reasons, it would be premature for the Court to consider the merits of the Diocese's arguments right now. The Diocese can raise its arguments on a more

---

[1] One might conclude that a Roman Catholic Diocese of Greensburg must, of course, be a "religious organization." But its not so much the Diocese but rather the Aquinas Academy it operates that is important here. And the complaint suggests a school that hires purely secular teachers, which could be relevant to the multi-factor analysis. Further, it is not safe to assume that the Diocese adheres to the Catholic Church's views on same-sex marriage. That issue is complicated. The Catholic Church doesn't appear to bless same-sex marriages, and considers homosexuality to be a sin; but Pope Frances has also made comments welcoming LGBTQ members to church. At this stage, there is nothing in the complaint that defines the religious belief at issue, and whether that religious belief was the reason that Mr. Ference was terminated. While the Court is mindful that it cannot fully wade into assessing the contours of genuine religious beliefs, there isn't here any pleading, correspondence, documentation, or testimony tying the Diocese's termination decision to *any* religious belief.

developed record at summary judgment.[2]

### III. The Court will adopt the rest of the R&R.

Having considered the Diocese's remaining objections, the Court agrees with the Magistrate Judge's analysis. Specifically, the Court finds it to be premature to consider the ministerial exception; and the Court finds that RFRA does not apply. Therefore, the Court will adopt these remaining sections of the R&R (*i.e.,* Sections II(C)(3) and (4)).

\* \* \*

**AND NOW**, this **8th day of May, 2023**, the Court sustains in part and overrules in part the Diocese's objections (ECF 21), and partially adopts the R&R (ECF 20) consistent with the modifications discussed above. The Diocese's motion to dismiss (ECF 10) is **DENIED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[2] Because the Court finds that additional factual development is necessary, it does not adopt the legal analysis and conclusions in the R&R as to the application of the Title VII exemptions and church autonomy doctrine.