**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH FERENCE,<br><br>Plaintiff,<br><br>vs.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG and AQUINAS ACADEMY,<br><br>Defendants. | **ELECTRONICALLY FILED**<br><br>No. 2:22-cv-00797-NR-MPK<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly<br><br>JURY TRIAL DEMANDED |

**Defendants' Objections to Magistrate Judge's Order Denying Motion to Bifurcate or Limit Discovery**

## I. Introduction

The Roman Catholic Diocese of Greensburg ("Diocese") and the recently added defendant Aquinas Academy ("Aquinas") object to the Magistrate's order denying a motion to bifurcate or limit discovery on Kenneth Ference's Title VII and PHRA claims. As this Court has already recognized, this case is not a routine employment discrimination matter. It involves important principles of religious liberty under the United States Constitution, not only at the ultimate stages of judicial resolution, but at the very threshold stages as well. Mr. Ference, who briefly taught at Aquinas and agreed to abide by Catholic principles in doing so, sued a religious organization which is entitled to assert a religious exemption under Title VII and the First Amendment. Federal courts routinely bifurcate or limit discovery in such cases, and the Magistrate erred by refusing to do so here.

The Diocese and Aquinas seek bifurcated discovery focusing on factual development of their affirmative defenses. The judicially-created bifurcation factors support that position, as evidenced by decisions of federal trial and appellate courts

across this country. Those decisions recognize that federal courts and plaintiffs must tread lightly when employment discrimination statutes and First Amendment principles collide. Significantly, those decisions occurred even before the Supreme Court issued its recent landmark First Amendment decision in 303 Creative v. Elenis, 2023 WL 4277208 (June 30, 2023). If Mr. Ference's claims, after completing factual discovery on the Diocese's and Aquinas's affirmative defenses, survive summary judgment, he could proceed to discovery on liability and damages. Bifurcation protects Mr. Ference's, the Diocese's, and Aquinas's right to engage in discovery without disregarding First Amendment principles and Title VII's religious exemption.

The Court, in the alternative, could limit Mr. Ference from conducting discovery into comparative employment decisions involving other Diocesan or Aquinas teachers. There is no factual dispute regarding why Mr. Ference was terminated. He was terminated because his same-sex marriage violates the tenets of the Catholic faith, which he agreed to abide by in his employment contract. There is thus no need for Mr. Ference to engage in McDonnell Douglas comparator discovery when liability will turn on pure issues of law. It is constitutionally inappropriate for federal courts or Mr. Ference to scrutinize the Diocese's and Aquinas's application of religious doctrine to him as compared to other employees.

The Court should sustain the Diocese's and Aquinas's objections to the order denying the motion to bifurcate or limit discovery.

## II. Relevant Background

Mr. Ference contends that the Diocese and Aquinas "terminated his employment" at Aquinas "due to his sexual orientation[] in violation of Title VII . . . ." (ECF No. 38 Prelim. Statement.) Specifically, he alleged that in September 2021, his employment was

terminated "because he is in a same-sex relationship." (Id. ¶ 25.) The decision to terminate, according to Mr. Ference, "was induced by their intent to discriminate" against him "based on his sexual orientation." (Id. ¶ 30.)

The Diocese indicated in its answer to Mr. Ference's original complaint that he "was terminated because his same sex civil union violated the teachings of the Catholic Church, his employment contract, and the Code of Pastoral Conduct he agreed to follow." (ECF No. 25 ¶ 25.) Furthermore, Mr. Ference's employment was terminated due to "legitimate and longstanding religious considerations of which [Mr. Ference] was most certainly aware . . . ." (Id. ¶ 30.) The Diocese raised numerous affirmative defenses to Mr. Ference's Title VII claim, including Aquinas Academy's primarily religious purpose and character and thus the applicability of Title VII's religious exemptions (42 U.S.C. §§ 2000e-1a, 2000e-2(e)(2)), as well as the church autonomy doctrine, ministerial exception, Religious Freedom Restoration Act (42 U.S.C. § 2000bb-1), First Amendment right of association, and First Amendment right to engage in lawful exercise of religion and speech activities. (Id. ¶¶ 49–72, 77–79.)

