**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH FERENCE,<br><br>Plaintiff,<br><br>vs.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG and AQUINAS ACADEMY,<br><br>Defendants. | **ELECTRONICALLY FILED**<br><br>No. 2:22-cv-00797-NR-MPK<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly<br><br>JURY TRIAL DEMANDED |

**Defendants' Reply Further Supporting Objections to Magistrate Judge's Order Denying Motion to Bifurcate or Limit Discovery**

## I. Introduction

Plaintiff Kenneth Ference ("Mr. Ference") brought a sex-discrimination claim against the Roman Catholic Diocese of Greensburg and Aquinas Academy (collectively "Defendants"). Mr. Ference was terminated because he entered into a same-sex marriage. He also signed employment documents indicating that he would conform with Catholic principles, including those regarding marriage and homosexual activity. Defendants thus contend that their termination of Mr. Ference was lawful based on their religious values.

Federal courts from coast to coast recognize that lawsuits like Mr. Ference's require special vigilance. Longstanding constitutional principles prevent courts or litigants from scrutinizing church employment decisions that are based upon religious doctrine and that inevitably involve adversaries' questioning or disregarding of religious doctrine. To uphold these principles and protect Defendants' exercise of First Amendment rights, they requested that discovery be bifurcated or limited. The Magistrate denied Defendants' motion and Defendants objected to that decision.

Mr. Ference wants the Court to not consider constitutional principles in deciding Defendants' motion to bifurcate or limit discovery. But such an approach ignores federal law and contradicts how numerous federal courts approach discovery in employment discrimination cases against religious entities. Mr. Ference also claims it is inconsistent for Defendants to move for bifurcated or limited discovery. It is not inconsistent for Defendants to seek multiple avenues to the same result: a fact discovery process that protects Defendants' First Amendment rights. Nor is it inconsistent for Defendants to request discovery on affirmative defenses beyond Title VII's religious exemptions, the church autonomy doctrine, and the ministerial exception; especially when a new Supreme Court decision, 303 Creative LLC v. Elenis, changed the First Amendment landscape.

Finally, Mr. Ference mischaracterizes the Court's footnote to its decision adopting in part and denying in part Defendants' objections to the Magistrate's report and recommendation to deny Defendants' motion to dismiss the complaint. The dicta in that footnote does not give Mr. Ference license to seek comparative discovery on Defendants' application of religious doctrine to other individuals. Federal courts are prohibited from evaluating purported inconsistencies in how religious organizations apply religious doctrine, or in allowing litigants to exploit purported inconsistencies by enlisting the judicial power of government in an effort to eradicate that doctrine. That same prohibition should apply to Mr. Ference, particularly since there is no dispute that he was terminated because he entered into a same-sex marriage. Whether his claims reach trial is a legal instead of a factual issue.

## II. Argument Further Supporting Objections to Magistrate's Denial of Diocese's Motion to Bifurcate or Limit Discovery

### A. The Court Should not Disregard Pertinent Constitutional Principles in Deciding Defendants' Objections

Mr. Ference contends that "Defendants' . . . arguments made in the Motion to Dismiss . . . have no bearing on questions regarding the scope and structure of discovery." (ECF No. 43 p. 1.) To Mr. Ference, this is a simple "motion to bifurcate" that should be "distilled to its essence[] by filtering out Defendants' constitutional law arguments . . . ." (Id. p. 2.) But the bifurcation analysis requires assessing "whether the []moving party would be prejudiced if bifurcation is not granted." Yohn v. Selective Ins. Co. of Am., No. 3:20-CV-565, 2020 U.S. Dist. LEXIS 201278, at *4 (M.D. Pa. Oct. 29, 2020). Such a prejudice assessment should include determining whether bifurcated discovery would protect Defendants' exercise of their First Amendment rights.

The Supreme Court recognizes that investigating religious organizations can "impinge on rights guaranteed by the Religion Clauses . . . ." NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 502 (1979). This is why numerous district courts within the Third Circuit and across this country limit or bifurcate discovery in cases implicating the First Amendment rights of religious organizations. (ECF No. 39 pp. 6–8.) By limiting or bifurcating discovery, those courts minimized scrutiny into religious organizations' religious affairs. In other words, those courts reduced the prejudice to religious organizations that face Title VII lawsuits. Properly analyzing the prejudice factor of a motion to bifurcate made in a Title VII case against religious organizations requires acknowledging the First Amendment principles applicable to such organizations, particularly where there is no dispute that the employment action in question was

religiously motivated. The Court should decline Mr. Ference's invitation to "filter[] out . . . constitutional law arguments" when deciding this motion. (ECF No. 43 p. 2.)

Mr. Ference's characterization of this motion as an attempt "to rekindle the denied Motion to Dismiss" is misplaced. (Id. p. 4.) Defendants acknowledge that the Court denied the motion to dismiss the complaint. (ECF Nos. 20, 24.) But the denial of a motion to dismiss should not influence whether discovery affecting religious organizations should be bifurcated or limited.

