**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH FERENCE, | ELECTRONICALLY FILED |
| Plaintiff, | |
| vs. | No. 2:22-cv-00797-NR-MPK |
| ROMAN CATHOLIC DIOCESE OF GREENSBURG and AQUINAS ACADEMY, | District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly |
| Defendants. | JURY TRIAL DEMANDED |

**Brief Supporting Defendants' Rule 12(b)(6) Motion to Dismiss
First Amended Complaint**

**I.     Introduction**

The Roman Catholic Diocese of Greensburg ("Diocese") operates a private, Catholic religious school called Aquinas Academy ("Aquinas" and when referred collectively with Diocese, "Defendants"). Defendants hired Plaintiff Kenneth Ference ("Mr. Ference") to teach at Aquinas. Mr. Ference explicitly agreed, in becoming an Aquinas teacher, to live his life in word and deed in accordance with the undisputed Catholic view of marriage: that it is a union of man and woman. But Mr. Ference told neither Diocese nor Aquinas at the time they hired him that he was married to a man.

Defendants soon learned of Mr. Ference's same-sex marriage and terminated him because same-sex marriage contradicts the Catholic view of marriage. Mr. Ference then brought sex-discrimination claims under Title VII and the Pennsylvania Human Relations Act ("PHRA") against Defendants. The Court previously denied the Diocese's Rule 12(b)(6) motion to dismiss Mr. Ference's complaint because "it would be premature . . . to consider the merits of the Diocese's arguments on the Title VII religious exemption, church autonomy doctrine, and ministerial exception." (ECF No. 24 pp. 5–6.) Those

arguments could be raised "on a more developed record at summary judgment." (Id.) The common denominator between the Title VII religious exemption, church autonomy doctrine, and ministerial exception arguments is that they all involve assessing whether Defendants are religious employers and whether, as a teacher at a Catholic school, Mr. Ference's role was religious or secular. A need for more evidence on those topics motivated the Court's denial of the Diocese's motion to dismiss the complaint. (Id.)

The Supreme Court's recent decision in 303 Creative LLC v. Elenis confirmed that a single-member LLC business entity cannot be required to communicate viewpoints that its owner disagrees with. Thus, whether the organization is a religious entity and whether the viewpoint is a religious one does not control the First Amendment expressive association analysis. No further discovery is needed on the purported religious or secular characteristics of Defendants and Mr. Ference's Aquinas teaching role.

Mr. Ference agreed to uphold Catholic beliefs on marriage in word and deed to work as a teacher for Defendants. Defendants, under 303 Creative, can lawfully terminate Mr. Ference so that his views and actions on marriage do not dilute Defendants' First Amendment-protected view of marriage that Defendants wish to communicate to their private school students. The Court needs nothing more than Mr. Ference's first amended complaint and the employment documents Mr. Ference completed (and which the Court accepted for review (ECF No. 24 pp. 1–2)) to decide Defendants' motion to dismiss.

The Court should dismiss Mr. Ference's first amended complaint with prejudice.

## II.     Background

### A.     Pertinent Factual Allegations and Documents

Mr. Ference was hired by the Diocese in August 2021 to serve as a teacher at Aquinas.  (ECF No. 42 ¶¶ 6–8.)  He completed "several standard employment forms" as part of the hiring process.  (Id. ¶¶ 9–13.)  But he did not attach those documents to his first amended complaint.

Mr. Ference signed a professional services agreement with the Diocese so he could be hired as an Aquinas teacher.  (Ex. A.)  In that contract, Mr. Ference "recognize[d] the religious nature of the Catholic school and agree[d]" that the Diocese had the right to dismiss him "for immorality, scandal, or rejection of the official teaching, doctrine[,] or laws of the Roman Catholic Church[.]"  (Ex. A ¶ 1k.)  He additionally acknowledged that he could be immediately terminated for violating "the laws of the Church concerning marriage or espousal of beliefs contrary to the Catholic Church teaching and laws in the practice of abortion and homosexuality."  (Id. ¶ 1l.)

An appendix attached to the professional services agreement further described Mr. Ference's role as an Aquinas teacher for the Diocese.  (Ex. A App'x A.)  Diocesan teachers at Aquinas must "serve[] the school in this Catholic Ministry within instructional and extra-curricular capacities . . . ."  (Id.)  They further must be "willing to obtain Diocesan Catechetical Certification" and "supervise[] students in a Christ-like manner . . . ."  (Id.)  The requirements of being an Aquinas teacher include having "an understanding and acceptance of Catholic School Philosophy, goals, and objectives," abiding "by Diocesan and school policies and procedures," and following "the laws, doctrines, and teachings of the Catholic Church."  (Id.)  Mr. Ference accepted the Diocese's teacher job description and signed the appendix to the professional services agreement.  (Id.)

