# Exhibit 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KENNETH FERENCE,

Plaintiff,

v.

ROMAN CATHOLIC DIOCESE
OF GREENSBURG,

Defendant.

CIVIL ACTION NO. 2:22-cv-797-MPK

Judge Kelly

JURY TRIAL DEMANDED

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I. Introduction and Factual Background

The Roman Catholic Diocese of Greensburg terminated Mr. Ference's employment due to his sex. Mr. Ference is in a same-sex marriage, which Defendant used to justify his termination. Plaintiff brought suit, alleging that Defendant terminated him in violation of Title VII (Count I).

Defendant has moved to dismiss this action by asserting its right to discriminate based on *its* religious doctrines, which oppose homosexuality. When Defendant hired Mr. Ference as a sixth-grade teacher, it knew his religion is Lutheranism and limited him to secular job duties because of *his* religion. Despite Mr. Ference's religion, Defendant allowed him to teach secular subjects.

Once Defendant learned that Mr. Ference is married to a man, it terminated his employment. To be clear, *Mr. Ference's* religion had nothing to do with the termination decision. Defendant knew Mr. Ference's religion and saw no conflict with allowing him to teach its students secular subjects. Only because Mr. Ference is a man, married to another man, he lost his job. That is plainly sex discrimination prohibited by Title VII.

Defendant seeks to use its religious doctrines and its status as a religious employer as cover for sex discrimination. According to Defendant, because its religious doctrines allow it to discriminate, then it is untouchable by antidiscrimination laws. That position is unsupportable. Mr. Ference does not oppose Defendant's ability under Title VII and the First Amendment to limit him to secular duties due to his religion. However, in preventing Mr. Ference from actively participating in its ministry, it removed any legal and constitutional hurdles to the application of Title VII to this clear case of sex-based termination.

## II. Legal Standard

A federal court complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Even after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "federal courts require notice pleading, as opposed to a heightened standard of fact pleading." *Depelligrin v. A&L Motor Sales, LLC*, No. 11-1579, 2012 WL 3073182, at *2 (W.D. Pa. July 27, 2012).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation omitted). The court should undertake a three-part analysis, including "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Part three of this test "requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate

the claims are sufficient to show a 'plausible claim for relief.'" *Depelligrin*, 2012 WL 3073182 at *2 (quoting in part *Iqbal*, 556 U.S. at 679).

While a complaint must contain sufficient factual matter to show a claim is facially plausible, a plaintiff still "is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009) (citations omitted).

## III. Argument

### A. Title VII prohibits Defendant from discriminating against Mr. Ference on the basis of his sex.

"Title VII 'does not confer upon religious organizations the right to make…[employment] decisions on the basis of race, sex, or national origin.'" *Petruska v. Gannon Univ*., 462 F.3d 294, 303 (3d Cir. 2006) (quoting *Rayburn v. Gen'l Conf. of Seventh Day Adventists*, 772 F.2d 1164, 1166 (4th Cir.1985)). *See also Patsakis v. Greek Orthodox Archdiocese of Am.*, 339 F. Supp. 2d 689, 693 (W.D. Pa. 2004). "Although Congress has several times revisited the scope of [Title VII's] exemption for religious employers, it has never extended to such institutions the authority to discriminate on the basis of sex." *Petruska*, 462 F.3d at 303 n.4 (citing *Rayburn*, 772 F.2d at 1167). The plain reading of Title VII as applying to sex discrimination claims against religious entities is not impacted by First Amendment concerns, as those concerns require a separate analysis. *Petruska*, 462 F.3d at 303 n.4.

Discrimination on the basis of sexual orientation is inherently sex discrimination as recently held by the Supreme Court in *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1741 (2020). According to the Supreme Court:

> An employer violates Title VII when it intentionally fires an individual employee based in part on sex. It doesn't matter if other factors besides the plaintiff 's sex contributed to the decision. And it doesn't matter if the employer treated women as a group the same when compared to men as a group. If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred.

