# Exhibit 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENNETH FERENCE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-797 |
| | ) | District Judge J. Nicholas Ranjan |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| ROMAN CATHOLIC DIOCESE | ) | Re: ECF No. 10 |
| OF GREENSBURG, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

## I. RECOMMENDATION

Plaintiff Kenneth Ference brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., alleging that he was unlawfully terminated from his position as a secular sixth grade teacher at Aquinas Academy ("Aquinas") after school officials learned that he is married to his same-sex spouse. Aquinas is operated under the direction of Defendant Roman Catholic Diocese of Greensburg (the "Diocese"). In response to the Complaint, the Diocese has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 10. For the following reasons, it is respectfully recommended that the Motion to Dismiss be denied.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2021, Mr. Ference began working at Aquinas. ECF No. 1 ¶ 6. Because he is Lutheran, the principal of Aquinas prohibited Mr. Ference from providing religious education to his students. <u>Id.</u> ¶ 15. Thus, Mr. Ference's job responsibilities were entirely secular, with all matters of religious education and rituals for sixth grade students handled by Aquinas's other sixth

grade teacher. Id. ¶ 16. Mr. Ference agreed to chaperone his students to church services, but only to monitor their behavior. Id. ¶¶ 17-18. While morning and afternoon prayers were part of the school day, Mr. Ference had no role in facilitating prayers. Id. ¶ 22.

Mr. Ference completed standard new employee forms during a meeting with Aquinas's Business Manager on August 25, 2021. Id. ¶ 7-8. The Business Manager informed Mr. Ference that he would receive his medical insurance election forms in an email from the Diocese's main office. Id. ¶ 9. Mr. Ference accessed the forms on September 2, 2021 and completed his election. He waived group medical insurance and conveyed that he is covered under his husband's medical insurance. Id. ¶ 11. On September 28, 2021, the Diocese's Superintendent of Catholic Schools informed Mr. Ference that his employment was terminated because he is in a same-sex relationship. Id. ¶ 25. The Diocese learned of Mr. Ference's relationship status from the disclosure on his election to waive group medical insurance. Id. ¶ 26.

On November 15, 2021, Mr. Ference filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Diocese. On May 20, 2022, the EEOC issued a Notice of Right to Sue. Id. ¶ 3. Mr. Ference commenced this lawsuit with a Complaint on June 1, 2022, and the Diocese followed with a timely Motion to Dismiss and brief in support. ECF Nos. 10, 11. Mr. Ference has filed his Brief in Opposition to Defendant's Motion to Dismiss, ECF No. 13, and the Diocese has filed a reply. ECF No. 14. On January 9, 2023, the Court heard oral argument on the Motion to Dismiss. The Motion to Dismiss is ripe for consideration.

**B. STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"To determine the sufficiency of a complaint, a court must take three steps. First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), as amended (June 6, 2011) (quoting Iqbal, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Id. (citations omitted). If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the court should deny the motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

With particular relevance to the Diocese's Motion to Dismiss, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985)). "[A]n exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (citation omitted). Here, the Court finds that the four documents attached to the Diocese's brief in support of the Motion to Dismiss are neither integral to nor explicitly relied on in Mr. Ference's Complaint.

Instead, in this employment discrimination case, the exhibits proffered by the Diocese raise factual matters in defense of Mr. Ference's claim that should be sorted out through discovery.

**C. DISCUSSION**

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to discriminate against someone on the basis of race, color, national origin, sex, or religion in any aspect of employment, including hiring and firing. 42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has unequivocally held that sex discrimination includes discrimination based on sexual orientation and gender identity. Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1743 (2020) ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex. That has always been prohibited by Title VII's plain terms – and that 'should be the end of the analysis.'"). Thus, "[a]n employer who fires an individual merely for being gay or transgender defies the law." Id. at 1754. Absent any exception to Title VII's anti-discrimination mandate, Mr. Ference's allegation that he was terminated because of his sexual orientation states a plausible claim for relief.

