**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH FERENCE,<br><br>Plaintiff,<br><br>vs.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG and AQUINAS ACADEMY,<br><br>Defendants. | **ELECTRONICALLY FILED**<br><br>No. 2:22-cv-00797-NR-MPK<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly<br><br>**JURY TRIAL DEMANDED** |

**RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS**

The Roman Catholic Diocese of Greensburg ("Diocese") and Aquinas Academy ("Aquinas," and when referred to collectively with Diocese, "Defendants") through their counsel, Bernard P. Matthews, Jr., Esquire, and Alexander W. Brown, Esquire, of Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. and Philip J. Murren, Esquire, David R. Dye, Esquire, and Katherine M. Fitz-Patrick, Esquire, of Ball, Murren & Connell, LLC, pursuant to the Federal Rules of Civil Procedure and Local Rule 56.C.1, file this Response to Plaintiff's Counterstatement of Material Facts (ECF No. 81):

50) When Mr. Ference applied for the sixth-grade teacher position at Aquinas, he was a practicing Lutheran. (Ex. 1, 36:3-6).

ANSWER: Admitted.

51) During Mr. Ference's job interview with Kelly Watkins, he told her that he was a practicing Lutheran. (Ex. 2, ¶ 1).

ANSWER: Admitted.

52) Mr. Ference was not familiar with the tenets and beliefs of the Catholic Church when he applied at Aquinas. (Ex. 1, 33:11-14).

ANSWER: Denied. Ference "grew up Catholic" and received the Catholic sacraments of Baptism, Holy Communion, and Confirmation. (ECF No. 67 ¶s 16,18). Ference was a practicing Catholic and regularly attended Mass from the age of 5 until approximately 1996 when he went to college. (Id. ¶ 17.).

53) Within 30 minutes of submitting his job application to Aquinas, Aquinas requested to interview Mr. Ference that same day, which he accepted and interviewed with Ms. Watkins. (Ex. 1, 41:8-22).

ANSWER: Denied as immaterial.

54) The Diocese hires non-Catholic teachers for its schools because of the need for qualified professionals in the classroom. (Ex. 3, 23:4-7).

ANSWER: Admitted.

55) At the start of Mr. Ference's employment with Defendants, he was told by Ms. Watkins that he was not able to teach religious content because he was Lutheran. (Ex. 1, 63:24-65:10).

ANSWER: Denied. As a hiring restriction, Watkins told Ference that he was not permitted to teach the sixth-grade religion class because he is Lutheran, which Plaintiff has already admitted in the Joint Statement of Material Facts. (ECF No. 67 ¶ 28). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 75 ¶ 30). Ference also admits that he does not recall Watkins ever using the word "secular" to describe his teaching duties at Aquinas. (ECF No. 67 at ¶ 29). By using the word "secular" in his complaint to describe his teaching duties at Aquinas, Ference meant only that he did not teach the religion class that his students attended once daily. (ECF No. 75 at ¶ 37). The Aquinas curriculum for science and social studies taught by

Ference to sixth grade students during the 2021–2022 school year infused the presence of God in these subjects. (Id. ¶ 34). This averment is further denied as immaterial because Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (Id. ¶ 21).

56) Mr. Ference understood Ms. Watkins's restriction to include a prohibition on religions content in any of his classes. (Ex. 2, ¶ 2).

ANSWER: Denied. As a hiring restriction, Watkins told Ference that he was not permitted to teach the sixth-grade religion class because he is Lutheran, which Plaintiff has already admitted in the Joint Statement of Material Facts. (ECF No. 67 ¶ 28). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 75 ¶ 30). Ference also admits that he does not recall Watkins ever using the word "secular" to describe his teaching duties at Aquinas. (ECF No. 67 at ¶ 29). By using the word "secular" in his complaint to describe his teaching duties at Aquinas, Ference meant only that he did not teach the religion class that his students attended once daily. (ECF No. 75 at ¶ 37). The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infused the presence of God in these subjects. (Id. ¶ 34). This averment is further denied as immaterial because Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (Id. ¶ 21).

57) Acting in conformity with Ms. Watkins's instruction, Mr. Ference did not teach or infuse any religious content in the subjects he taught. (Ex. 1, 65:1-10; Ex. 2, ¶ 3).

ANSWER: Denied. As a hiring restriction, Watkins told Ference that he was not permitted to teach the sixth-grade religion class because he is Lutheran, which Plaintiff has already admitted in the Joint Statement of Material Facts. (ECF No. 67 ¶ 28). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 75 ¶ 30). Ference also admits he does not recall Watkins ever using the word "secular" to describe his teaching duties at Aquinas. (ECF No. 67 at ¶ 29). By using the word "secular" in his complaint to describe his teaching duties at Aquinas, Ference meant only that he did not teach the religion class that his students attended once daily. (ECF No. 75 at ¶ 37). The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infused the presence of God in these subjects. (Id. ¶ 34). This averment is further denied as immaterial because Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (Id. ¶ 21).

58) Mr. Ference, with agreement from Ms. Watkins, attended Mass with his students solely as a chaperone to monitor their behavior. (Ex. 1, 43:4-16, 72:20-73:22; Ex. 3, 46:20-22; Ex. 4, 60:21-61:5).