The Court denied the Diocese's motion to dismiss, noting that "more factual development is needed" on the Title VII and First Amendment "defense[s]." (ECF No. 24 at 5; ECF No. 20.) The Parties then met and conferred to create their Rule 26(f) report. (ECF No. 26.) In that report, the Parties disagreed as to the proper scope of discovery. Mr. Ference seeks discovery on his "employment and termination, whether Aquinas Academy is a religious organization for purposes of Title VII's religious exemption, and *comparative employment decisions made by [the Diocese] regarding lay teachers*." (Id. p. 2 ¶ 8 (emphasis added).) In contrast, the Diocese seeks limited or bifurcated discovery on "facts regarding the Title VII [r]eligious [e]xemption and whether

it applies to Aquinas Academy, including the ministerial exemption and the church autonomy doctrine." (Id. pp. 2–3, ¶ 8.) The Diocese then moved to bifurcate or limit discovery. (ECF No. 30.) The Magistrate denied the Diocese's motion. (ECF No. 35.)

## III. Bifurcation Standards

Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . . ." Fed. R. Civ. P. 42(b). The Third Circuit holds that district courts have "broad discretion" when deciding motions to bifurcate. Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972) (per curiam) (citing 9 Wright & Miller, Federal Practice and Procedure § 2392). Such a decision must occur "only as a result of an informed exercise of discretion on the merits of each case." Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).

Motions to bifurcate are decided by weighing multiple factors: "convenience, prejudice to the parties, expedition and economy of resources." Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984). These bifurcation factors are similarly enunciated by district courts: (1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the [moving] party would be prejudiced if bifurcation is not granted. Reading Tube Corp. v. Emp'rs Ins. of Wausau, 944 F. Supp. 398, 404 (E.D. Pa. 1996); Griffith v. Allstate Ins. Co., 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014). Legitimate purposes for granting a bifurcation motion include "avoiding a difficult question by first dealing with an easier, dispositive issue," Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001), or "avoid[ing] the risk of prejudice." Estate of Diaz v. City of Anaheim, 840 F.3d 592, 601 (9th Cir. 2016).

## IV. Argument for Sustaining Objections to Magistrate's Denial of Diocese's Motion to Bifurcate or Limit Discovery

### A. Bifurcating Discovery will Focus the Parties on Gathering Facts Regarding the Diocese's Dispositive Affirmative Defenses and the Applicable Factors Favor Bifurcation

The objections to the Magistrate's denial of the motion to bifurcate or limit discovery should be sustained not only because the bifurcation factors support the Diocese's position, but also because case law favors bifurcation.

Mr. Ference seeks to demarcate a purely secular sphere in which Title VII applies within Aquinas, regardless of its overriding religious teaching mission. To do this, he contends that his teaching role was "secular" while also acknowledging Aquinas's religious nature. (ECF No. 38 ¶¶ 15–24.) This is similar to the National Labor Relations Board's failed attempt to force Catholic schools, which provided secular and religious instruction, to recognize lay teachers' unions as government-certified collective bargaining agents. NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 491–94, 496 (1979).

The NLRB argued that its role would only be to "resolve factual issues such as whether an anti-union animus motivated" the schools' actions. Id. at 502. But the Catholic schools responded that "their challenged actions were mandated by their religious creeds." Id. The Supreme Court determined that

> [t]he resolution of such charges by the [NLRB], in many instances, will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission. It is not only the conclusions that may be reached by the [NLRB] which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.

Id. Ultimately, the Supreme Court held that the NLRB lacked jurisdiction over lay teachers in church-operated schools because exercising its statutory functions and powers could require the Court "to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses." Id. at 507. The Diocese cites Catholic Bishop of Chicago not to relitigate its motion to dismiss, but to instead alert this Court to the dangers posed by what Mr. Ference calls "basic Title VII liability and damages discovery." (ECF No. 35 p. 2.)

To avoid these dangers, district courts within the Third Circuit regularly bifurcate or limit discovery when First Amendment religious interests and federal anti-discrimination statutes conflict. See McIver v. Imani Christian Acad., Civ. No. 13-576, 2015 WL 5672631, at *1, *3 (W.D. Pa. Sept. 24, 2015) (limited discovery permitted on Title VII religious exemption); Sky R. v. Haddonfield Friends Sch., Civ. No. 14-5730, 2016 WL 1260061, at *6–11 (D.N.J. Mar. 31, 2016) (limited discovery permitted to determine if school is exempt under ADA's religious exemption); Fassl v. Our Lady of Perpetual Help Roman Catholic Ch., Civ. No. 05-CV-0404, 2005 WL 2455253, at *1 (E.D. Pa. Oct. 5, 2005) (limited discovery permitted on whether ministerial exception applied).