Mr. Ference cited only one magistrate's decision—on its surface—that supports his position on Defendants' motion to bifurcate or limit discovery: Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc., No. 1:19-cv-03153-RLY-TAB, 2019 U.S. Dist. LEXIS 218951, at *10 (S.D. Ind. Dec. 20, 2019). A magistrate judge in Starkey denied a motion to bifurcate discovery, which the church defendants appealed to the district court. (See Ex. A mooting order.) The district court mooted that appeal because of pending and already-decided dispositive motions. (Id.) But the same district judge that mooted the church defendants' appeal of a denied bifurcation motion in Starkey sustained an objection to that same magistrate judge's denial of a motion to bifurcate discovery in a simultaneously litigated case: Fitzgerald v. Roncalli High Sch., 2021 WL 4539199, at *1 (S.D. Ind. Sept. 30, 2021).

The district judge stated in Fitzgerald that "courts regularly bifurcate discovery in ministerial cases" and acknowledged that "bifurcating discovery serves" the ministerial exception's objective of "avoid[ing] judicial entanglement in the internal organization of religious institutions." Id. It is thus likely that, had the district judge in Starkey reached the bifurcation issue, he would have overruled the magistrate judge's decision to deny the church defendants' motion to bifurcate discovery. Starkey is unpersuasive as juxtaposed

against Fitzgerald and the numerous other district court decisions that bifurcated or limited discovery in cases against religious or purported religious organizations. (ECF No. 39 pp. 6–8.)

As Fitzgerald demonstrates, constitutional principles, such as "avoid[ing] judicial entanglement in the internal organization of religious institutions," are applicable in discovery. 2021 WL 4539199, at *1.

### B. Defendants' Requests to Bifurcate or Limit Discovery and Their Arguments Supporting Those Requests are not Inconsistent

Mr. Ference repeatedly chastises Defendants for their motion to bifurcate or limit discovery and arguments in support being inconsistent. (ECF No. 43 pp. 1–2, 5.) There is no inconsistency between seeking to bifurcate discovery into multiple phases or limiting Mr. Ference from conducting comparator discovery.[1] (ECF No. 39 pp. 1–2, 5–13.) Both methods seek to uphold the Defendants' First Amendment rights while being subjected to discovery in a Title VII case. There is nothing inconsistent about proposing two routes to a similar destination. Defendants are sensitive to the Court's interest in efficiency and thus requested, in the alternative to bifurcated discovery, that the Court simply limit Mr. Ference from engaging in comparator discovery. (ECF No. 39 pp. 1–2, 12–13.)

Mr. Ference also criticizes Defendants' decision "to add 'other First Amendment affirmative defenses' to the first phase of discovery" as "loosely defined bifurcation . . . ." (ECF No. 43 p. 2 (citing ECF No. 39 p. 9).) This is because Defendants only referred to

[1] Mr. Ference originally stated that he "pleaded the existence of direct evidence" that his termination stemmed from sex discrimination. (ECF No. 13 p. 4.) He also affirmed that he "is not relying on comparator evidence and is not challenging Defendant's strength of conviction in its doctrines. As such, the Court will not be dragged into that type of analysis as alleged by Defendant." (Id. p. 8.) Defendants' position on fact discovery stems from Mr. Ference's change in tactics to seek "comparator evidence." (Id.)

"discovery on [their] Title VII religious exemption, ministerial exception, and religious autonomy defenses" in their motion to bifurcate. (ECF No. 43 p. 2.) This "inconsistency" is a product of timing beyond Defendants' control.

Defendants filed their motion to bifurcate or limit discovery and supporting brief on June 26, 2023. (ECF Nos. 30–31.) Four days later, the Supreme Court decided 303 Creative LLC v. Elenis, a landmark First Amendment decision which held that a business owner cannot be compelled to create speech (custom wedding websites promoting same-sex marriages) that she does not believe in, even if she generally offers her commercial services to the public. 600 U.S. ____, Case No. 21-476, slip op. at 7–8, 14–15, 17–18, 20–21, 25–32 (June 30, 2023). Defendants naturally seek to utilize 303 Creative as yet another First Amendment argument that Mr. Ference must overcome. It is not Defendants' fault that the Supreme Court decided 303 Creative four days after they filed their motion to bifurcate or limit discovery. Id.; (ECF Nos. 30–31.) Mr. Ference's criticism of this "shift" stems from the danger 303 Creative poses to his case, rather than a genuine concern that the "shift" will "lead to a multitude of discovery disputes." (ECF No. 43 p. 2.)