3

Mr. Ference also signed a form acknowledging his receipt of the Diocese's code of pastoral conduct. (Ex. B.) He, via that form, stated

> [i]n accord with my role as Church personnel, and in witness to the Gospel of Jesus Christ, I will conduct myself with integrity, acting in a manner that is consistent with the discipline and teachings of the Catholic Church. I will guide my behavior by civil and canon law, by the policies of the Diocese of Greensburg and by the Code of Pastoral Conduct by . . .
>
> 1. Respecting the rights of each person and advancing his or her welfare during the course of counseling, advising or spiritual direction.
>
> 2. Holding in the strictest confidence information disclosed during the course of counseling, advising or spiritual direction . . . .

(Id.) By executing that form, Mr. Ference acknowledged that he "carefully read, underst[ood], and hereby commit[ted] to conducting myself in accord with the Diocesan Code of Pastoral Conduct." (Id.)

Mr. Ference asserts that he only taught secular subjects at Aquinas and Diocese did not allow him to provide religious education to its students because he is Lutheran. (ECF No. 42 ¶¶ 16–18, 25–26.) According to Mr. Ference, he attended church services at Aquinas "only to monitor the students' behavior" as another teacher "took the lead at church services with any rituals and religious materials." (Id. ¶¶ 19–21.) The school day at Aquinas began and concluded with prayers over the public address system. (Id. ¶¶ 22–23.) But Mr. Ference claims he "had no role in facilitating th[o]se prayers." (Id. ¶ 24.)

Mr. Ference designated a "[f]riend" as his contingent beneficiary for the life insurance plan that Defendants provided. (Ex. C.) About a week later, Mr. Ference indicated that this "friend" was actually his husband by waiving health benefits. (Ex. D;

4

ECF No. 42 ¶ 13.) Defendants fired Mr. Ference "because he is in a same-sex relationship." (ECF No. 42 ¶¶ 27–28, 31–32, 35–36.)

### B. Pertinent Procedural History

Mr. Ference sought to exclude exhibits A–D from the Court's consideration of the Diocese's motion to dismiss his complaint. (ECF No. 13 pp. 7, 17.) The Magistrate Judge agreed with Mr. Ference's position. (ECF No. 20 pp. 3–4.) But the District Court did not. (ECF No. 24 pp. 1–2.) Defendants' exhibits A–D should be considered in adjudicating this motion.

## III. Standard of Review

A Rule 12(b)(6) motion to dismiss assesses the complaint's legal sufficiency. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To survive a Rule 12(b)(6) motion, plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts must accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); DiCarlo v. St. Marcy Hosp., 530 F.3d 255, 262–63 (3d Cir. 2008).

Complaints must state plausible claims to withstand a Rule 12(b)(6) motion; the complaint's factual allegations must be enough to raise a right to relief above mere speculation. Twombly, 550 U.S. at 555. A claim is facially plausible when the plaintiff pleads factual content allowing the court to reasonably infer the defendants' liability for the alleged misconduct. Iqbal, 556 U.S. at 678. A plausible inference, arising from a complaint's well-pled facts, is not enough to entitle the plaintiff to relief. Id. at 682. That inference, to be plausibly justified, must be supported with facts in the complaint. Id.

5

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). Although a complaint's allegations must be taken as true when a court considers a Rule 12(b)(6) motion, a court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

District courts, "[i]n deciding a Rule 12(b)(6) motion . . . must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). District courts "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). This rule prevents plaintiffs from shielding legally deficient claims from motions to dismiss "by failing to attach a dispositive document on which" they relied. Id.

## IV. Mr. Ference's Title VII and PHRA Claims Fail as a Matter of Law due to the Supreme Court's Decision in *303 Creative LLC v. Elenis*

The First Amendment protects Defendants from being forced to employ or penalized for not employing Mr. Ference due to his same-sex marriage contradicting their views on marriage. The Supreme Court emphatically made that point about a month ago.

In 303 Creative LLC v. Elenis, the Supreme Court held that a business owner cannot be compelled to create speech (custom wedding websites promoting same-sex

6

marriages) that she does not believe in, even if she generally offers her commercial services to the public.  600 U.S. \_\_\_\_\_, Case No. 21-476, slip op. at 7–8, 14–15, 17–18, 20–21, 25–32 (June 30, 2023).  The 303 Creative decision aligns with prior Supreme Court precedent permitting the exclusion of individuals from events or association with institutions when those individuals' views did not conform with the views of the event organizers or institution.  Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. Of Boston, Inc., 515 U.S. 557, 572–73 (1995); Boy Scouts of America v. Dale, 530 U.S. 640, 654, 656 (2000).

The Supreme Court, in 1995, allowed veterans organizing a parade to exclude a group of gay, lesbian, and bisexual people from the event.  Hurley, 515 U.S. at 560–61, 581.  In so ruling, the Supreme Court acknowledged that the parade constituted expressive content and that the First Amendment protected the veterans' right to deliver the message that they wanted without their views being diluted "by views they did not share."  303 Creative, slip op. at 14 (citing Hurley, 515 U.S. at 572–73).  It was the very presence of a gay, lesbian, and bisexual parade unit within the veterans' parade that the Supreme Court determined would interfere with the veterans' message.  Hurley, 515 U.S. at 572–75.