*Id*. at 1741. "[I]t's irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate it…just as labels and additional intentions or motivations didn't make a difference in *Manhart* or *Phillips*, they cannot make a difference here." *Id*. at 1744.

Mr. Ference has pleaded the existence of direct evidence that Defendant terminated his employment because of his sexual orientation, as Defendant openly cited his sexual orientation as the termination reason. *See* [ECF No. 1] at ¶25. Direct evidence "must lead directly and without speculation to the conclusion that the decision-maker was motivated by a prohibited factor such as sex." *Herx v. Diocese of Ft. Wayne-S. Bend Inc.*, 48 F. Supp. 3d 1168, 1178 (N.D. Ind. 2014), *appeal dismissed*, *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014). Defendant's discriminatory admission satisfies that standard. As a result, Mr. Ference's allegations, if true, establish a Title VII violation.

Defendant's attempt to frame Mr. Ference's termination as an act of religious discrimination must fail given the admitted role his sex played in the termination decision. *See Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc*., 496 F. Supp. 3d 1195, 1205 (S.D. Ind. 2020), *appeal dismissed*, No. 20-3265, 2021 WL 9181051 (7th Cir. July 22, 2021) ("Section 702 [of Title VII] allows religious employers to favor coreligionists in employment decisions. It does not allow religious employers to do so in a way that also discriminates against another protected class"); *Herx*, 48 F. Supp. 3d at 1176 ("Title VII's statutory exemptions would apply in this case

only if Mrs. Herx's claims were based on religious discrimination. But her Title VII claim alleges sex discrimination, not religious discrimination."); *Doe v. Cath. Relief Servs*., No. CV CCB-20-1815, 2022 WL 3083439, at *5 (D. Md. Aug. 3, 2022) (rejecting the defendant's proposed interpretation of Title VII's religious exemptions as covering all decisions made on the basis of religious beliefs because such a reading would "cause a relatively narrowly written exception to swallow all of Title VII."); *Billard v. Charlotte Cath. High Sch.,* No. 3:17-CV-00011, 2021 WL 4037431, *11 (W.D.N.C. Sept. 3, 2021) ("Under the current statute, religious institutions may employ those with similar faiths, but they may not discriminate against other protected classes.").

Defendant's "labels and additional intentions" do not change the outcome. *Bostock*, 140 S. Ct. at 1744. The flaws in Defendant's argument are especially obvious when its interpretation of Title VII is played out to its fullest. Under Defendant's interpretation, it is permitted to fire a secular employee for any discriminatory reason, such as an interracial marriage, by using the cover of religious discrimination. *See Starkey*, 496 F. Supp. 3d at 1203. That interpretation far exceeds the plain reading of Title VII mandated by the Third Circuit. *See Petruska,* 462 F.3d at 303 n.4.

Defendant's reliance on *Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) as the controlling law for this matter is unpersuasive. First, the plaintiff in *Wuerl* brought only a claim of ***religious*** discrimination, which is undisputedly exempt from coverage under Title VII. *Geary v. Visitation of Blessed Virgin Mary Par. Sch.*, 7 F.3d 324, 328 (3d Cir. 1993). The discrimination at issue in *Wuerl* concerned marriage, but in the context of the plaintiff failing to follow proper canonical process, which does not implicate another protected class, besides religion, under Title VII. *See Starkey*, 496 F. Supp. 3d at 1204. The court in *Wuerl* recognized that "Title VII has been

interpreted to bar race and sex discrimination by religious organizations towards their non-minister employees." *Id*. at 947-48. As such, *Wuerl* actually undermines Defendant's argument here.