The Diocese raises four grounds for dismissing Mr. Ference's claim: (1) Title VII's textual exemption for religious employment decisions, (2) the "church autonomy doctrine" under the First Amendment, (3) the ministerial exception to Title VII, and (4) the bar against burdening the free exercise of religion under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq*. ECF No. 10. The Court addresses each argument as follows.

**1. Title VII's Exemption for Religious Discrimination**

The Diocese first moves to dismiss Mr. Ference's Complaint pursuant to the religious exemptions set forth in Sections 702(a) and 703 of Title VII. ECF No. 10 ¶ 3; ECF No. 11 at 9-11.

Relying on Little v. Wuerl, 929 F.2d 944 (3d Cir. 1991), the Diocese contends that under Title VII's religious exemptions, it may discriminate against an individual on any basis, "so long as the employment decision was rooted in religious belief." ECF No. 11 at 11. Mr. Ference responds that the Diocese's broad interpretation exceeds the plain language of Title VII as applied by the United States Court for the Third Circuit in Petruska v. Gannon Univ., 462 F.3d 294 (3d Cir. 2006). ECF No. 13 at 5.

Section 702 provides that Title VII "shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e–1(a). Section 703 provides that for religious educational institutions, "it shall not be an unlawful employment practice … to hire and employ employees of a particular religion if such school … is, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school … is directed toward the propagation of a particular religion." 42 U.S.C. § 2000e-2(e). "Religion" is further defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e-1(j).

Under these provisions, religious entities and educational organizations are exempt from Title VII's "nondiscrimination mandate to the extent that an employment decision is based on an individual's religious preferences." Petruska, 462 F.3d at 303. In Petruska, a female chaplain at a private Catholic diocesan university sued for gender discrimination after the restructuring of her

position resulted in her removal as the university's spiritual leader in favor of a male chaplain. The university filed a motion to dismiss that the district court granted based on the "ministerial exception – a doctrine rooted in the First Amendment." Petruska, 462 F.3d at 299. On appeal, the Third Circuit agreed that Petruska's Title VII discrimination and retaliation claims, as well as certain of her state law claims, "are barred by the ministerial exception insofar as they implicate a church's right to select its ministers under the Free Exercise clause." Id. However, as to Title VII's religious exemptions, the Third Circuit held that while Sections 702 and 703 permit religious organizations the right to discriminate in the hiring of employees of a particular religion, "[b]y its terms … Title VII 'does not confer upon religious organizations the right to make those same decisions on the basis of race, sex, or national origin.'" Id. at 303 (quoting Rayburn v. Gen. Conf. of Seventh-Day Adventists, 772 F.2d 1164, 1166 (4th Cir. 1985)).

> While the language of § 702 [42 U.S.C. § 2000e–1] makes clear that religious institutions may base relevant hiring decisions upon religious preferences, Title VII does not confer upon religious organizations a license to make those same decisions on the basis of race, sex or national origin. The statutory exemption applies to one particular reason for employment decision—that based upon religious preference. It was open to Congress to exempt from Title VII the religious employer, not simply one basis of employment, and Congress plainly did not.
>
> Id. at 1166–67. Title VII's legislative history "reinforces the plain meaning of the statutory text." Id. at 1167. Although Congress has several times revisited the scope of the exemption for religious employers, it has never extended to such institutions the authority to discriminate on the basis of sex. See id. at 1167. Accordingly, we agree with the Fourth Circuit that Congress intended Title VII to apply to cases involving sexual discrimination and retaliation by religious institutions.

Petruska, 462 F.3d at 303 n.4 (quoting Rayburn, 772 F.2d at 1166-67).