ANSWER: Denied. As part of his teaching duties at Aquinas, Ference was required to attend and did attend Mass with his students during the school day. (ECF No. 67 ¶ 30). While

attending Mass with his students, Ference could not recall if he sang hymns and psalms with his students (Resp. App'x Exh. A, pp. 77-78), however, he admitted that he sat in the church pew behind his students and participated in some liturgical rituals. (Resp. App'x Exh. A, pp. 76-79). During a Catholic Mass, there are times when the congregation alternates between sitting, standing and kneeling. (ECF No. 67 at ¶ 31; Resp. App'x Exh. A, pp. 76-79). When Ference attended Catholic Mass with his Aquinas students, he sat when they sat, he stood when they stood, and he kneeled when they kneeled, all as part of the liturgical rituals of a Catholic Mass. (ECF No. 67 at ¶ 32; Resp. App'x Exh. A, p 79). Ference's Teacher's contract also required him to support and participate in all religious functions of the school including school liturgy. (ECF No. 75 at ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

59) Ms. Davis attended Mass with Mr. Ference, during which Mr. Ference watched the students. (Ex. 5, 33:12-16).

ANSWER: Admitted that Davis attended Mass with her students at the same time as Ference attended Mass with his students, and that Ference watched his students.

60) Ms. Davis never saw Mr. Ference take Communion, pray with his students, or lead the students in hymns during Mass. (Ex. 5, 33:17-24).

ANSWER: Denied as immaterial. Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

61) When Mr. Ference's students recited prayers in the classroom, he monitored their behavior, but did not participate in the prayers with the students. (Ex. 1, 88:15-89:1).

ANSWER: Denied. Ference's unilateral decision to violate his contract by not participating in prayer is immaterial. Ference admitted that Aquinas students began and ended each school day by saying prayers together, which were recited over the school intercom. (ECF No. 67 ¶ 33). Ference also admitted he was always present in the classroom when his students recited prayers and was positioned at the front of the classroom "most of the time." (Resp. App'x Exh. A, pp. 80). Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to

participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

62) Mr. Ference, as a non-Catholic, was not equipped to provide prayer instruction to Aquinas's students. (Ex. 3, 44:13-16; Ex. 4, 60:4-7).

ANSWER: Denied as immaterial. Aquinas students began and ended each school day by saying prayers together, which were recited over the school intercom. (ECF No. 67 ¶ 33). Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

63) Ms. Watkins observed Mr. Ference teaching and does not recall ever witnessing Mr. Ference talk to his students about prayer or religion. (Ex. 6, 108:18-109:21).

ANSWER: Denied as immaterial. Aquinas students began and ended each school day by saying prayers together, which were recited over the school intercom. (ECF No. 67 ¶ 33). Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

64) The only duty that Ms. Watkins saw Mr. Ference perform that was unique to a Catholic school was going to church. (Ex. 6, 109:22-24).

ANSWER: Denied as immaterial. Ference admitted that Aquinas students began and ended each school day by saying prayers together, which were recited over the school intercom. (ECF No. 67 ¶ 33). Ference also admitted he was always present in the classroom when his students recited prayers and was positioned at the front of the classroom "most of the time." (Resp. App'x Exh. A, pp. 80). Ference's job duties, specifications, and requirements are spelled out in his Teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy.

(ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30). The Aquinas curriculum for math, science, and social studies taught by Ference to sixth grade students during the 2021-2022 school year is attached as Exhibit F, AQUINAS.00770–00834, to ECF No. 75. The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infuses the presence of God in these subjects. (ECF No. 75 at ¶ 34). Aquinas and the Diocese require teachers to discuss and infuse God and the tenets of the Catholic faith when teaching all subjects, including social studies, science, and language arts as part of the curriculum. (Id. at ¶ 35). For example, sixth grade teacher Jennifer Davis infused Gospel values into her teaching about polytheistic civilizations during social studies classes. (Id. at ¶ 36).

65) The following language in the professional services agreement: "support and participate in all religious functions of the school, including school liturgy," referred to supporting prayers, mass, and prayer services. (Ex. 6, 97:7-11).

ANSWER: Denied. Watkins testified, at the cited pages from her deposition, that the referenced language in Ference's professional services agreement meant that Ference: "'Must support and participate in all religious education functions of the school,' so that is going to be anything within our school that would be considered to be religious education. So, prayers, Mass, prayer services". (ECF No. 75 ¶ 21). Further, Ference agreed to "support and participate in all

religious functions of the school including school liturgy." (Id.). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30). The Aquinas curriculum for math, science, and social studies taught by Ference to sixth grade students during the 2021-2022 school year is attached as Exhibit F, AQUINAS.00770–00834, to ECF No. 75. The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infuses the presence of God in these subjects. (ECF No. 75 at ¶ 34). Aquinas and the Diocese require teachers to discuss and infuse God and the tenets of the Catholic faith when teaching all subjects, including social studies, science, and language arts as part of the curriculum. (Id. at ¶ 35). For example, sixth grade teacher Jennifer Davis infused Gospel values into her teaching about polytheistic civilizations during social studies classes. (Id. at ¶ 36).

66) Mr. Ference was not tasked with providing spiritual direction as part of his teaching duties. (Ex. 4, 81:7-9).

ANSWER: Denied. Monsignor Riffle did not testify, at the cited pages of his deposition, that Ference was not tasked with providing spiritual direction as part of his teaching duties. To the contrary, Monsignor Riffle testified at the cited pages that all employees who agreed to follow the Code of Pastoral Conduct ("Code"), including Ference, were required to conform their conduct the Code during the course of counseling, advising or spiritual direction.

67) Defendants only entrust members of their faith to pass on their faith to students. (Ex. 4, 23:10-19).

ANSWER: Denied. Monsignor Riffle did not testify, at the cited pages of his deposition, that Defendants only entrust members of their faith to pass on their faith to students. To the contrary, Monsignor Riffle testified that the purpose of catechetical training provided to teachers is to give them a better understanding of the Catholic faith for application when teaching students, but not as comprehensive as someone who was practicing the faith and further explained that only teachers who were Catholic could teach the religion class.