So have district courts in the Midwest. See Sterlinski v. Catholic Bishop of Chi., 2017 WL 1550186, at *5 (N.D. Ill. May 1, 2017) (limiting discovery to applicability of the ministerial exception); Fitzgerald v. Roncalli High Sch., 2021 WL 4539199, at *1 (S.D. Ind. Sept. 30, 2021) (stating that "courts regularly bifurcate discovery in ministerial cases"); Herzog v. St. Peter Lutheran Church, 884 F. Supp. 2d 668, 671 (N.D. Ill. 2012) (allowed limited discovery on the applicability of the ministerial exception); Collette v. Archdiocese of Chicago, 200 F. Supp. 3d 730, 735 (N.D. Ill. 2016) (scheduled status conference to establish a limited discovery and dispositive motion schedule on ministerial exception

defense); Berken v. St. John Paul II Catholic Acad., Case No. 2:21-cv-248, slip order at 3–5 (W.D. Mich. June 3, 2022) (granted motion to bifurcate discovery and permitted discovery only as to dispositive ministerial exception defense).

District courts on the east coast have reached similar results. See Fratello v. Roman Catholic Archdiocese of New York, 175 F. Supp. 3d 152, 161 (S.D.N.Y. 2016) (parties directed to engage in limited discovery on the ministerial exception); Yin v. Columbia Int'l Univ., 3:15-cv-3656, 2017 WL 4296428, at *6 (D.S.C. Sept. 28, 2017) (parties directed to develop scheduling order allowing for limited discovery on applicability of ministerial exception); Stabler v. Congregation Emanu-El of the City of New York, 16 Civ. 9601, 2017 WL 3268201, at *7 (S.D.N.Y. July 28, 2017) (parties directed to meet and confer on discovery and motion schedule "limited to the ministerial exception defense"). Even a district court on the west coast recently limited discovery to First Amendment affirmative defenses. See Behrend v. San Francisco Zen Ctr., Inc., Case No. 21-cv-01905, 2023 WL 1997919, at *4 (N.D. Cal. Feb. 14, 2023) (religious organization defendant ordered to file summary judgment motion on its First Amendment Religion Clauses affirmative defense after discovery on that issue).

A magistrate judge's denial of a motion to bifurcate discovery in cases like Mr. Ference's is grounds for reversal by a district court. This is demonstrated by the Southern District of Indiana's Fitzgerald decision. In Fitzgerald, a magistrate judge denied a motion to bifurcate discovery because "the litigation would proceed more expeditiously and efficiently if the parties proceeded with full discovery." 2021 WL 4539199, at *1. The district court nevertheless sustained the church defendants' objections to the order denying bifurcated discovery. Id. The Fitzgerald court recognized that "in ministerial cases," discovery is "regularly bifurcate[d]." Id. It further

acknowledged that "bifurcating discovery serves" the ministerial exception's objective of "avoid[ing] judicial entanglement in the internal organization of religious institutions." Id. Mr. Ference's case is on all fours with Fitzgerald. Discovery should be bifurcated.

Applying the recognized bifurcation factors also shows that bifurcation is appropriate. Beginning with factor four, the Diocese and Aquinas would be prejudiced if discovery is not bifurcated or limited because they would be forced to endure intrusive, wide-ranging, and high-cost probes into doctrine-related personnel decisions and application of church doctrine to various employment issues. Discovery regarding doctrine-driven personnel decisions is irrelevant to Mr. Ference's claims. More importantly, such discovery interferes with the Diocese's and Aquinas's constitutional rights. Catholic Bishop of Chicago, 440 U.S. at 502.

As to factor one, discovery on the case-dispositive affirmative defenses does not overflow into discovery on the precise circumstances of Mr. Ference's termination, personnel decisions as to other teachers, whether the Diocese or Aquinas will ultimately be liable to Mr. Ference, and Mr. Ference's purported entitlement to damages. Discovery on the Diocese's and Aquinas's affirmative defenses will assess, under a multi-factor approach, whether Aquinas Academy is a religious institution such that Title VII's religious exemption applies. Garcia v. Salvation Army, 918 F.3d 997, 1003 (9th Cir. 2019); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 226 (3d Cir. 2007). That discovery will also examine whether the ministerial exception applies by examining Mr. Ference's role in conjunction with the employment documents he signed. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171, 190–92 (2012); Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S.Ct. 2049, 2062–2066 (2020). Furthermore, discovery regarding how Catholic schools utilize teachers to communicate

or exemplify the faith is pertinent to First Amendment speech, association, and religious-exercise defenses. Discovery on these dispositive topics can occur without considering liability, damages, comparative personnel decisions, or the precise circumstances of Mr. Ference's termination.