### C. Bifurcating or Limiting Discovery is Warranted as the Dangers of Wading into Religious Doctrine are Already Surfacing

Mr. Ference's brief opposing Defendants' objections to the order denying their motion to bifurcate or limit discovery shows his desire to scrutinize how Defendants apply religious doctrine. Mr. Ference contends that "the employment decisions regarding other lay (non-Catholic) teachers are relevant to the multi-factor analysis" and cites the Court's May 8, 2023 decision adopting in part the Magistrate's report and recommendation as support for that proposition. (ECF No. 43 p. 5 (citing ECF No. 24 p. 5 n.1).) But that is

not what the Court said. Instead, the Court stated that Mr. Ference's "complaint suggests a school that hires purely secular teachers, which *could be relevant* to the multi-factor analysis." (ECF No. 24 p. 5 n.1 (emphasis added).) But the Court did not commit to the position that "employment decisions regarding other lay (non-Catholic) teachers are relevant" to the multi-factor analysis or ministerial exception defense. (Id.) Nor did the Court imply, in any way, that it would allow Mr. Ference to scrutinize the manner in which religious doctrine applied to his employment as compared to other Diocesan teachers. (Id.) To the contrary, the Court acknowledged that "it cannot fully wade into assessing the contours of genuine religious beliefs . . . ." (Id.)

Mr. Ference dismissed as "entirely speculative" Defendants' concerns that he would use "comparators to evaluate religious doctrine" since he "has not served any discovery requests in this matter." (ECF No. 43 p. 5.) That is hardly reassuring. He then states that "Defendants are relying on cases that relate to a final ruling on their affirmative defenses, not a limit on discovery based on relevancy." (Id.) That argument misses the mark. If federal court scrutiny into perceived inconsistency or lack of good faith in application of religious doctrine is prohibited on a "final ruling," there is no compelling reason why litigants should be allowed to embark on a fishing expedition into such issues. Catholic Bishop of Chicago, 440 U.S. at 502; Askew v. Trs. Of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc., 684 F.3d 413, 418–19 (3d Cir. 2012); Lee v. Sixth Mount Zion Baptist Church of Pittsburgh, 903 F.3d 113, 121–22 (3d Cir. 2018). The NLRB was not allowed to conduct such a fishing expedition in Catholic Bishop of Chicago. 440 U.S. at 502. Mr. Ference should not receive a privilege that the Supreme Court denied to a federal agency.

Finally, Mr. Ference wrongly characterizes as a "holding" the Court's footnote comparison of Catholic doctrine on marriage and homosexuality to Pope Francis's "comments welcoming LGBTQ members to church." (ECF No. 24 p. 24 n. 1); (ECF No. 43 pp. 5–6.) The Court's footnote is dicta and does not indicate that discovery into religious doctrine is needed. (ECF No. 24 p. 24 n. 1); (ECF No. 43 p. 6.) Yet Mr. Ference relies on that footnote 1 to justify prying into how Defendants apply Catholic religious doctrine. (ECF No. 24 p. 24 n. 1); (ECF No. 43 pp. 5–6.)

It may seem inconsistent to some that the leader of the Catholic Church could welcome LGBTQ individuals to church while prohibiting its schoolteachers from entering into same-sex marriages. Secular courts are supposed to resist scrutiny into such questions because there is no logical basis to determine whether answers to those questions are correct or cover for illegal employment discrimination. Indeed, the Court's footnote 1 relying on media reports of statements made by Pope Francis (outside of the complaint) but wholly misunderstanding the teachings of the Catholic faith, and Mr. Ference's misplaced reliance on that footnote to advance his argument against bifurcation of discovery, demonstrates exactly why courts should not allow discovery into such areas. Catholic Bishop of Chicago, 440 U.S. at 503 ("It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions."). Bifurcating or limiting discovery will protect the Defendants' First Amendment rights from being improperly scrutinized.

## III. Conclusion

The Court should sustain the Diocese's and Aquinas's objections to the order denying the motion to bifurcate or limit discovery.

Respectfully submitted,

**MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.**

/s/ Bernard P. Matthews, Jr., Esq.
**BERNARD P. MATTHEWS, JR., ESQ.**
PA. I.D. #54880
bmatthews@mdbbe.com
**ALEXANDER W. BROWN, ESQ.**
PA. I.D. #322661
abrown@mdbbe.com
40 North Pennsylvania Ave., Suite 410
Greensburg, PA 15601
Telephone No.: (724) 836-4840
Fax No.: (724) 836-0532
*(Attorneys for Defendants)*

**BALL, MURREN & CONNELL, LLC**

/s/ Philip J. Murren, Esq.
**PHILIP J. MURREN, ESQ.**
PA. I.D. #21426
bmc-law2@msn.com
**KATHERINE M. FITZ-PATRICK, ESQ.**
PA. I.D. #208863
fitz-patrick@bmc-law.net
**DAVID R. DYE, ESQ.**
PA. I.D. #88665
dye@bmc-law.net
2303 Market Street
Camp Hill, PA 17011
Telephone No.: (717) 232-8731
Fax No.: (717) 232-2142
*(Attorneys for Defendants)*