The First Amendment's Free Speech Clause protects the "freedom to think as you will and to speak as you think."  Dale, 530 U.S. at 660–61 (internal quotation marks omitted).  In Dale, the Supreme Court upheld the Boy Scouts's right to exclude an assistant scoutmaster after they learned he was gay.  Id. at 661.  This is because the Boy Scouts were "an expressive association" shielded by the First Amendment.  Id. at 656.  Requiring the Boy Scouts to include the assistant scoutmaster would "interfere with [its] choice not to propound a point of view contrary to its beliefs."  Id. at 656.  It was the very

7

presence of a gay assistant scoutmaster that would have caused the Boy Scouts to "propound a point of view contrary to its beliefs." Id. at 654.

The "First Amendment protects acts of expressive association."  303 Creative, slip op. at 14.  The government cannot "compel a person to speak its own preferred messages," make a silent person speak a message he does not want to speak, or require "an individual to include other ideas with his own speech that he would prefer not to include." Id. at 14–15.  If a business owner that generally offers her services to the public may refuse to communicate a message she does not agree with, then the Diocese of Greensburg and one of its Catholic schools, Aquinas Academy, should not be forced to employ (or penalized for not employing) Mr. Ference as a teacher whose example and conduct undermine the doctrinal integrity of the teaching mission of the Church in the presence of impressionable children.

Mr. Ference's decision to enter into a same-sex marriage is inconsistent with Defendants' beliefs on marriage.  (Exs. A–D; ECF No. 43 ¶¶ 13, 27–28, 31–32, 35–36.) Put differently, Mr. Ference does not model marriage in the manner that Defendants wish to communicate by word and deed to their students.  (Id.); 303 Creative, slip op. at 7–8, 14–15, 17–18, 20–21, 25–32.  Similar to the expression at issue in 303 Creative, Hurley, and Dale, Mr. Ference teaching at Aquinas Academy, a Catholic school operated by the Diocese of Greensburg, interferes with the Defendants' First Amendment right to express their particular views.  303 Creative, slip op. at 7–8, 14–15, 17–18, 20–21, 25–32; Hurley, 515 U.S. at 570, 572–75; Dale, 530 U.S. at 644, 648–51, 653–56, 659, 661.  Religious Defendants have the First Amendment right to terminate Mr. Ference's role as an exemplar to children for living his life in violation of Catholic doctrine on marriage despite agreeing to abide by Catholic doctrine on marriage, which overrides Title VII's and the

8

PHRA's interest in eliminating employment discrimination. Mr. Ference's suit should be dismissed in its entirety with prejudice.

## IV. **Conclusion**

It is the religious teaching organization, rather than federal courts or plaintiffs, that determines the organization's message. Dale, 530 U.S. at 651 ("it is not the role of the courts to reject a group's expressed values because they disagree with those values or find them internally inconsistent."). Defendants' do not want their ability to communicate their religious beliefs on the sanctity of marriage hampered by the presence of Mr. Ference, who decided to marry a man. Mr. Ference, of course, may lawfully marry a man under the civil law. But Mr. Ference may not use federal or Pennsylvania employment discrimination laws as a blunt instrument to punish Defendants for adhering to traditional doctrines. Conformity is comfort to some. It is heresy to others—Defendants included. The Court should grant with prejudice Defendants' motion to dismiss Mr. Ference's first amended complaint.

Respectfully submitted,

| | |
|---|---|
| **MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.** | **BALL, MURREN & CONNELL, LLC** |
| /s/ Bernard P. Matthews, Jr., Esq. | /s/ Philip J. Murren, Esq. |
| **BERNARD P. MATTHEWS, JR., ESQ.** | **PHILIP J. MURREN, ESQ.** |
| PA. I.D. #54880 | PA. I.D. #21426 |
| bmatthews@mdbbe.com | bmc-law2@msn.com |
| **ALEXANDER W. BROWN, ESQ.** | **KATHERINE M. FITZ-PATRICK, ESQ.** |
| PA. I.D. #322661 | PA. I.D. #208863 |
| abrown@mdbbe.com | fitz-patrick@bmc-law.net |
| 40 North Pennsylvania Ave., Suite 410 | **DAVID R. DYE, ESQ.** |
| Greensburg, PA 15601 | PA I.D. 88665 |
| Telephone No.: (724) 836-4840 | dye@bmc-law.net |
| Fax No.: (724) 836-0532 | 2303 Market Street |
| *(Attorneys for Defendant)* | Camp Hill, PA 17011 |
| | Telephone No.: (717) 232-8731 |
| | Fax No.: (717) 232-2142 |
| | *(Attorneys for Defendant)* |