Unlike in *Wuerl,* Mr. Ference does not allege that Defendant discriminated against him because of his religion, Lutheranism. If Mr. Ference's sex was hypothetically changed to female, as described in *Bostock*, Defendant's decision to limit him to secular instruction would not change due to his status as a non-Catholic remaining the same. 140 S. Ct. at 1741. The same cannot be said of Defendant's decision to terminate Mr. Ference's employment. Changing his sex to female would mean that there was no same-sex marriage at issue, and thus no grounds for termination by Defendant.

Second, the *Wuerl* court's broad interpretation of Title VII's religious exemption was not extended by the Third Circuit to cover other protected classes. In *Petruska*, the Third Circuit held that "[t]he statutory exemption applies to one particular reason for [an] employment decision—that based upon religious preference. It was open to Congress to exempt from Title VII the religious employer, not simply one basis of employment, and Congress plainly did not." 462 F.3d at 303 n.4. As a result, *Wuerl* is not applicable here as Mr. Ference's sex led to his termination.

Defendant's reliance on forms signed by Mr. Ference related to complying with its views on homosexuality does not cure the discrimination in this case. An employee cannot prospectively waive their right to be free from discrimination under Title VII. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("To begin, we think it clear that there can be no prospective waiver of an employee's rights under Title VII.").

Also, given that Defendant relies on documents outside the Complaint and outside the public record, Defendant actually seeks summary judgment under Fed. R. Civ. P. 12(d) rather than to dismiss the claim under Fed. R. Civ. P. 12(b)(6). Defendant's reliance upon *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192 (3d Cir. 1993) is misplaced because Mr. Ference's claims are not based on the documents attached to Defendant's Motion to Dismiss. "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Mr. Ference does not rely on the documents attached by Defendant to prove discrimination in this case. Instead, Defendant seeks to use them to establish its defenses, which is not a proper justification. *See Davis v. CMH Mfg., Inc.*, 2014 WL 5020917, at *4 (M.D. Pa. Oct. 8, 2014) ("Rather, it is Defendant's *affirmative defense* that is based on the documents. The court cannot consider those documents when testing the legal sufficiency of Plaintiff's pleadings.") (emphasis in original).

The additional cases cited by Defendant also fail to support its position that it is exempt from sex discrimination claims under Title VII. *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.* was decided on First Amendment grounds and not on the statutory text of Title VII. 450 F.3d 130, 137 (3d Cir. 2006). Defendant's First Amendment arguments will be addressed later, and they must not be conflated with the plain reading of Title VII. *See Petruska*, 462 F.3d at 303 n.4 (advancing to First Amendment analysis only after concluding that Congress intended Title VII to apply to sex discrimination claims against religious institutions).

In *Curay-Cramer*, the court was concerned that the analysis of the female plaintiff's alleged male comparators, who were not similarly situated to her, would require it to evaluate and question what the religious employer considered orthodoxy. *Id.* at 141-42. Those same

concerns are not present in this case. Mr. Ference is not relying on comparator evidence and is not challenging Defendant's strength of conviction in its doctrines. As such, the Court will not be dragged into that type of analysis as alleged by Defendant. *See* [ECF No. 11] at p. 20. Mr. Ference is simply challenging Defendant's acknowledged sex discrimination as applied to him, a secular employee.

The *Curay-Cramer* court also recognized "under most circumstances, Title VII's substantive provisions, with the exception of the prohibition against religious discrimination, apply to religious employers." 450 F.3d at 140. The Court cautioned "religious employers against over-reading the impact of [its] holding." *Id*. at 142. Importantly, after *Curay-Cramer*, the Supreme Court held that the ministerial exception is the legal principle to utilize when addressing First Amendment concerns regarding the application of Title VII to religious employers. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012). The application of the ministerial exception to Mr. Ference's case is below.

*EEOC v. Mississippi Coll.* involved a Plaintiff asking the Court to question a religious doctrine in order to establish pretext for discrimination on the basis of another protected class. 626 F.2d 477, 485 (5th Cir. 1980). This case is easily distinguished as a pretext analysis is not required for Mr. Ference's case. The Third Circuit also rejected the constitutional conflict avoidance argument applied in that case. *See Petruska*, 462 F.3d at 303 n.4.