Without acknowledging the Third Circuit's holding in Petruska, the Diocese asserts that "Congress intended the explicit exemptions of Title VII to enable religious organizations to create and maintain communities composed solely of individuals faithful to their doctrinal practices,

Case 2:22-cv-00797-NR-PK Document 8-2 Filed 01/08/23 Page 7 of 14

whether or not every individual plays a direct role in the organizations religious activities." ECF No. 11 at at 11 (citing Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130 (3d Cir. 2006) (quoting Wuerl, 929 F.2d at 951)). Petruska, however, was decided eight months after Curay-Cramer and construes the plain text of Title VII to permit a sex or race discrimination claim against a religious institution. Petruska, 462 F.3d at 304-08. Thus, while a discrimination claim may be barred if appropriate under the Establishment Clause of the First Amendment (as occurred in Petruska), Title VII's exemption for discrimination based on an employee's religion may not be relied on to excuse an allegedly unlawful employment practice based on the employee's sex (including sexual orientation), race, color, or national origin.[1]

In this case, if proven, the facts alleged would permit a jury to conclude that the Diocese's decision to terminate Mr. Ference was not based on his religious preferences, but on his sexual orientation. Thus, under the plain meaning of the statutory text, Sections 702 and 703 do not bar his claim and Mr. Ference states a claim upon which relief may be granted.

**2. The Church Autonomy Doctrine**

The Diocese contends that if termination of Mr. Ference falls outside of Title VII's religious exemption, dismissal with prejudice is required pursuant to the "church autonomy doctrine," arising under the Religion Clauses of the First Amendment. ECF No. 11 at 12-15.

The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. CONST. amend. I. The Establishment Clause and the Free Exercise Clause have long been recognized to preclude

[1] The Third Circuit's acknowledgment of the limitations of Title VII's religious exemption in Petruska finds support in the United States Supreme Court's later opinion in Bostock, where the majority implicitly recognized the scope of the exemption as related to the religion of the employee, and thus left for another day questions related to the interaction of its holding regarding sexual orientation with the First Amendment and RFRA. Bostock, 140 S. Ct. at 1754.

governmental interference with certain ecclesiastical matters, including the disposition of church property and the hiring or firing of ministers. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 184-87 (2012) (citing, among others, Watson v. Jones, 13 Wall. 679 (1872) (court should decline to review church decisions related to control over property that implicate discipline, faith, or ecclesiastical rule); Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94 (1952) (state law mandating recognition of one branch of church leadership over another violated the First Amendment by interfering with "strictly a matter of ecclesiastical government")). In Hosanna-Tabor, the Supreme Court concluded that this autonomy or "special solicitude" extends to the selection of church ministry, and thus bars application of discrimination laws to "claims concerning the employment relationship between a religious institution and its ministers." Hosanna-Tabor, 565 U.S. at 188. To hold otherwise would "violate[] the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions," including who will shape a church's faith and mission. Id. at 188-89.

The Diocese argues for an expansive application of the church autonomy doctrine to all matters of employment at Aquinas, regardless of the employee's role, so long as the decision is "rooted in religious belief." ECF No. 11 at 13 (citing Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 657-58 (10th Cir. 2002)). Mr. Ference responds that the doctrine does not provide blanket immunity to religious entities from secular laws, and is limited to decisions related to spiritual/religious functions. ECF No. 13 at 10-13. Because he was hired as a secular teacher, with no responsibility for or participation in Aquinas's religious mission, Mr. Ference argues that dismissal under the church autonomy doctrine is not properly entered.

The Court agrees that the Diocese's interpretation represents a significant expansion of immunity for religious institutions beyond the recognized categories of church governance and

ministerial leadership. See, e.g., Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S. Ct. 2049, 2060 (2020) ("The independence of religious institutions in matters of 'faith and doctrine' is closely linked to independence in what we have termed "'matters of church government.'" This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission.") (quoting Hosana-Tabor, 565 U.S. at 186). The Court therefore declines the Diocese's invitation to immunize it against all claims by secular employees based solely on the Diocese's blanket assertion that church doctrine requires what would otherwise be unlawful discrimination.