68) Mr. Ference never attended catechetical training, nor was he told a timeline for its commencement/completion. (Ex. 2, ¶ 5).

ANSWER: Denied as immaterial. Had Ference not violated his contract and remained a teacher at Aquinas, he would have received additional catechetical training on the tenets of the Catholic faith, which he was to apply in his teaching position as outlined in the Aquinas Faculty Handbook. (ECF No. 75 ¶ 31). Had Ference remained a teacher at Aquinas, additional catechetical training on the Catholic faith would have been provided to him beginning during his first year of employment and continuing on an ongoing basis thereafter. (Id. at ¶ 32).

69) According to Ms. Watkins, the Diocese was responsible for tracking attendance for catechetical training. (Ex. 6, 71:17-23).

ANSWER: Admitted.

70) According to Ms. Marstellar, Ms. Watkins was responsible for tracking attendance for catechetical training. (Ex. 3, 30:18-31:12).

ANSWER: Admitted.

71) Completing catechetical training would not have enabled Mr. Ference to teach religion to his students. (Ex. 4, 23:10-19).

ANSWER: Denied as stated. Completing the type of catechetical training that was to be provided to Ference would not have enabled Mr. Ference to teach the daily religion class to his students.

72) In English when someone uses the word "or," they can take -- either of those can stand in its place. (Ex. 6, 92:16-23).

ANSWER: Denied as immaterial.

73) According to Ms. Watkins, the following language in the Teacher's Contract: "Catholic School Philosophy, goals, and objectives," referred to content that was contained in Aquinas's handbook. (Ex. 6, 94:23-95:8).

ANSWER: Denied as selectively stating only a portion of Ms. Watkins's answer to the question. To the contrary, Ms. Watkins was asked at the cited pages of her deposition: "'What does "Catholic School Philosophy, goals, and objectives'" mean?" And Ms. Watkins responded: "It's understanding what's written in the handbook, it's treating children with dignity and respect, it is being a minister and guiding these children in their faith, as well as their academics."

74) Mr. Ference never received Aquinas's Handbook, nor was instructed to read it or how to locate it. (Ex. 2, ¶ 6; Ex. 6, 63:20-64:5, 77:5-19).

ANSWER: Denied. The "Aquinas Faculty Handbook" was placed in Ference's classroom and he was instructed by Aquinas's Principal, Kelly Watkins, to read it. (ECF No. 75 ¶ 26). The "Aquinas Faculty Handbook" reiterated the requirements of the "Cardinal Clause" set forth in Ference's Teacher contract, and states: "When hiring teachers and administrators for all Catholic Schools in the Diocese of Greensburg, including private schools, teachers and administrators are

required to sign the Cardinal Clause. (Id. at ¶ 27). During the hiring process for teachers and administrators, teachers and administrators are required to read the Cardinal Clause and ask any questions before signing the form. (Id.) The employee recognizes the religious nature of the religious nature of the Diocese of Greensburg and agrees the employer has the right to dismiss an employee for public immorality, public scandal or public rejection of the teachings, doctrines or laws of the Roman Catholic Church, hereby terminating any and all rights that the employee may have hereunder, subject, however to the personal due process promulgated by the Roman Catholic Church. (Id.) Examples of the violation of this clause would include, but are not limited to, participation by an employee in a marriage which is not recognized as being valid by the Roman Catholic Church, support of activities which espouse beliefs contrary to Catholic Church teachings and laws such as advocacy of a practice such as abortion, or the holding up to doubt or question the official teaching, doctrine or laws of the Catholic Church." (Id.) The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28).

75) According to Monsignor Riffle, the following language in the Teacher's Contract: "Catholic School Philosophy, goals, and objectives," referred to content that could largely be obtained from the "About Us" section of Aquinas's website. (Ex. 4, 75:4-25).

ANSWER: Denied as selectively stating only a portion of Monsignor's answer to the questions that were asked during his deposition. The questions asked, and answers given at the cited page, were as follows:

**Q.** It says in the first bullet point, "Must have an understanding and acceptance of Catholic School Philosophy, goals, and objectives" as a position requirement of the job of a teacher. How do I obtain an understanding of Catholic School Philosophy, goals, and objectives as a non-Catholic?

**A.** The Aquinas web page, when you go under the category "About Us," lists the mission statement of Aquinas Academy and a number of bullet points about what they expect someone to accomplish.

**Q.** So, if I read that, I've met this bullet point?

**A.** It would help you to understand.

**Q.** But would it meet this bullet point? Would I have fulfilled that requirement by reading that web page?

**A.** I don't know that it's all inclusive, but I certainly think it would guide you in the right direction.

76) Mr. Ference was never directed by Defendants to read content from Aquinas's website, including the "About Us" section of it. (Ex. 2, ¶ 7).

ANSWER: Denied as immaterial.

77) According to Monsignor Riffle, the laws, doctrines, and teachings of the Catholic Church would be taught to Mr. Ference in catechetical training. (Ex. 4, 78:13-21).