The second factor also favors bifurcation. Different witnesses and documents will be needed to adjudicate the religious organization exemption, ministerial exception, church autonomy, and First Amendment issues as compared to determining the circumstances of Mr. Ference's termination and his purported damages. This is particularly true if the Court is inclined to allow Mr. Ference to compare the application of church doctrine to himself versus others. Mr. Ference will only be able to testify as to factual circumstances he witnessed during his short stint as an Aquinas teacher. The Diocese, however, has witnesses with knowledge of Aquinas's operations and the role of teachers at Aquinas in propagating and exemplifying the Catholic faith that are beyond Mr. Ference's personal knowledge.

On the third factor, Mr. Ference will not be prejudiced by bifurcating or limiting discovery. Mr. Ference's upfront discovery costs will be reduced if discovery is limited to facts relevant to the Title VII religious exemptions, the ministerial exception, church autonomy doctrine, and other First Amendment affirmative defenses. Broad discovery into other employment decisions, applications of religious doctrine, or damages would greatly increase Mr. Ference's time, money, and effort expended on this case. Mr. Ference is also not prejudiced by limiting or bifurcating discovery because, per the pleadings, whether the Diocese is liable to him is an issue of law. (ECF No. 38 ¶¶ 25, 30; ECF No. 25 ¶¶ 25, 30.) If Mr. Ference's suit survives summary judgment, he or other

witnesses could ultimately testify at trial or in depositions regarding his purported damages.

The order denying the motion to bifurcate or limit discovery focused on litigation efficiency. (ECF No. 35 pp. 3–4.) Efficiency is important; this is recognized in Rule 1 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1 (the Federal Rules of Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). But there is no meaningful difference between Mr. Ference's case and other cases involving purported religious institutions in which discovery was bifurcated or limited. See pp. 5–7 supra.

Bifurcating discovery can resolve cases like Mr. Ference's faster than if bifurcation is denied. Fitzgerald, 2021 WL 4539199, at *2. District courts within the Third Circuit, furthermore, limit discovery in cases with far less religious significance than Mr. Ference's matter. See Bogacz v. MTD Prods. Inc., 694 F. Supp. 2d 400, 402 (W.D. Pa. 2010) (limited discovery allowed as to validity of release); Payne v. Prevention Point, Civ. No. 20-4444, 2021 WL 2414606, at *2 (E.D. Pa. June 14, 2021) (limited discovery permitted as to whether unpaid intern is employee under Title VII); Darrington v. Milton Hershey Sch., Civ. No. 18-4265, 2019 WL 3304701, at *1 (E.D. Pa. July 23, 2019) (limited discovery ordered on arbitrability of plaintiffs' claims), rev'd on other grounds, 958 F.3d 188 (3d Cir. 2020). Bifurcating discovery would go far in securing a "just . . . determination" of this matter. See pp. 5–7 supra; Fed. R. Civ. P. 1.

Recent developments in First Amendment jurisprudence further bolsters bifurcating discovery. In 303 Creative LLC v. Elenis, the Supreme Court held that a business owner cannot be compelled to create speech (custom wedding websites

promoting same-sex marriages) that she does not believe in, even if she generally offers her commercial services to the public. 600 U.S. ____, Case No. 21-476, slip opinion at 7–8, 14–15, 17–18, 20–21, 25–32 (June 30, 2023). The 303 Creative decision aligns with prior Supreme Court precedent permitting the exclusion of individuals from events or institutions when those individuals' views did not conform with the views of the event organizers or institution. Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. Of Boston, Inc., 515 U.S. 557, 572–573 (1995); Boy Scouts of America v. Dale, 530 U.S. 640, 654, 656 (2000). If a business owner that generally offers her services to the public may refuse to communicate a message she does not agree with, then religious institutions should not be forced to employ (or penalized for not employing) an individual whose conduct (and therefore religious witness or example to impressionable youth) is inconsistent with the sincerely held religious beliefs that the religious institution wishes to communicate by word and example to its students. 303 Creative, slip opinion at 7–8, 14–15, 17–18, 20–21, 25–32.

303 Creative depicts yet another First Amendment affirmative defense that Mr. Ference (assuming that Title VII's religious exemption does not apply) must overcome to reach trial. Little v. Wuerl, 929 F.2d 944, 949 (3d Cir. 1991); Catholic Bishop of Chicago, 440 U.S. at 502. The definitive nature of 303 Creative's holding favors bifurcating discovery to focus on the Diocese's and Aquinas's affirmative defenses before entertaining summary judgment motions or discovery as to liability or damages. The Court should sustain these objections and grant the motion to bifurcate discovery.