In *Maguire v. Marquette Univ.*, the Seventh Circuit noted that the district court resolved the case on First Amendment grounds, as the hiring concerned an individual in the theology department. 814 F.2d 1213, 1216 (7th Cir. 1987). Instead of adopting the district court's holding, the Seventh Circuit determined that the plaintiff did not establish a *prima facie* case of sex discrimination. *Id*. at 1217-18. Even if the district court's opinion is considered, it was

decided on First Amendment grounds concerning what was clearly a ministerial position—a situation easily distinguished from this case. *Maguire v. Marquette Univ*, 627 F. Supp. 1499, 1504-05 (E.D. Wis. 1986).

In *Bear Creek Bible Church v. EEOC*, the district court interpreted Title VII's religious exemption to its extreme by concluding that "an employer may be exempt from Title VII entirely if it qualifies as a 'religious' employer." 571 F. Supp. 3d 571, 590 (N.D. Tex. 2021), *appeal filed*. This position far exceeds the Third Circuit's interpretation of Title VII as annunciated in *Petruska*. 462 F.3d at 303. It also runs contrary to the Sixth Circuit's settled law. According to that Circuit, Title VII's religious exemption "merely indicates that such institutions may choose to employ members of their own religion without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination." *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996). *See also Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). *Boyd* concerned a religious institution's prohibition on extramarital sex. *Id.* at 412. Such a policy could be applied equally to male and female employees, and therefore not impact another protected class because extramarital sex is not inherently linked to gender. Unlike the policy in *Boyd*, Defendant's policy on homosexuality cannot be separated from sex discrimination.

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.* was decided on First Amendment grounds with the Court finding that the Plaintiff held a ministerial position. 41 F.4th 931, 942 (7th Cir. 2022). As will be discussed later, Mr. Ference did not hold a ministerial position. Defendant failed to reference the district court opinion denying the *Starkey* defendants' Motion for Judgment on the Pleadings. *Starkey*, 496 F. Supp. 3d 1195. In that opinion, the court squarely rejected the defendants' argument that they were exempt under Title

VII from claims of sex discrimination because their decisions were rooted in religious beliefs. *Id.* at 1201. The court held that defendants' reading of Title VII "would effectively strip employees of religious institutions of all Title VII protections, if the employer's religion clashed with the employee's protected class status. If Congress had intended to allow religious employers to avoid liability for discriminating on the basis of race, sex, or national origin, it could have done so." *Id.* at 1203.

**B. The church autonomy doctrine does not prohibit the application of Title VII to Mr. Ference's termination of employment.**

In *Hosanna-Tabor*, Justice Alito (joined by Justice Kagan), in his concurring opinion, defined the concept of church autonomy in the following manner: "Religious autonomy means that religious authorities must be free to determine who is qualified to serve in positions of substantial religious importance." 565 U.S. at 200 (Alito, J. and Kagan, J., concurring). "This does not mean that religious institutions enjoy a general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). "Their employment decisions may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." *Rayburn*, 772 F.2d at 1171. That means they are protected in the "selection of the individuals who play certain key roles." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2060. In order to protect that autonomy, the courts established the ministerial exception. *Id.*

The test established for the ministerial exception in *Hosanna-Tabor* and *Our Lady of Guadalupe* is the correct tool to evaluate whether the application of Title VII to Mr. Ference's termination would unconstitutionally impair church autonomy. *See Hough v. Roman Cath. Diocese of Erie*, No. CIV.A. 12-253, 2014 WL 834473, at *2 (W.D. Pa. Mar. 4, 2014) ("The ministerial exception arises from the conflict between federal employment discrimination statutes and constitutional principles of church autonomy guaranteed by the First Amendment's

Religion Clauses."). As described in Section C, the application of the ministerial exception's test establishes that Mr. Ference was not in a ministerial position. As a result, there is no violation of church autonomy in the application of Title VII to his termination.