Aside from substantive limitations, the church autonomy doctrine is an affirmative defense and thus not appropriately raised at the motion to dismiss stage. Hosanna-Tabor, 565 U.S. at 195 n.4 (citing, among others, Petruska, 462 F.3d at 302). Application of the doctrine requires a factual determination of the scope of Mr. Ference's employment to determine whether his role implicates matters of church governance or is essential to Aquinas's religious mission. At this early stage of the litigation, the Court accepts as true Mr. Ference's allegations that he had no spiritual role at Aquinas and was hired solely as a secular educator. Accordingly, dismissal for failure to state a claim based on the church autonomy doctrine is not appropriately entered.

**3. The Ministerial Exception**

The Diocese next moves to dismiss Mr. Ference's claims with prejudice based on the ministerial exception to the First Amendment.[2] The ministerial exception arises from the church

---

[2] In its brief on this issue, the Diocese – through counsel – presents argument that characterizes Mr. Ference as an "invader" trying to establish "a hostile beachhead." ECF No. 11 at 21. Vigorous advocacy and zealous representation are expected, but this Court expects all litigants to be treated with respect. The Court reminds counsel of the obligation of appropriate professional conduct in all briefs filed in this Court, in line with the principles set forth in the summary guide as to Motions Practice and Brief Writing for Attorneys Appearing in the Western District of Pennsylvania, which may be found on the Court's website at:
http://www.pawd.uscourts.gov/sites/pawd/files/MotionsPracticeandBriefWriting.pdf.

autonomy doctrine under the Religion Clauses of the First Amendment. The exception was adopted by the United States Supreme Court in Hosanna-Tabor and recognizes that a court "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision." Hosanna-Tabor, 565 U.S. at 188. Such an action "interferes with the internal governance of the church" by "depriving the church of control over the selection of those who will personify its beliefs." Id. Thus, courts are bound "to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." Our Lady of Guadalupe, 140 S. Ct. at 2060.

The determination of "[w]hether an employee is subject to the ministerial exception 'rests not on [ ] ordination status or [ ] formal title, but rather on [ ] functional status as the type of employee that a church must be free to appoint or dismiss in order to exercise the religious liberty that the First Amendment guarantees.'" Trotter v. United Lutheran Seminary, No. 20-570, 2021 WL 3271233, at *3 (E.D. Pa. July 30, 2021) (quoting Hosanna-Tabor, 565 U.S. at 206 (Alito, J. concurring)). Courts consider the ministerial exception on a position-by-position basis. Our Lady of Guadalupe, 140 S. Ct. at 2067.

In Hosanna-Tabor, the Supreme Court applied the ministerial exception to the facts of the case before it and held that a wrongful termination claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a), was foreclosed because the plaintiff, a kindergarten and fourth grade teacher at an Evangelical Lutheran school, was identified by her employer as a minister, and was responsible for teaching religion, leading her students in prayer, and participating in the presentation of liturgy. Hosanna-Tabor, 565 U.S. at 192. "As a source of religious instruction, [plaintiff] performed an important role in transmitting the Lutheran faith to the next generation." Id.

Eight years later, in Our Lady of Guadalupe, the Supreme Court held that the protection under this exception is not limited to individuals holding the title of "minister." "What matters, at bottom, is what an employee does. And implicit … in Hosanna-Tabor was a recognition that educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." Our Lady of Guadalupe, 140 S. Ct. at 2064.

Based on the record before it, the Court in Our Lady of Guadalupe extended the ministerial exception to bar employment discrimination claims of two Catholic elementary school teachers who, while not ministers, were responsible for teaching religion, teaching and supervising prayers, preparing students for Mass and praying with them there, and preparing children for participation in other religious activities. Because each plaintiff was entrusted with the "core" responsibility of religious faith formation, the absence of the title "minister" did not preclude application of the exception. Id. at 2066. In each case, judicial review of the way religious schools discharge responsibilities for religious education and formation of students "would undermine the independence of religious institutions in a way that the First Amendment does not tolerate." Id. at 2055. Plaintiffs' claims against their employers for wrongful termination under the ADA and the Age Discrimination in Employment Act ("ADEA") were therefore foreclosed. Id. at 2066-68.