ANSWER: Denied as stated. Ference, who was born and raised Catholic and received the holy sacraments of Baptism, Communion and Confirmation, was further instructed and trained regarding the tenets of the Catholic faith when he reviewed, understood, and agreed with the terms of the following documents he executed or was provided when he was hired: Teacher's Contract documents, Code of Pastoral Conduct, Aquinas Handbook, and Virtus Training. (ECF No. 75 at ¶ 19). The "Aquinas Faculty Handbook" reiterated the requirements of the "Cardinal Clause" set forth in Ference's Teacher contract, and states: "When hiring teachers and administrators for all Catholic Schools in the Diocese of Greensburg, including private schools, teachers and administrators are required to sign the Cardinal Clause. (Id. at ¶ 27). During the hiring process for teachers and administrators, teachers and administrators are required to read the Cardinal Clause and ask any questions before signing the form. (Id.) The employee recognizes the religious nature of the religious nature of the Diocese of Greensburg and agrees the employer has the right

to dismiss an employee for public immorality, public scandal or public rejection of the teachings, doctrines or laws of the Roman Catholic Church, hereby terminating any and all rights that the employee may have hereunder, subject, however to the personal due process promulgated by the Roman Catholic Church. Id. Examples of the violation of this clause would include, but are not limited to, participation by an employee in a marriage which is not recognized as being valid by the Roman Catholic Church, support of activities which espouse beliefs contrary to Catholic Church teachings and laws such as advocacy of a practice such as abortion, or the holding up to doubt or question the official teaching, doctrine or laws of the Catholic Church." (Id.) Had Ference remained a teacher at Aquinas, he also would have received additional catechetical training on the tenets of the Catholic faith, which he was to apply in his teaching position as outlined in the Aquinas Faculty Handbook. (Id. at ¶ 31). Had Ference remained a teacher at Aquinas, additional catechetical training on the Catholic faith would have been provided to him beginning during his first year of employment and continuing on an ongoing basis thereafter. (Id. at ¶ 32).

78) According to Ms. Watkins, Mr. Ference would learn the laws, doctrines, and teachings of the Catholic Church from reading Aquinas's Handbook. (Ex. 6, 96:23-25).

ANSWER: Denied as misstating Ms. Watkins's testimony. The questions asked, and answers given at the cited page of Ms. Watkins's deposition, in reference to the Aquinas Faculty Handbook, were as follows:

**"Q.** Did Mr. Ference ever receive any instruction in the Catholic School Philosophy, goals, and objectives?

**A.** I don't know.

**Q.** Then the language here, the third bullet point down, "Must follow applicable government laws as well as the laws, doctrines, and teachings of the Catholic Church." What laws, doctrines, and teachings of the Catholic Church is that referring to?

**A.** The ones laid out in the handbook."

Further, the "Aquinas Faculty Handbook" was placed in Ference's classroom and he was instructed by Aquinas's Principal, Kelly Watkins, to read it. (ECF No. 75 ¶ 26). The "Aquinas Faculty Handbook" reiterated the requirements of the "Cardinal Clause" set forth in Ference's Teacher contract, and states: "When hiring teachers and administrators for all Catholic Schools in the Diocese of Greensburg, including private schools, teachers and administrators are required to sign the Cardinal Clause. (Id. at ¶ 27). During the hiring process for teachers and administrators, teachers and administrators are required to read the Cardinal Clause and ask any questions before signing the form. (Id.) The employee recognizes the religious nature of the religious nature of the Diocese of Greensburg and agrees the employer has the right to dismiss an employee for public immorality, public scandal or public rejection of the teachings, doctrines or laws of the Roman Catholic Church, hereby terminating any and all rights that the employee may have hereunder, subject, however to the personal due process promulgated by the Roman Catholic Church. (Id.) Examples of the violation of this clause would include, but are not limited to, participation by an employee in a marriage which is not recognized as being valid by the Roman Catholic Church, support of activities which espouse beliefs contrary to Catholic Church teachings and laws such as advocacy of a practice such as abortion, or the holding up to doubt or question the official teaching, doctrine or laws of the Catholic Church." (Id.) The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28)

79) Mr. Ference never received curriculum that included religious instruction as a required topic in his classes, including the documents marked Aquinas 00770-00834. (Ex. 2, ¶ 8).

ANSWER: Denied. The Aquinas curriculum for math, science, and social studies taught by Ference to sixth grade students during the 2021-2022 school year is attached as Exhibit F, AQUINAS.00770–00834, to ECF No. 75. The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infuses the presence of God in these subjects. (ECF No. 75 at ¶ 34). Aquinas and the Diocese require teachers to discuss and infuse God and the tenets of the Catholic faith when teaching all subjects, including social studies, science, and language arts as part of the curriculum. (Id. at ¶ 35). For example, sixth grade teacher Jennifer Davis infused Gospel values into her teaching about polytheistic civilizations during social studies classes. (Id. at ¶ 36).

80) Mr. Ference taught his subjects for Defendants in the same manner that he taught in public schools. (Ex. 2, ¶ 9).

ANSWER: Denied. The Aquinas curriculum for math, science, and social studies taught by Ference to sixth grade students during the 2021-2022 school year is attached as Exhibit F, AQUINAS.00770–00834, to ECF No. 75. The Aquinas curriculum for science and social studies taught by Ference to sixth grade students during the 2021–2022 school year infuses the presence of God in these subjects. (ECF No. 75 at ¶ 34). Aquinas and the Diocese require teachers to discuss and infuse God and the tenets of the Catholic faith when teaching all subjects, including social studies, science, and language arts as part of the curriculum. (Id. at ¶ 35). For example, sixth grade teacher Jennifer Davis infused Gospel values into her teaching about polytheistic civilizations during social studies classes. (Id. at ¶ 36).

81) When asked what Catholic beliefs, if any, Mr. Ference would educate his students in, Monsignor Riffle responded, “I don’t know that I have an answer specifically.” (Ex. 4, 61:21-62:23).

ANSWER: Denied as selectively stating only a portion of Monsignor's answer to the questions that were asked during his deposition. The questions asked, and answers given at the cited page of Monsignor Riffle's deposition, were as follows:

**Q.** Let's talk about educating students in the beliefs of the Catholic religion. Would Mr. Ference, as a non-Catholic teacher, have any role in that?