### B. Limiting Discovery will Avoid Inquiry into the Diocese's and Aquinas's Application of Religious Doctrine

If the Court disfavors bifurcating discovery, it should at least limit discovery to prevent Mr. Ference from scrutinizing the application of religious doctrine to him as compared to other Diocesan teachers. There is no dispute Mr. Ference was terminated because he entered into a same-sex marriage. (ECF No. 38 ¶¶ 25, 30; ECF No. 25 ¶¶ 25, 30.) At issue, however, is whether that termination is permissible under Title VII's religious exemption or is protected conduct under one of many First Amendment doctrines. (Id.)

Because the facts of Mr. Ference's termination are undisputed, comparator-employee discovery does not make it more or less likely that the Diocese or Aquinas is liable and such discovery is inconsequential to the action. Fed. R. Evid. 401. The Federal Rules of Civil Procedure permit discovery into "any nonprivileged matter that is *relevant* to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Inquiry into "comparative employment decisions made by [the Diocese] regarding lay teachers" is irrelevant and thus fails to meet Rule 26(b)(1)'s threshold for permissible discovery. (ECF No. 26 p. 2 ¶ 8.)

This is not the "ordinary" Title VII case in which Mr. Ference's claim can only proceed if he establishes a prima facie case of employment discrimination via the McDonnell Douglas framework, where comparator discovery is necessary. See Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999). Instead, the lack of dispute over why Mr. Ference was terminated provides him with rare "direct evidence of discriminatory intent." Id. Thus, Mr. Ference's lawsuit fails only if his termination falls within Title VII's religious exemption or is considered protected conduct under the First Amendment.

Mr. Ference likely seeks comparator discovery to evaluate if the Diocese and Aquinas acted more harshly in sexual-orientation employment decisions as compared to non sexual-orientation decisions. In such an approach, Mr. Ference would argue that the Diocese and Aquinas regarded some sins or doctrinal violations as worse than others in an attempt to conclude that those institutions sexually discriminated against him. But the federal courts cannot consider such arguments or allow litigants to inquire into or scrutinize perceived inconsistency or lack of good faith in application of religious doctrine. Catholic Bishop of Chicago, 440 U.S. at 502; Askew v. Trs. Of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc., 684 F.3d 413, 418–19 (3d Cir. 2012); Lee v. Sixth Mount Zion Baptist Church of Pittsburgh, 903 F.3d 113, 121–22 (3d Cir. 2018). As this Court has already recognized: "the Court is mindful that it cannot fully wade into assessing the contours of genuine religious beliefs." (ECF No. 24 p. 5 n.1.) The Court should sustain the Diocese's objections and grant its motion to limit discovery.

## V. Conclusion

Federal courts routinely bifurcate or limit discovery in employment discrimination cases involving religious institutions. They do so because, even before the Supreme Court decided 303 Creative v. Elenis, they recognized the First Amendment implications of subjecting religious institutions to broad discovery that implicated religious doctrine or religious employment decisions. The applicable factors and case law favor bifurcating discovery, or at the very least, limiting discovery so that Mr. Ference and the Court do not pry into comparative application of religious doctrine to other employees.

The Court should sustain the Diocese's and Aquinas's objections to the order denying the motion to bifurcate or limit discovery.

Respectfully submitted,

**MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.**

/s/ Bernard P. Matthews, Jr., Esq.
**BERNARD P. MATTHEWS, JR., ESQ.**
PA. I.D. #54880
bmatthews@mdbbe.com
**ALEXANDER W. BROWN, ESQ.**
PA. I.D. #322661
abrown@mdbbe.com
40 North Pennsylvania Ave., Suite 410
Greensburg, PA 15601
Telephone No.: (724) 836-4840
Fax No.: (724) 836-0532
*(Attorneys for Defendants)*

**BALL, MURREN & CONNELL, LLC**

/s/ Philip J. Murren, Esq.
**PHILIP J. MURREN, ESQ.**
PA. I.D. #21426
bmc-law2@msn.com
**KATHERINE M. FITZ-PATRICK, ESQ.**
PA. I.D. #208863
fitz-patrick@bmc-law.net
**DAVID R. DYE, ESQ.**
PA I.D. 88665
dye@bmc-law.net
2303 Market Street
Camp Hill, PA 17011
Telephone No.: (717) 232-8731
Fax No.: (717) 232-2142
*(Attorneys for Defendants)*