Given that Mr. Ference was in a secular position, Defendant attempts to separate the church autonomy doctrine from the ministerial exception in order to appeal to amorphous autonomy principles in support of its argument. This argument must fail as the ministerial exception is the sole vehicle for resolving First Amendment concerns when applying neutral employment laws. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2397 n.1 (2020) (Kagan, J., concurring) ("There is no general constitutional immunity, over and above the ministerial exception, that can protect a religious institution from the law's operation."). Adherence to Defendant's position would render the ministerial exception meaningless. *See Starkey*, 496 F. Supp. 3d at 1206-07; *Doe*, 2022 WL 3083439, at *3; *Billard*, 2021 WL 4037431, at *12.

If the Court applies a broader interpretation of the church autonomy doctrine to this case, as advocated by Defendant, the conclusion is the same—no constitutional violation. In support of its argument, Defendant cites to *N.L.R.B. v. Cath. Bishop of Chicago*, 440 U.S. 490 (1979) as providing the parameters for when the church autonomy doctrine applies. The Supreme Court resolved *Catholic Bishop of Chicago* by interpreting the NLRA as not applying to teachers of religious entities and avoided a constitutional analysis. *Id* at 507. To be clear, it did not apply the church autonomy doctrine. The Third Circuit has held that Title VII is not capable of the same limiting interpretation as applied by the Supreme Court in *Catholic Bishop of Chicago*. *See Petruska*, 462 F.3d at 303 n.4.

In *Geary*, the Third Circuit analyzed the holding *Catholic Bishop of Chicago* in evaluating the application of the ADEA to an employment discrimination claim. 7 F.3d at 327. In finding the application constitutional, the Third Circuit held that the "application of the ADEA to the lay faculty of a religious school does not present a significant risk of entanglement." *Id.* at 328. Because the plaintiff in *Geary* did not challenge the validity of the religious doctrine used to justify the termination, the application of the ADEA would not lead to excessive government entanglement. *Id*. at 330. "[W]hen the pretext inquiry neither traverses questions of the validity of religious beliefs nor forces a court to choose between parties' competing religious visions, that inquiry does not present a significant risk of entanglement." *Id*. This holding is consistent with that expressed in *Curay-Cramer*. 450 F.3d at 141-42.

As detailed above, there is no challenge to the validity Defendant's religious beliefs. Also, Mr. Ference is not offering a competing religious vision. Mr. Ference presents direct evidence that Defendant discriminated against him because of his sex. Therefore, the Court will not be entangled in religious concerns. "Here, there is no need to 'pass judgment on questions of religious faith or doctrine' in order to resolve plaintiff's claims; the claims can be resolved by applying ordinary principles of employment law. Accordingly, ecclesiastical abstention does not apply." *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1146 (D. Or. 2017) (citations omitted).

The cases relied upon by Defendant in support of its argument do not dictate a contrary holding. *Bryce v. Episcopal Church in the Diocese of Colorado* is distinguishable from this case as it predated the formal recognition of the ministerial exception in *Hosanna-Tabor* and *Our Lady of Guadalupe*; concerned an employee in a ministerial position, and the dispute in that case revolved around sexual harassment claims, not termination, that would have required the court to

evaluate internal ecclesiastical dialogues, unlike this case. 289 F.3d 648 (10th Cir. 2002). Additionally, the court made clear that "rooted in religious belief" does not exempt religious organizations from Title VII scrutiny, where the challenged "decision does not involve the church's spiritual functions." *Id*. at 657 (quoting *Rayburn*, 772 F.2d at 1171). As Mr. Ference was not in a ministerial position, his termination does not concern the church's spiritual functions.