The Supreme Court decided both Hosanna-Tabor and Our Lady of Guadalupe after the parties had engaged in discovery, and on motions for summary judgment based on evidence that included more than the defendants' assertions related to the faith formation role played by each plaintiff. Hosanna-Tabor, 565 U.S. at 180-81; Our Lady of Guadalupe,140 S. Ct. at 2052. In the instant case, no discovery has taken place and the Diocese moves for dismissal based on its description of Mr. Ference's faith-directed employment as a sixth-grade teacher in a Catholic

elementary school. Yet, at this initial stage of the litigation, Mr. Ference's allegations must be accepted as true that the Diocese required that he serve no role in faith formation and that none of his responsibilities related to religious instruction. Iqbal, 556 U.S. at 679. The well-pleaded factual allegations therefore remove Mr. Ference from the scope of the ministerial exception, and he states a plausible claim for relief under Title VII. Accordingly, the Motion to Dismiss based on the ministerial exception should be denied, but the issue may be revisited upon a more fully developed record at the summary judgment stage.

**4. RFRA**

The Diocese next requests dismissal with prejudice under RFRA. RFRA "prohibits the federal government from substantially burdening a person's exercise of religion unless it demonstrates that doing so both furthers a compelling governmental interest and represents the least restrictive means of furthering that interest. § 2000bb-1." Bostock, 140 S. Ct. at 1754. The majority in Bostock recognized that "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases." Id.

An "appropriate" case, however, would require the participation of the government as a party given that the relief afforded may be obtained only "against a government." 42 U.S.C. § 2000bb-1(c) ("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding *and obtain appropriate relief against a government.*") (emphasis added). RFRA clarifies that "the term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1).

Mr. Ference is a private individual pursuing a private claim for discrimination based on his sexual orientation. Thus, by its terms, the Diocese cannot obtain judicial relief from him. See Mathis v. Christian Heating & Air Conditioning, Inc., 158 F. Supp. 3d 317, 326–27 (E.D. Pa. 2016) (RFRA does not apply to suits between private parties) (citing Listecki v. Official Comm. of Unsecured Creditors, 780 F.3d 731, 736 (7th Cir. 2015); Gen. Conf. Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 411-12 (6th Cir. 2010); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826 (9th Cir. 1999)).

The Diocese cites Hankins v. Lyght, 441 F.3d 96 (2d Cir. 2006) as support for the proposition that the government need not be a party. ECF No. 11 at 23. Yet, based on the plain text of RFRA, the United States Court of Appeals for the Second Circuit later acknowledged "doubts about Hankins's determination that RFRA applies to actions between private parties[.]" Rweyemamu v. Cote, 520 F.3d 198, 203, 203 n.2 (2d Cir. 2008). To that end, RFRA clarifies the need for the government as a party through the required evidentiary burden-shifting to determine whether relief shall be provided:

> (a) In general
>
> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
>
> (b) Exception
>
> Government may substantially burden a person's exercise of religion only if ***it*** demonstrates that application of the burden to the person –
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling interest.

42 U.S.C. § 2000bb-1 (emphasis added). Thus, the necessary factual demonstration is to be borne by the "government" and not a private party. And, as RFRA also provides, the required analysis

presupposes the existence of a factual record which is not present in this case, at this early stage of the litigation. Thus, in the absence of the government as a party and the presentation of evidence of a compelling interest by it, the Diocese cannot rely upon RFRA to avoid Mr. Ference's claims in this action, and dismissal on that basis is not properly entered.

**D. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 10, be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within fourteen (14) days in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: January 18, 2023

cc: The Honorable J. Nicholas Ranjan
United States District Judge

All counsel of record by Notice of Electronic Filing