**A.** When you are a teacher in a Catholic school, you are part of a Catholic community, and the whole essence of what we believe as a Catholic faith should imbue every single thing that we do. And so, his role would be to promote the faith, however limited his understanding of that faith is, and to realize that there are ways that he, in his specific discipline, can bring the presence of God into his teaching.

**Q.** But how would Mr. Ference specifically educate students? Like, what beliefs of the Catholic religion would Mr. Ference educate students in or be required to educate them in?

**A.** I don't know that I have an answer specifically, but an overarching answer is our belief in the love and mercy of God, the goodness of God, God is the source of all things. So, in whatever subject he was teaching, to acknowledge the beauty of creation, if he's teaching art, and that that creation is from God, those types of elements.

82) For Mr. Ference's role in fostering Catholic values and beliefs in his classes, Ms. Watkins explained that she expected him to act in the same manner as a public-school teacher. (Ex. 6, 74:17-75:2).

ANSWER: Denied as a misrepresentation of Ms. Watkins's testimony. The questions asked, and answers given at the cited pages of Ms. Watkins's deposition, were as follows:

**Q.** So, would Mr. Ference have been considered a catechist?

**A.** I don't know -- I wouldn't say a catechist, because that's specific to a particular class, but if he is going to have to have a title, I'd probably call him a minister of the faith, because he is shaping and molding and helping the children with their growth in the Catholic faith.

**Q.** What's the line between minister and a catechist?

**A.** A term, differential. A catechist is going to be a formal -- in my opinion, a formal trainer. It may differ upon belief of someone else, but a catechist is a formal teacher, whereas a minister is asked to foster the values and the belief.

**Q.** So, how would Mr. Ference, as a non-Catholic, have fostered the values and the beliefs of the

Catholic Church in his classes?

**A.** By treating the students with respect, by making them feel a part of the group, by not allowing students to talk poorly about others, no name calling, being there for them, asking questions and listening when they need someone to talk to.

**Q.** Did you do those things when you were a teacher at public schools?

**A.** Yes.

83) Defendants' teacher evaluations did not have a faith-based component to them. (Ex. 5, 25:3-26:7).

ANSWER: Denied as a misstatement of Kelly Davis's testimony and the undisputed performance evaluation forms. The questions asked, and answers given at the cited pages of Ms. Davis's deposition, were as follows:

**Q.** Who gives you the performance evaluation?

**A.** My principal.

**Q.** Is that Kelly Watkins?

**A.** Kelly, yes.

**Q.** What are you graded on? Like, how does the performance evaluation look?

**A.** Professionalism, knowledge of content. There is three areas. I don't remember the last one, but they are all graded on a one to three scale and then the score is averaged, so you should fall within at least the proficient to exceptional range.

**Q.** Are you graded specifically as it relates to your religion class in those performance evaluations?

**A.** No.
**Q.** Is there anything in there about, you know, you did a great job teaching the faith?

**A.** No.

**Q.** Is it more just like a –

**A.** It could be used –

MR. MATTHEWS: Hold on. Let him finish the question.

**Q.** Please, go on. It could be used for what?

**A.** It could be used either in a public or private setting.

**Q.** So, it's more just a generic?

**A.** Yes. And I cannot remember the name of the -- Charlotte Danielson. It's the Charlotte Danielson observation method.

**Q.** That's what you're graded on?

**A.** Uh-huh.

Further, the Rubric Assessment form for evaluating the performance of Aquinas sixth grade teachers during the 2021-2022 school year is attached as Exhibit I, AQUINAS.00835-00848, to ECF No. 75, ¶ 46. This document was produced in response to Ference's supplemental discovery requests. Id. The Rubric Assessment includes an evaluation of how all teachers infuse the presence of God and tenets of the Catholic Faith into their classroom instruction. Id. at ¶ 47 (Ex. I at AQUINAS 00837, 00839, 00841, 00843, 00845, 00846; Ex. G, pp. 7–11).

84) Defendants used the Charlotte Danielson observation method for their teacher evaluations, which could be used in either a public or private school. *Id*.

ANSWER: Denied as selectively incomplete. The Charlotte Danielson observation method was used in conjunction with a customized Rubric Assessment form for evaluating the performance of Aquinas sixth grade teachers during the 2021-2022 school year. That form is attached as Exhibit I, AQUINAS.00835-00848, to ECF No. 75, ¶ 46. This document was produced in response to Ference's supplemental discovery requests. Id. The Rubric Assessment form includes an evaluation of how all teachers infuse the presence of God and tenets of the Catholic Faith into their classroom instruction. Id. at ¶ 47 (Ex. I at AQUINAS 00837, 00839, 00841, 00843, 00845, 00846; Ex. G, pp. 7–11).

85) Outside of the religion class that Ms. Davis taught, she would not proactively discuss or infuse the Catholic faith, its values, and its tenets into her non-religion classes, such as social studies, science, and the language arts. (Ex. 5, 19:11-13, 20:7-11, 37:24-38:4, 38:20-23, 39:2-5).

ANSWER: Denied as a selective misstatement of Ms. Davis's testimony. At the cited pages 37-38 of her deposition, Ms. Davis testified that she did not teach religion during non-religion classes, such as social studies, science, and the language arts, because there was a separate class for religion, only. However, Ms. Davis testified that she did infuse the tenets of the Catholic faith into her non-religion classes, such as social studies, science, and the language arts, when appropriate. In this regard, her testimony at the cited pages 37-38 of her deposition was:

**Q.** I asked you earlier if you ever infused or taught religion in your science, math, and social studies classes and you said no, so what's the change now? I'm trying to understand, because now you're saying you teach religion in those classes?