In *Demkovich v. St. Andrew the Apostle Par., Calumet City*, the court noted that the "ministerial exception follows naturally from the church autonomy doctrine." 3 F.4th 968, 975 (7th Cir. 2021). It applied the ministerial exception to bar the sexual harassment claim by an individual in a ministerial position—unlike Mr. Ference. *Id*. at 985. Another case cited by Defendant, *Garrick v. Moody Bible Inst*., actually supports Mr. Ference's argument that his claim of sex discrimination is not exempt under Title VII. 412 F. Supp. 3d 859, 869-70 (N.D. Ill. 2019) ("Title VII's exemptions are limited specifically to claims of discrimination premised upon religious preferences") (citations omitted). Additionally, the court held that some of the plaintiff's claims were not necessarily in conflict with church autonomy principles because they related to her sex, as opposed to her claims that she was fired for advocating against church beliefs. *Id*. at 872. That distinction is present here as Mr. Ference's termination claim is based entirely on Defendant's sex discrimination. Finally, *Garrick* predates *Our Lady of Guadalupe* as well.

*Wuerl*, as described above, is easily distinguished because the plaintiff raised religious discrimination claims. *Geary*, 7 F.3d at 328. Defendant also quotes *Butler v. St. Stanislaus Kostka Cath. Acad.*, in support of a broad reading of the church autonomy doctrine. No. 19-CV-3574(EK)(ST), 2022 WL 2305567 (E.D.N.Y. June 27, 2022), *appeal filed.* The language cited

by Defendant is *dicta*, as the court decided summary judgment based on the ministerial exception. *Id*. at *4. Furthermore, the court's broad interpretation of the church autonomy doctrine ignores that the ministerial exception was the mechanism created for employment cases in order to avoid excessive entanglement in church affairs. *See Little Sisters of the Poor,* 140 S. Ct. at 2397 n.1 (2020) (Kagan, J., concurring). Adherence to the *Butler* court's interpretation would render the ministerial exception meaningless. *See Starkey*, 496 F. Supp. 3d at 1206-07; *Doe*, 2022 WL 3083439, at *3; *Billard*, 2021 WL 4037431, at *12. Finally, the *Butler* court distinguished the *Richardson* case because the plaintiff in that case "had literally no religious duties," as is true of Mr. Ference. 2022 WL 2305567, at *7 n.8.

Defendant's reliance upon *Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.* and *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh* is not persuasive. 684 F.3d 413 (3d Cir. 2012); 903 F.3d 113 (3d Cir. 2018). *Askew* concerns allegations of misappropriation of funds, and *Lee* revolves around a breach a contract suit by a pastor. Both have no relation to the issues of this case. *Id*.

Defendant's dire prediction about the evisceration of the First Amendment will not come to fruition, as the ministerial exception is the buttress that protects religious entities in their employment decisions. Given that Defendant chose to exclude Mr. Ference from its spiritual functions due to his religion, [ECF No. 1] at ¶¶ 15-16, its First Amendment rights remain intact. Furthermore, because Mr. Ference is not asking the court to "pass judgment on questions of religious faith or doctrine" in order to resolve his case of termination from a secular position, the church autonomy doctrine is not implicated. *Richardson*, 242 F. Supp. 3d at 1146 (citations omitted). *See also McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644, 649

(W.D.N.C. 2011) (holding that cases involving a lay employee do not raise the same constitutional concerns as those involving ministerial employees).

**C. Mr. Ference was not in a ministerial position, and Defendant's Motion is premature.**

"What matters is what an employee does." *Our Lady of Guadalupe Sch*., 140 S. Ct. at 2052. In evaluating whether the ministerial exception applies, the Supreme Court in *Hosanna-Tabor* examined the following factors (not to be applied rigidly): whether the religious organization held the employee out as a minister; whether the position reflected "a significant degree of religious training followed by a formal process of commissioning;" whether the employee "held themselves out as a minister;" and whether the employee's "job duties reflected a role in conveying the Church's message and carrying out its mission." *Hosanna-Tabor*, 565 U.S. at 191-92.