MR. MATTHEWS: Objection to the form. You can answer.

**A.** If it was brought up by a student and they had a question, then I could expand on it, but I did not formally teach in my classes what I was teaching in my religion class. So, students are very inquisitive about why things happen. For example, in social studies, because I teach ancient civilizations, we talk about many Gods, because the ancient civilizations were polytheistic, and in Mesopotamia specifically, where Judaism was created, that might come up based on the establishment of Judaism, but I would not teach them about the tenets, no.

**Q.** So, you wouldn't teach about the tenets of the faith. Would you proactively infuse the tenets of the faith into social studies, science, or language arts?

**A.** No. I usually kept to the topic at hand.

**Q.** And the topic wasn't religion, typically?

**A.** Not usually.

86) Mr. Ference did not begin any of his classes with prayer. (Ex. 2, ¶ 10).

ANSWER: Denied as immaterial if Ference unilaterally chose to violate his teacher's contract. Principal Kelly Watkins testified that the language in Ference's professional services agreement meant that Ference: "'Must support and participate in all religious education functions of the school,' so that is going to be anything within our school that would be considered to be religious education. So, prayers, Mass, prayer services". Further, Ference agreed to "support and participate in all religious functions of the school including school liturgy." (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29). Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (Id. at ¶ 30).

87) Mr. Ference did not take communion in Mass with his students. (Ex. 2, ¶ 11).

ANSWER: Admitted.

88) Receiving and signing the Teacher's Contract documents did not enable Mr. Ference to educate his students in the beliefs of the Catholic religion. (Ex. 4, 64:11-15).

ANSWER: Denied as a selective misstatement of Monsignor Riffle's testimony. The questions asked, and answers given at the cited page of Monsignor Riffle's deposition, were as follows:

**Q.** Do you know what it means under (c) to educate students in the beliefs of the Roman Catholic religion as it applies to Mr. Ference?

**A.** Well, I believe that's spelled out in the 2(a) to (c) subparagraphs that teachers are required to support and participate in all the listed tasks, as required by their contracts and the specific requirements for teachers listed in the contract and described in that form.

**Q.** So, because he signed a contract, he's able to educate students in the beliefs of the Roman Catholic religion?

MR. MATTHEWS: Objection to the form.

**A.**I don't believe that would be true.

**Q.** So, if that's not true, then how did Aquinas feel comfortable with Mr. Ference educating students in the beliefs of the Roman Catholic religion if he's not Catholic? How was that assigned to him as a duty?

**A.** Just his overt behavior as an individual who comports himself in compliance with the way that a person of faith would comport themselves.

**Q.** That's assuming he has faith, right?

**A.** (Nodding head up and down.) I would think so.

89) Reading the Diocese's Code of Pastoral Conduct will not educate the reader in the Catholic faith. (Ex. 4, 40:5-41:13).

ANSWER: Denied as a misstatement of Monsignor Riffle's testimony as to the purpose of the document. The questions asked, and answers given at the cited pages of Monsignor Riffle's deposition, were as follows:

**Q.** We talked about Virtus already, so I want to start with the Code of Pastoral Conduct first. This is Bates No. Aquinas 62 through 87. So, I'd like you to point me to, you know, where I would take religious-specific, not conduct-specific, but religious-specific training from this document, please.

**A.** As I said, it is conduct related.

**Q.** And this conduct, at least from my reading of it, seems to be directed at preventing sexual assault. Is that your understanding of this as well?

**A.** It's about how someone presents themselves in relationship to being an employee or a volunteer in the Catholic Church.

**Q.** But, specifically, I mean, I think it's more than just that, right? It's about making sure -- at least my understanding of this -- that people are not taken advantage of?

**A.** That's a part of it, yes.

**Q.** What are the other parts of it?

**A.** Again, how they comport themselves as an employee or volunteer in the Diocese.

**Q.** Which sections of this, if I read this, would enable me to have an educated conversation with a student about the Catholic faith?

**A.** That's not the purpose of this document.

**Q.** So, this will not educate me in the Catholic belief systems?

**A.** That's not the purpose of this document.

**Q.** So that's a yes, right? This will not educate me in the Catholic belief system?

**A.** Not specifically, other than describing what expectations are placed on somebody who is a volunteer or an employee.

**Q.** And what are those expectations?

**A.** That they conduct themself in a way that is supportive of the teachings and deeply held faith beliefs of the Catholic Church.

**Q.** So, where are those teachings and beliefs in that document?

**A.** They are referenced in the fact that they – in the introduction. The code cannot cover every aspect of every circumstance that one may encounter in the course of church-related work. It should be seen as a concise enumeration of expected public and private behavioral standards for those working or volunteering….

90) Defendants never instructed Mr. Ference in the laws, doctrines, and teachings of the Catholic Church. (Ex. 2, ¶ 12).