With no developed record, Defendant seeks to circumvent the fact-specific analysis required when applying the ministerial exception. In *Hough*, the court issued the following holding that rejected a request similar to Defendant's:

> Rather than a *Hosanna–Tabor*–type analysis based on a well-developed record with evidence of Plaintiffs' job duties and functions… this Court is being asked to rule in Defendants' favor because the Vicar of Education testifies to the fact that all teachers are considered to be ministers of the faith by the Diocese. Although the Supreme Court refused to provide a bright line test for a determination of when someone is accorded ministerial status, Defendants' argument-that all teachers are considered to be ministers by Defendants-was **not** enough, in and of itself, for the high court in *Hosanna–Tabor.*

2014 WL 834473, at *4 (emphasis in original). Due to the lack of a discovery, Defendant's motion is premature.

If the *Hosanna-Tabor* factors are applied to facts of this case, it is apparent from the face of the Complaint that Mr. Ference was not in a ministerial position. First, as a teacher, he did not have a religious title applied to him. *See* [ECF No. 1] at ¶ 6. Second, Mr. Ference underwent no

religious training for his teaching position. *See* [ECF No. 1] at ¶¶ 12-13. Third, Mr. Ference did not hold himself out as a minister. *See* [ECF No. 1] at ¶¶ 15-24. Fourth, and most importantly, his job duties did not reflect a role in conveying Defendant's message and carrying out its mission, as he only taught secular subjects, did not facilitate daily prayers, and did not participate in religious services. *Id*. "[A]ll matters of religious education and rituals for the sixth-grade students [were] handled by Jennifer Davis, Aquinas's other six-grade teacher." [ECF No. 1] at ¶ 16. This analysis demonstrates that Mr. Ference was not in a ministerial position. Defendant correctly cites that the Supreme Court wrote in *Our Lady of Guadalupe* that "[E]ducating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." 140 S. Ct. at 2052. However, Defendant exempted Mr. Ference from that mission when it limited him to secular duties. *See* [ECF No. 1] at ¶¶ 15-24. As a Lutheran, Defendant did not entrust Mr. Ference with educating its students in its faith. [ECF No. 1] at ¶ 15.

Defendant's attempt to analogize Mr. Ference's activities to those of the teachers in *Our Lady of Guadalupe* does not survive minimal scrutiny. The teachers in *Our Lady of Guadalupe* "prayed with their students, attended Mass with the students, and prepared the children for their participation in other religious activities." 140 S. Ct. at 2066. The teachers were not passive chaperones, but instead taught their students how to be "active participants" at masses and prayed with their students at those masses. *Id*. at 2057, 2059. The same cannot be said of Mr. Ference. Labeling Mr. Ference as a minister because he attended church services in a supervisory capacity "would greatly expand the scope of the ministerial exception and ultimately would qualify all of the Diocese's teachers as ministers, a position rejected by the *Hosanna–Tabor* Court." *Herx*, 48 F. Supp. 3d at 1177.

As already discussed, Defendant's reference to documents outside the Complaint is improper. Additionally, just because Defendant had Mr. Ference sign documents saying that he can be discriminated against on the basis of his sex does not make Defendant's actions legal. Defendant cannot contract itself out of Title VII coverage. *See Alexander*, 415 U.S. at 51.

Furthermore, Defendant's reliance on the language of its policies, procedures, and agreements is misplaced. In *Palmer v. Liberty Univ., Inc.*, the defendant introduced "voluminous polices about faculty responsibilities" to integrate religion into teaching. No. 6:20-CV-31, 2021 WL 6201273, at *8 (W.D. Va. Dec. 1, 2021), *appeal filed.* The court rejected those documents as proof of ministerial functions as they were only "truly relevant to the extent that Palmer acted consistently with them." *Id*. "The question is not what Palmer was supposed to do or encouraged to do, but what she actually did." *Id*. Because the defendant in *Palmer* failed to introduce evidence that the plaintiff acted consistently with those policies, the court rejected them as evidence. *Id*. *See also Ostrander v. St. Columba Sch.*, No. 3:21-CV-00175-W-LL, 2021 WL 3054877, at *6 (S.D. Cal. July 20, 2021) (holding that language from an employment agreement was not relevant without evidence that teacher actually followed that language).