ANSWER: Denied. Ference, who was born and raised Catholic and received the holy sacraments of Baptism, Communion and Confirmation, was further instructed and trained regarding the tenets of the Catholic faith when he reviewed, understood, and agreed with the terms of the following documents he executed or was provided when he was hired: Teacher's Contract documents, Code of Pastoral Conduct, Aquinas Handbook, and Virtus Training. (ECF No. 75 at ¶ 19). The "Aquinas Faculty Handbook" reiterated the requirements of the "Cardinal Clause" set

forth in Ference's Teacher contract, and states: "When hiring teachers and administrators for all Catholic Schools in the Diocese of Greensburg, including private schools, teachers and administrators are required to sign the Cardinal Clause. (Id. at ¶ 27). During the hiring process for teachers and administrators, teachers and administrators are required to read the Cardinal Clause and ask any questions before signing the form. (Id.) The employee recognizes the religious nature of the religious nature of the Diocese of Greensburg and agrees the employer has the right to dismiss an employee for public immorality, public scandal or public rejection of the teachings, doctrines or laws of the Roman Catholic Church, hereby terminating any and all rights that the employee may have hereunder, subject, however to the personal due process promulgated by the Roman Catholic Church. Id. Examples of the violation of this clause would include, but are not limited to, participation by an employee in a marriage which is not recognized as being valid by the Roman Catholic Church, support of activities which espouse beliefs contrary to Catholic Church teachings and laws such as advocacy of a practice such as abortion, or the holding up to doubt or question the official teaching, doctrine or laws of the Catholic Church." (Id.) Had Ference remained a teacher at Aquinas, he would have received additional catechetical training on the tenets of the Catholic faith, which he was to apply in his teaching position as outlined in the Aquinas Faculty Handbook. (Id. at ¶ 31). Had Ference remained a teacher at Aquinas, additional catechetical training on the Catholic faith would have been provided to him beginning during his first year of employment and continuing on an ongoing basis thereafter. (Id. at ¶ 32).

91) Because of Mr. Ference's conversation with Ms. Watkins about not teaching religious content, he understood that religious-related provisions of the Teacher's Contract, except as related behavior supervision, would not apply to him. (Ex. 1, 54:7-14, 70:23-71:5).

ANSWER: Denied. Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 67 ¶ 28). Ference unilaterally chose to violate his teacher's contract. Principal Kelly Watkins testified that the language in Ference's professional services agreement meant that Ference: "'Must support and participate in all religious education functions of the school,' so that is going to be anything within our school that would be considered to be religious education. So, prayers, Mass, prayer services". Further, Ference agreed to "support and participate in all religious functions of the school including school liturgy." (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28). Watkins expected Ference to participate in the liturgy of the Mass and pray during class with his students. (Id. at ¶ 29).

92) There is a shortage of Catholic teachers. (Ex. 3, 23:8-9).

ANSWER: Admitted.

93) Mr. Ference did not believe that he had the right to raise questions with his students regarding the validity of any of the tenets of the Catholic faith because he was told that he was not to do anything with religion. (Ex. 1, 91:3-10).

ANSWER: Denied. Ference did not have the right to raise questions with his students regarding the validity of any of the tenets of the Catholic faith because of the promises he made in his teacher's contract to use his position to support the tenets of the Catholic faith. Principal Kelly Watkins testified that the language in Ference's professional services agreement meant that Ference: "'Must support and participate in all religious education functions of the school,' so that

is going to be anything within our school that would be considered to be religious education. So, prayers, Mass, prayer services". Further, Ference agreed to "support and participate in all religious functions of the school including school liturgy." (ECF No. 75 ¶ 21). The "Aquinas Faculty Handbook" further reiterated the requirements of the "Cardinal Clause" set forth in Ference's Teacher contract, and states: "When hiring teachers and administrators for all Catholic Schools in the Diocese of Greensburg, including private schools, teachers and administrators are required to sign the Cardinal Clause. (Id. at ¶ 27). During the hiring process for teachers and administrators, teachers and administrators are required to read the Cardinal Clause and ask any questions before signing the form. (Id.) The employee recognizes the religious nature of the religious nature of the Diocese of Greensburg and agrees the employer has the right to dismiss an employee for public immorality, public scandal or public rejection of the teachings, doctrines or laws of the Roman Catholic Church, hereby terminating any and all rights that the employee may have hereunder, subject, however to the personal due process promulgated by the Roman Catholic Church. Id. Examples of the violation of this clause would include, but are not limited to, participation by an employee in a marriage which is not recognized as being valid by the Roman Catholic Church, support of activities which espouse beliefs contrary to Catholic Church teachings and laws such as advocacy of a practice such as abortion, or the holding up to doubt or question the official teaching, doctrine or laws of the Catholic Church." (Id.)

94) Due to Mr. Ference's lack of Catholic faith, he was not considered a catechetical teacher. (Ex. 3, 25:3-6).

ANSWER: Admitted with the understanding that a "catechetical teacher" is one who is qualified to teach religion class. As a hiring restriction, Watkins told Ference that he was not permitted to teach the sixth-grade religion class because he is Lutheran. (ECF No. 67 ¶ 28). Both

Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 75 ¶ 30). Ference does not recall Watkins ever using the word "secular" to describe his teaching duties at Aquinas. (Id. ¶ 29). By using the word "secular" in his complaint to describe his teaching duties at Aquinas, Ference meant only that he did not teach the religion class that his students attended once daily. (Id. ¶ 37).

95) For Virtus training, Mr. Ference attended Keeping the Promise Alive 3.0, which lasted for approximately 25-30 minutes. (ECF 67, ¶ 15; ECF 73; Ex. 4, 34:16-35:4).

ANSWER: Admitted.

96) The Keeping the Promise Alive 3.0 training content is focused on preventing sexual predators and not religious instruction. (ECF 73).

ANSWER: Denied. Virtus training is based on the tenets of the Catholic faith and customized for the Catholic faith. (ECF No. 75 ¶s 19, 21).

97) It is simply not the purpose of Keeping the Promise Alive 3.0 to give a person a foundation to help spread the Catholic faith. (Ex. 4, 35:23-36:8; Ex. 5, 23:15-19).

ANSWER: Denied. Virtus training is based on the tenets of the Catholic faith and customized for the Catholic faith. (ECF No. 75 ¶s 19, 21).