While Defendant had Mr. Ference sign its canned forms, he did not act in conformity with them because Defendant instructed him not to. *See* [ECF No. 1] at ¶¶ 15-16. Defendant chose to exempt Mr. Ference, a Lutheran, from the application of its policies regarding Catholic teachings. As a result, the policies it relies upon are not relevant to the ministerial exception's application to this case. *See Dias v. Archdiocese of Cincinnati*, No. 1:11-CV-00251, 2013 WL 360355, at *4 (S.D. Ohio Jan. 30, 2013) ("The Court reiterates its view that because Plaintiff, as a non-Catholic, was not permitted to teach Catholic doctrine, she cannot genuinely be considered a "minister" of the Catholic faith.")

As detailed above, Defendant fails to show that the facts alleged in the Complaint support any of the four factors used to evaluate the ministerial exception. Defendant's colorful simile does not change that outcome. Mr. Ference is not an "invader." [ECF No. 11] at p. 21. He is simply a person trying to make a living who was fired from a secular position because of his sex.

**D. The Religious Freedom Restoration Act applies only to suits where the government is a party.**

The RFRA applies only in cases where the government is a party. *Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp. 3d 317, 326-28 (E.D. Pa. 2016) (collecting circuit court cases). The Western and Middle Districts of PA have also adopted that holding. *See Jean-Pierre v. Bureau of Prisons*, No. CIV.A. 09-266J, 2010 WL 3852338, at *6 n.4 (W.D. Pa. July 30, 2010), *report and recommendation adopted*, No. CIV.A.09-266J, 2010 WL 3834872 (W.D. Pa. Sept. 27, 2010), *aff'd in part*, 497 F. App'x 164 (3d Cir. 2012); *Johnson v. Wireman*, 2019 WL 1383575, at *5 (M.D. Pa. Mar. 27, 2019), *aff'd in part, vacated in part, remanded*, 809 F. App'x 97 (3d Cir. 2020).

Because the government is not a party to this action, the RFRA does not apply. Defendant cites *Hankins v. Lyght* in support of the theory that the RFRA applies to disputes between private parties. 441 F.3d 96 (2d Cir. 2006). Shortly after *Hankins* was decided, the Second Circuit walked back that holding. *See Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008) ("Thus, we do not understand how [the RFRA] can apply to a suit between private parties, regardless of whether the government is capable of enforcing the statute at issue.") The clear weight of authority supports the holding that the RFRA applies only to cases where the government is a party.

Moreover, even if RFRA were to apply, it would not foreclose Mr. Ference's claim, because Defendant cannot establish that its free exercise of religion would be substantially

Case 2:22-cv-00797-MPK Document 13 Filed 08/22/22 Page 19 of 20

burdened by employing a gay employee in a secular position. As the Supreme Court has noted, its RFRA-based decision in *Burwell v. Hobby Lobby Stores*, *Inc.*, 573 U.S. 682 (2014), provides no "shield" to justify employment discrimination based on race. *Id.* at 733. Rather, "[t]he Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that goal." *Id.* The same rationale applies to Mr. Ference's claim of sex discrimination here.

## IV. Conclusion

For the foregoing reasons, Plaintiff has pleaded a claim of sex discrimination under Title VII that is not barred by Title VII's religious exemptions or the First Amendment. Therefore, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

/s/ *Nicholas W. Kennedy*
Nicholas W. Kennedy
PA ID No. 317386
Quatrini Law Group
550 East Pittsburgh Street
Greensburg, PA 15601
Phone: 724-837-0080
Fax: 724-837-1348