98) Ms. Davis never witnessed Mr. Ference provide religious instruction to his sixth-grade students. (Ex. 1, 34:18-20).

ANSWER: Denied. The cited deposition testimony does not pertain to or support this statement of fact.

99) Throughout Mr. Ference's employment with Defendants, Ms. Davis was not responsible for training him in anything in an official capacity, nor did she provide him instruction as it relates to the Catholic faith or religion. (Ex. 5, 29:15-30:24).

ANSWER: Admitted.

100) From Ms. Watkins's observations of Mr. Ference teaching, she concluded that he was an "absolutely amazing teacher" who was meeting his job requirements. (Ex. 6, 98:6-99:7; Ex. 8).

ANSWER: Denied as stated. Watkins testified at the cited pages of her deposition that the basis of her description of Ference as an "absolutely amazing teacher" in an email to the principal of the Westmoreland Intermediate Unit, Joe Rice, was: "Because he came in and formed relationships with the kids. They enjoyed being in his class. He was teaching the curriculum, asked questions, participated in all of the school events." And on that basis, Ms. Watkins testified, he was meeting the requirements of his job, however, she also testified that he was properly terminated because his same-sex marriage was "against Catholic values."

101) Mr. Ference's only deviation from his job duties was being in a same-sex marriage. (Ex. 6, 108:5-9).

ANSWER: Admitted in part and denied in part. It is admitted that Ms. Watkins testified at the cited pages of her deposition that it was her understanding that Mr. Ference's only deviation from his job duties was his being a man married to another man in a same-sex marriage. It is denied that was Ference's only deviation from his job duties. To the contrary, Ference repeatedly admitted in his deposition and throughout his pleadings that he unilaterally violated the terms of his teacher's contract by failing and/or refusing to follow the laws, doctrines and teachings of the

Catholic Church and by refusing to support and participate in all religious functions of the school, including his refusal to pray with his students. (ECF No. 75 at ¶ 21).

102) Ms. Watkins never instructed Mr. Ference to pray in class with his students. (Ex. 2, ¶ 4).

ANSWER: Denied. Both Ference and Watkins agree that the only limitation placed on Ference's job duties was that he would not teach the religion class because he was not a practicing Catholic. (ECF No. 75 ¶ 30). The "Aquinas Faculty Handbook" was placed in Ference's classroom and he was instructed by Watkins, to read it. (Id. at ¶ 26). The "Aquinas Faculty Handbook" also stated that Ference was expected to participate in prayer with his students. It states: "Prayer: Prayer should be used in each class. This is to help develop a personal relationship with God, and students will need to be taught how and when to pray." (Id. at ¶ 28).

103) Defendants terminated Mr. Ference because of his same-sex marriage and not because he is Lutheran. (Ex. 4, 81:24-82:5).

ANSWER: Denied as stated. Monsignor Riffle testified at the cited pages from his deposition that Ference was terminated because he was in a same-sex marriage which violates the Catholic Church's genuinely held belief that marriage is between a man and a woman.

104) In terminating Mr. Ference, Ms. Marstellar told him that "perhaps [he] didn't understand because [he] wasn't Catholic that being in the same-sex relationship was not okay." (Ex. 1, 93:9-21).

ANSWER: Denied. Superintendent Maureen Marsteller told Ference he was terminated because his same-sex marriage violates the tenets of the Catholic faith that marriage is between a man and a woman. (ECF No. 75 at ¶ 49).

105) [redacted] (Ex. 7).

ANSWER: Denied as immaterial.

106) Mr. Ference never received a Rubric Assessment, including the documents marked Aquinas 00835-00848, during his employment with Defendants and was never informed that he would be evaluated on criteria contained in those documents. (Ex. 2, ¶ 14).

ANSWER: It is admitted that, due to the short term of his employment, Ference never received a Rubric Assessment, including the documents marked Aquinas 00835-00848. It is denied that Ference was never informed that he would be evaluated on criteria contained in those documents. To the contrary, Ference's job duties, specifications, and requirements were spelled out in his teacher's contract, and included: following the laws, doctrines and teachings of the Catholic Church; participating in Protecting God's Children and Training and Catechetical certification; and supporting and participating in all religious functions of the school including school liturgy. (ECF No. 75 at ¶ 21).

107) Prior to Mr. Ference's arrival, Ms. Davis also had experience teaching sixth-grade science and social studies. (Ex. 5, 20:1-23).

ANSWER: Denied as immaterial.

Respectfully submitted,

**MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C.**

/s/ Bernard P. Matthews, Jr., Esq.
**BERNARD P. MATTHEWS, JR., ESQ.**
PA. I.D. #54880
bmatthews@mdbbe.com
**ALEXANDER W. BROWN, ESQ.**
PA. I.D. #322661
abrown@mdbbe.com
40 North Pennsylvania Ave., Suite 410
Greensburg, PA 15601
Telephone No.: (724) 836-4840
Fax No.: (724) 836-0532
*(Attorneys for Defendants)*

**BALL, MURREN & CONNELL, LLC**

/s/ Philip J. Murren, Esq.
**PHILIP J. MURREN, ESQ.**
PA. I.D. #21426
bmc-law2@msn.com
**KATHERINE M. FITZ-PATRICK, ESQ.**
PA. I.D. #208863
fitz-patrick@bmc-law.net
**DAVID R. DYE, ESQ.**
PA. I.D. #88665
dye@bmc-law.net
2303 Market Street
Camp Hill, PA 17011
Telephone No.: (717) 232-8731
Fax No.: (717) 232-2142
*(Attorneys for Defendants)*