**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH FERENCE,<br><br>Plaintiff,<br><br>v.<br><br>ROMAN CATHOLIC DIOCESE OF GREENSBURG and AQUINAS ACADEMY,<br><br>Defendants. | No. 2:22-cv-00797-NR-MPK<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY QUESTIONS FOR INTERLOCUTORY APPEAL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION

Bernard P. Matthews, Jr. (PA 54880)
Meyer, Darragh, Buckler,
Bebenek & Eck, PLLC
40 North Pennsylvania Ave.
Suite 410
Greensburg, PA 15601
(724) 836-4840
bmatthews@mdbbe.com

Philip J. Murren (PA 21426)
Katherine M. Fitz-Patrick (PA 208863)
Ball, Murren & Connell, LLC
2303 Market Street
Camp Hill, PA 17011
(717) 232-8731
bmc-law2@msn.com

Luke W. Goodrich (DC 977736)*
Laura Wolk Slavis (DC 1643193)*
Richard C. Osborne (DC 90024046)*
Hannah S. Wander (DC 90040200)*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, DC 20006
(202) 955-0095
lgoodrich@becketfund.org

**Admitted pro hac vice*

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. The Court should certify its order for interlocutory appeal because it satisfies the requirements of 28 U.S.C. § 1292(b). ..... 3

A. The order involves controlling questions of law. ..... 4

B. There is substantial ground for difference of opinion. ..... 5

C. Immediate appeal is likely to materially advance the termination of the litigation. ..... 16

II. Alternatively, the Court should reconsider its ruling and grant summary judgment to the Diocese. ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......... 15

*Aparicio v. Christian Union, Inc.*,
No. 18-cv-592, 2019 WL 1437618
(S.D.N.Y. Mar. 29, 2019) .......... 12

*Bear Creek Bible Church v. EEOC*,
571 F. Supp. 3d 571 (N.D. Tex. 2021) .......... 6, 7, 14

*Behrend v. S.F. Zen Ctr., Inc.*,
108 F.4th 765 (9th Cir. 2024) .......... 17

*Belya v. Kapral*,
188 F.4th 169 (2d Cir. 2026) .......... 16, 17

*Bethea v. Nation of Islam*,
248 F. App'x 331 (3d Cir. 2007) .......... 16

*Billard v. Charlotte Catholic High Sch.*,
101 F.4th 316 (4th Cir. 2024) .......... 1, 6, 10, 11

*Billard v. Charlotte Catholic High Sch.*,
No. 17-cv-11, 2021 WL 4037431
(W.D.N.C. Sep. 3, 2021) .......... 11

*Bohnert v. Roman Catholic Archbishop of S.F.*,
136 F. Supp. 3d 1094 (N.D. Cal. 2015) .......... 17

*Bostock v. Clayton County*,
590 U.S. 644 (2020) .......... 1

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) .......... 4, 15

*Bryce v. Episcopal Church in Diocese of Colo.*,
289 F.3d 648 (10th Cir. 2002) .......... 12-13

*Butler v. JSerra Catholic High Sch.*,
No. 25-cv-1430, 2026 WL 2058163
(C.D. Cal. May 12, 2026) .......... 17

*Butler v. St. Stanislaus Kostka Catholic Acad.*,
609 F. Supp. 3d 184 (E.D.N.Y. 2022) .......... 12

*Cannata v. Catholic Diocese of Aus.*,
700 F.3d 169 (5th Cir. 2012) .......... 17

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006) .......... 14

*Ciurleo v. St. Regis Parish*,
214 F. Supp. 3d 647 (E.D. Mich. 2016) .......... 17

*Conlon v. InterVarsity Christian Fellowship*,
777 F.3d 829 (6th Cir. 2015) .......... 2, 4, 17

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
522 F. Supp. 3d 107 (M.D. Pa. 2021) .......... 19

*Curay-Cramer v. Ursuline Acad. of Wilmington*,
450 F.3d 130 (3d Cir. 2006) .......... 6, 7, 17

*Darren Patterson Christian Acad. v. Roy*,
699 F. Supp. 3d 1163 (D. Colo. 2023) .......... 14-15

*Davis v. Balt. Hebrew Congregation*,
985 F. Supp. 2d 701 (D. Md. 2013) .......... 17

*Demkovich v. St. Andrew the Apostle Parish*,
3 F.4th 968 (7th Cir. 2021) .......... 12, 16, 17

*Doe v. Catholic Relief Servs.*,
No. 25-cv-1569, 2026 WL 3091963
(4th Cir. Oct. 16, 2026) .......... 7

*Doe v. Corp. of Catholic Bishop of Yakima*,
957 F. Supp. 2d 1225 (E.D. Wash. 2013) .......... 17

*EEOC v. Miss. Coll.*,
626 F.2d 477 (5th Cir. 1980) .......... 6

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) .......... 15

*Ference v. Roman Catholic Diocese of Greensburg*,
No. 22-cv-797, 2025 WL 4062039
(W.D. Pa. Feb. 24, 2025) .......... 4, 16

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
608 U.S. 174 (2026) ........................................................................ 15

*Fitzgerald v. Roncalli High Sch.*,
73 F.4th 529 (7th Cir. 2023) ........................................................ 1, 6, 7, 10

*Fratello v. Archdiocese of N.Y.*,
863 F.3d 190 (2d Cir. 2017) ........................................................................ 17

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ........................................................................ 15

*Garrick v. Moody Bible Inst.*,
412 F. Supp. 3d 859 (N.D. Ill. 2019) ........................................................ 12

*Green v. Miss U.S. of Am., LLC*,
52 F.4th 773 (9th Cir. 2022) ........................................................................ 15

*Gregorio v. Hoover*,
238 F. Supp. 3d 37 (D.D.C. 2017) ........................................................ 17

*Grussgott v. Milwaukee Jewish Day Sch.*,
882 F.3d 655 (7th Cir. 2018) ........................................................ 2, 10, 17

*Herx v. Diocese of Fort Wayne-S. Bend, Inc.*,
48 F. Supp. 3d 1168 (N.D. Ind. 2014) ........................................................ 17

*Herzog v. St. Peter Lutheran Church*,
884 F. Supp. 2d 668 (N.D. Ill. 2012) ........................................................ 17

*Hosanna-Tabor Evangelical Lutheran & Sch. v. EEOC*,
565 U.S. 171 (2012) ........................................................................ 16, 17

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., Inc.*,
515 U.S. 557 (1995) ........................................................................ 15

*Kedroff v. St. Nicholas Cathedral*,
344 U.S. 94 (1952) ........................................................................ 13

*Kennedy v. Villa St. Catherine, Inc.*,
No. 09-cv-3021, 2010 WL 9009364
(D. Md. June 16, 2010) ........................................................................ 4

*Lee v. Sixth Mount Zion Baptist Church*,
903 F.3d 113 (3d Cir. 2018) ........................................................................ 16

*Lee v. Sixth Mount Zion Baptist Church*,
No. 15-cv-1599, 2017 WL 3608140
(W.D. Pa. Aug. 22, 2017) .......... 16-17

*Little v. Wuerl*,
929 F.2d 944 (3d Cir. 1991) .......... 6

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999) .......... 18

*Markel v. Union of Orthodox Jewish Congregations of Am.*,
124 F.4th 796 (9th Cir. 2024) .......... 10, 17

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
584 U.S. 617 (2018) .......... 15

*McClatchey v. Associated Press*,
No. 05-cv-145, 2007 WL 1720080
(W.D. Pa. June 8, 2007) .......... 16

*McMahon v. World Vision, Inc.*,
147 F.4th 959 (9th Cir. 2025) .......... 17

*McRaney v. N. Am. Mission Bd.*,
157 F.4th 627 (5th Cir. 2025) .......... 2, 16, 17, 18

*MoChridhe v. Acad. of Holy Angels*,
29 N.W.3d 753 (Minn. Ct. App. 2025) .......... 1, 12

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
591 U.S. 732 (2020) .......... 9, 10, 16

*Our Lady's Inn v. City of St. Louis*,
349 F. Supp. 3d 805 (E.D. Mo. 2018) .......... 14

*Payne-Elliott v. Roman Catholic Archdiocese of Indianapolis*,
193 N.E.3d 1009 (Ind. 2022) .......... 1, 12

*Penn v. N.Y. Methodist Hosp.*,
884 F.3d 416 (2d Cir. 2018) .......... 17

*Pennsylvania v. Navient Corp.*,
No. 17-cv-1814, 2019 WL 1052014
(M.D. Pa. Mar. 5, 2019) .......... 5

*Petruska v. Gannon Univ.*,
462 F.3d 294 (3d Cir. 2006) ........ 16

*Puri v. Khalsa*,
321 F. Supp. 3d 1233 (D. Or. 2018) ........ 17

*Rankin v. PTC All. LLC*,
No. 21-cv-1321, 2023 WL 8438604
(W.D. Pa. Dec. 5, 2023) ........ 16

*Rhoades v. Young Women's Christian Ass'n*,
No. 09-cv-1548, 2011 WL 240149
(W.D. Pa. Jan. 24, 2011) ........ 5

*Richardson v. Nw. Christian Univ.*,
242 F. Supp. 3d 1132 (D. Or. 2017) ........ 17

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
No. 12-cv-00993, 2020 WL 4041049
(M.D. Pa. July 17, 2020) ........ 5

*Seattle's Union Gospel Mission v. Woods*,
142 S. Ct. 1094 (2022) ........ 13

*Serbian E. Orthodox Diocese v. Milivojevich*,
426 U.S. 696 (1976) ........ 4

*Simon v. Saint Dominic Acad.*,
No. 19-cv-21271, 2021 WL 6137512
(D.N.J. Dec. 29, 2021) ........ 17

*Slattery v. Hochul*,
61 F.4th 278 (2d Cir. 2023) ........ 14

*Starkey v. Roman Catholic Archdiocese of Indianapolis*,
41 F.4th 931 (7th Cir. 2022) ........ *passim*

*Sterlinski v. Catholic Bishop of Chi.*,
934 F.3d 568 (7th Cir. 2019) ........ 17

*Union Gospel Mission of Yakima v. Brown*,
162 F.4th 1190 (9th Cir. 2026) ........ 13

*United States v. Williams*,
917 F.3d 195 (3d Cir. 2019) ........ 8

*Yin v. Columbia Int'l Univ.*,
335 F. Supp. 3d 803 (D.S.C. 2018) ........................................ 17

*Zimmerman v. Highmark, Inc.*,
No. 23-cv-250, 2025 WL 1724924
(W.D. Pa. June 20, 2025) ........................................ 4, 5

*Zinski v. Liberty Univ., Inc.*,
No. 24-cv-00041, 2025 WL 1001163
(W.D. Va. Apr. 3, 2025) ........................................ 8

**Statutes**

28 U.S.C. § 1292 ........................................ 2, 3, 18

42 U.S.C. § 2000e ........................................ 5, 7

42 U.S.C. § 2000e-1 ........................................ 5, 7

42 U.S.C. § 2000e-2 ........................................ 5

42 U.S.C. § 2000gg-1 ........................................ 8

42 U.S.C. § 2000gg-5 ........................................ 8

42 U.S.C. § 12112 ........................................ 8

42 U.S.C. § 12113 ........................................ 8

## INTRODUCTION

The question in this case is whether a religious school can be forced to retain student-facing employees who reject its religious teachings on marriage and sexuality. Since *Bostock v. Clayton County*, 590 U.S. 644 (2020), five appellate decisions have addressed this question. All five ruled for the religious school on summary judgment or earlier.[1] Three relied on the ministerial exception (*Starkey*, *Fitzgerald*, and *Billard*). Two relied on the broader church-autonomy doctrine (*Payne-Elliott* and *MoChridhe*). Three judges also wrote concurring opinions saying the same result is required by a "straightforward" reading of Title VII's religious exemption. No appellate court has held that a religious school can be forced to hire individuals who reject its religious teachings on marriage or sexuality.

Nevertheless, this Court denied Defendants' motion for summary judgment. ECF 101. In so doing, the Court resolved four significant, unsettled legal questions that merit interlocutory review:

1. Whether Title VII's religious exemptions apply to sex-discrimination claims against a religious employer when the employment decision was undisputedly based on an individual's religious beliefs, observances, or practices.
2. Whether the ministerial exception may be applied on summary judgment when an employee is entrusted with important religious expectations in his employment documents but testifies those expectations didn't apply to him.
3. Whether the church autonomy doctrine protects a Catholic school's decision to dismiss a teacher who rejects the school's religious values.
4. Whether the freedom of expressive association protects a Catholic school's decision to dismiss a teacher who violates core religious principles that the school is trying to teach and model for its students.

---

[1] *Starkey v. Roman Catholic Archdiocese of Indianapolis*, 41 F.4th 931 (7th Cir. 2022); *Payne-Elliott v. Roman Catholic Archdiocese of Indianapolis*, 193 N.E.3d 1009 (Ind. 2022); *Fitzgerald v. Roncalli High Sch.*, 73 F.4th 529 (7th Cir. 2023); *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316 (4th Cir. 2024); *MoChridhe v. Acad. of Holy Angels*, 29 N.W.3d 753 (Minn. Ct. App. 2025).

All four questions meet the standard for interlocutory review. First, each is a "controlling question of law." 28 U.S.C. § 1292(b). If any one of these questions is resolved in the Diocese's favor on appeal, the entire case is resolved.

Second, there is "substantial ground for difference of opinion." *Id.* Several appellate courts and jurists have already disagreed with this Court's answer on Title VII's religious exemptions, the ministerial exception, and church autonomy. And while the expressive-association question has not yet been resolved by any appellate court (because religious schools have always prevailed on other grounds), several courts have held that expressive association protects mission-driven organizations from being compelled to employ individuals who reject their core values.

Third, an immediate appeal from the order may materially advance the termination of the litigation by eliminating the need for a first-of-its-kind jury trial on the ministerial exception. As many courts have recognized, the ministerial exception is a "legal" question for resolution by "[c]ourts." *Grussgott v. Milwaukee Jewish Day Sch.*, 882 F.3d 655, 661-62 (7th Cir. 2018); *accord, e.g.*, *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015). It is also a "structural, threshold immunity from suit" that "must be resolved at the earliest conceivable point in litigation" to avoid "judicial entanglement in religious issues." *McRaney v. N. Am. Mission Bd.*, 157 F.4th 627, 644, 650 (5th Cir. 2025). That is likely why no court within the Third Circuit (or, to our knowledge, the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, or D.C. Circuits) has ever held a jury trial on the ministerial exception. Certifying an interlocutory appeal would help ensure that this Court does not needlessly become the first.

## BACKGROUND

Aquinas Academy is a Catholic school within the Diocese of Greensburg that exists to form students in the Catholic faith. ECF 75 ¶¶ 1, 11. To that end, it requires

all employees to act "in a manner that is consistent with the disciplines and teachings of the Catholic Church." ECF 76-3 at 7; ECF 75 ¶¶ 13-14, 22-26, 44-45.

Plaintiff Kenneth Ference was briefly hired as a sixth-grade teacher at Aquinas Academy after he failed to disclose that he was in a same-sex marriage in violation of Catholic teaching. ECF 67 ¶¶ 21-23. His employment contract, which he signed, stated that "immediate grounds for termination" included "rejection of the official teaching, doctrine or laws of the Roman Catholic Church," including "violation of the laws of the Church concerning marriage … and homosexuality." ECF 76-3 at 2; ECF 75 ¶¶ 27, 48.

When Mr. Ference later disclosed his same-sex marriage, the school terminated his employment. ECF 75 ¶ 49. Mr. Ference then sued for discrimination under Title VII and the Pennsylvania Human Relations Act. *See* ECF 42.

On summary judgment, the Diocese argued that Mr. Ference's claims were barred by four overlapping and mutually reinforcing affirmative defenses: (1) Title VII's religious exemptions; (2) the ministerial exception; (3) church autonomy; and (4) expressive association. On September 30, 2026, this Court denied summary judgment, resolving three of those defenses against the Diocese as a matter of law, and holding that the fourth (the ministerial exception) "depends on disputed facts that must be determined at trial." ECF 101 (Op.) at 17.

## ARGUMENT

### I. The Court should certify its order for interlocutory appeal because it satisfies the requirements of 28 U.S.C. § 1292(b).

District courts may certify an order for interlocutory appeal if the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Here, the Court's order denying summary judgment satisfies all three requirements.

**A. The order involves controlling questions of law.**

The Court's order addresses four controlling questions of law. "A controlling question of law is one in which, either: (1) if erroneous, would be reversible error on final appeal; or (2) is serious to the conduct of the litigation, either practically or legally." *Zimmerman v. Highmark, Inc.*, No. 23-cv-250, 2025 WL 1724924, at *1 (W.D. Pa. June 20, 2025).

The Title VII and First Amendment defenses at issue here meet this standard. First, each defense involves a question of law that, if resolved differently by the Third Circuit, would require reversal on appeal. *See, e.g.*, *Kennedy v. Villa St. Catherine, Inc.*, No. 09-cv-3021, 2010 WL 9009364, at *1 (D. Md. June 16, 2010) (whether Title VII's religious exemption "exempts a religious institution from liability" is "a purely legal question"); *Conlon*, 777 F.3d at 833 (whether ministerial exception applies "is a pure question of law" that a reviewing court "must determine for itself"); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724-25 (1976) (misapplication of the church autonomy doctrine is reversible error); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648-49 (2000) (same for expressive association). Second, each defense is serious to the conduct of the litigation, both practically and legally. Indeed, as this Court has recognized, "[i]f the exemptions apply to Mr. Ference's claims, his claims cannot be sustained." *Ference v. Roman Catholic Diocese of Greensburg*, No. 22-cv-797, 2025 WL 4062039, at *4 (W.D. Pa. Feb. 24, 2025).

In denying summary judgment to the Diocese, this Court did not identify any material factual disputes regarding Title VII's religious exemptions, church autonomy, or expressive association. And while the Court found that "whether Mr. Ference's position was ministerial depends on disputed facts," Op.17, whether those disputed facts are *material* for purposes of applying the ministerial exception is itself a controlling question of law. *See, e.g.*, *Conlon*, 777 F.3d at 833. Mr. Ference's assertions on this score—that he didn't actually perform ministerial duties and was

told the role wasn't ministerial, ECF 83 at 2; Op.16-17—are precisely the type of disputes other circuits have deemed immaterial as a matter of law when resolving the ministerial exception at summary judgment. *See, e.g.*, *Starkey*, 41 F.4th at 941 (explaining how these arguments "misunderstand[] the ministerial exception"). Thus, certifying an interlocutory appeal here allows the Third Circuit to rule on these controlling legal questions now, "result[ing] in significant time and expense savings for both the Court and the litigants." *Rhoades v. Young Women's Christian Ass'n*, No. 09-cv-1548, 2011 WL 240149, at *1-2 (W.D. Pa. Jan. 24, 2011).

**B. There is substantial ground for difference of opinion.**

The questions addressed in the order also present substantial grounds for difference of opinion. This standard is met when "there is genuine doubt or conflicting precedent as to the correct legal standard, conflicting and contradictory opinions, or the absence of controlling law on a particular issue." *Zimmerman*, 2025 WL 1724924, at *1; *see also Pennsylvania v. Navient Corp.*, No. 17-cv-1814, 2019 WL 1052014, at *2 (M.D. Pa. Mar. 5, 2019) ("[q]uestions of first impression can present substantial grounds for difference of opinion"). Put another way, the "relevant question is whether reasonable jurists might disagree as to the proper resolution of a disputed issue." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-993, 2020 WL 4041049, at *8 (M.D. Pa. July 17, 2020).

***Title VII's religious exemptions.*** Title VII provides that "[t]his subchapter shall not apply to" a religious organization "with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a); *see also id.* § 2000e-2(e)(2) (exempting "educational institution[s]" when they "hire and employ employees of a particular religion"). The statute further defines "religion" to "include[] all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

This Court held that these religious exemptions "only apply with respect to *religious* discrimination," not to claims of "sex discrimination." Op.5. However, reason-

able jurists have disagreed with this interpretation, concluding instead that a "straightforward reading" of the religious exemptions shows that the exemptions *also* apply to "sex discrimination that has a religious footing." *Starkey*, 41 F.4th at 946-47 (Easterbrook, J., concurring); *accord Fitzgerald*, 73 F.4th at 534 (Brennan, J., concurring) ("[W]hen the exemption applies, 'all of Title VII drops out,' including the provisions prohibiting discrimination on non-religious bases."); *Billard*, 101 F.4th at 335 (King, J., dissenting in part and concurring in the judgment) ("straight-forward reading" of exemption bars plaintiff's "sex discrimination claim"); *EEOC v. Miss. Coll.*, 626 F.2d 477, 485-86 (5th Cir. 1980) (religious exemption barred sex-discrimination investigation "to avoid … conflict[ ] [with] the religion clauses"); *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 591 (N.D. Tex. 2021) ("The plain text of [the religious] exemption" bars sex-discrimination claims "when [a religious employer] refuses to employ an individual because of sexual orientation or gender expression, based on religious observance, practice, or belief.")

This understanding is consistent with the Third Circuit's "expansive interpretations" of the religious exemptions. Op.7. For example, in *Curay-Cramer v. Ursuline Acad. of Wilmington*, the court rejected a sex-discrimination claim brought by a middle-school teacher against a Catholic school. 450 F.3d 130, 141 (3d Cir. 2006). Relying on its earlier decision in *Little v. Wuerl*—which had "read the exemption broadly" to avoid serious "constitutional concerns" under the church autonomy doctrine, 929 F.2d 944, 951 (3d Cir. 1991)—the court concluded that Congress intended the exemptions "to enable religious organizations to create and maintain communities composed solely of individuals faithful to their doctrinal practices, whether or not every individual plays a direct role in the organizations religious activities." *Curay-Cramer*, 450 F.3d at 141 (quoting *Little*, 929 F.2d at 951). And given that purpose, the court held that Title VII couldn't apply to a sex-discrimination claim

against a Catholic school because its "ability to create and maintain" such a community "will be jeopardized by a plaintiff's claim of gender discrimination." *Id.*

While this Court attempted to distinguished *Curay-Cramer* by noting that it involved a "pretext claim," Op.10 n.3, other judges have read the Third Circuit's decision more broadly to mean that the exemptions also bar "Title VII claims alleging discrimination on bases other than religion, such as sex." *Fitzgerald*, 73 F.4th at 536 (Brennan, J., concurring) (relying on *Curay-Cramer*); *see also Doe v. Catholic Relief Servs.*, No. 25-cv-1569, 2026 WL 3091963, at *69 (4th Cir. Oct. 16, 2026) (Quattlebaum, J., dissenting) (reading *Curay-Cramer* and *Little* similarly); *Bear Creek*, 571 F. Supp. 3d at 591 (citing *Little*).

This interpretation of the religious exemptions is also supported by a "straightforward reading" of the text. As Judge Easterbrook has explained, the exemption, by its terms, applies to "[t]his subchapter," which "comprises all of Title VII"—including its prohibition on "sex discrimination." *Starkey*, 41 F.4th at 946 (Easterbrook, J., concurring). And "[a]ny temptation to limit this exception to authorizing the employment of co-religionists, and not any other form of religious selectivity, is squelched by the definitional clause in § 2000e(j), which tells us that religion includes 'all aspects of religious observance and practice, as well as belief.'" *Id.*

This interpretation is also consistent with the "alien" exemption contained in the other half of § 2000e-1(a). *Id.* at 947. Like the religious exemption, the alien exemption states that "[t]his subchapter shall not apply to an employer with respect to the employment of aliens outside any State." 42 U.S.C. § 2000e-1(a). So if the religious exemption applied only to religious discrimination, then the alien exemption would apply only to race or national-origin discrimination. But courts haven't interpreted the alien exemption that way. Rather, "[t]hat language has been understood to mean what it says: *none* of Title VII's substantive rules applies to aliens covered by" the statute. *Starkey*, 41 F.4th at 947 (Easterbrook, J., concurring).

This interpretation of the religious exemptions is further confirmed by the religious exemptions Congress has included in other employment statutes. The Pregnant Workers Fairness Act (PWFA), for example, makes it unlawful to deny "reasonable accommodations" related to "pregnancy" and "childbirth." 42 U.S.C. § 2000gg-1. The PWFA doesn't prohibit religious discrimination; yet Congress expressly incorporated Title VII's religious exemption into the PWFA. *Id.* § 2000gg-5(b). Similarly, the Americans with Disabilities Act (ADA) prohibits only "disability" discrimination, *Id.* § 12112(a), not religious discrimination. Yet Congress included a religious exemption with language nearly identical to Title VII's exemption—exempting employment of "individuals of a particular religion." *Id.* § 12113(d)(1). Thus, if the religious exemptions in the PWFA and ADA are to have any meaning at all, they must apply when religious employers make employment decisions based on religion—even when the employee brings a claim of pregnancy or disability discrimination. Otherwise, those religious exemptions would be superfluous. *United States v. Williams*, 917 F.3d 195, 202 (3d Cir. 2019) ("cardinal rule" to "avoid" "render[ing] certain language superfluous").

Given this significant disagreement from other jurists, there is at minimum substantial ground for difference of opinion. In fact, another federal district court recently certified this same question for interlocutory review. *Zinski v. Liberty Univ., Inc.*, No. 24-cv-41, 2025 WL 1001163, at *6 (W.D. Va. Apr. 3, 2025).

***Ministerial exception.*** Reasonable jurists could also disagree with this Court's ministerial-exception holding. This Court held that the ministerial-exception defense "depends on disputed facts that must be determined at trial." Op.17. Specifically, the Court pointed to a mismatch between "the religious expectations set forth" in Aquinas's employment documents—such as the contract, Faculty Handbook, curriculum, training, and performance-evaluation forms—and Mr. Ference's testimony

that, "based on his conversation with the principal during his job interview, he understood none of the religious expectations of the job applied to him." Op.16.

However, this is a common fact-pattern in ministerial-exception cases. Religious employers (and courts) routinely rely on contracts, job descriptions, handbooks, and training manuals as objective evidence of the religious expectations for a job. *Cf. Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 756-57 (2020) (relying on "employment agreements and faculty handbooks"). Employees then try to create factual disputes by testifying that the written expectations didn't apply to them, that they didn't personally carry out those expectations, or that the employer didn't enforce those expectations. But courts have repeatedly rejected this tactic, including in cases involving religious schools.

One example is *Starkey*, 41 F.4th 931. There, the plaintiff was a guidance counselor at a Catholic high school who was dismissed for entering a same-sex marriage. The school argued that she was a minister, citing her contract and job description, which stated that guidance counselors would "[p]ray[] with and for students" and "[c]ommunicate[] the Catholic faith to students and families through implementation of the school's guidance curriculum." *Id.* at 937. The plaintiff, however, testified that "these documents d[id] not describe either her or the school's actual conduct" and were in fact "pretextual." *Id.* at 938, 941. Instead, she testified that "she never engaged in religious matters," that "she would not pray or discuss religion with students," and that her job was entirely secular—providing "academic, college, and career guidance" like counselors in public schools. *Id.* at 936, 941. Based on her conflicting testimony about the expectations for her role, the plaintiff argued that "numerous material factual disputes about [her] job duties" precluded summary judgment. Reply Br., *Starkey*, 2022 WL 522750, at *1.

The Seventh Circuit unanimously disagreed, concluding that the plaintiff's argument "misunderstands the ministerial exception." *Starkey*, 41 F.4th at 941. The

key question is "what an employee is entrusted to do, not simply what acts an employee chooses to perform." *Id.* Thus, even if the employee testifies that she didn't "perform the religious duties she was hired and entrusted to do," she "is still a minister." *Id.* So too here. The fact that Mr. Ference says "[h]e did not infuse religious content into his lessons," "doesn't recall taking communion," and "did not participate in daily prayer," Op.15-16, is immaterial, given that Aquinas's contract, job description, handbook, curriculum, and performance-evaluations entrust him with those important religious responsibilities.

Indeed, in *Our Lady*, the Supreme Court specifically emphasized that "the schools' definition and explanation of [teachers'] roles" in their "employment agreements and faculty handbooks" is "important." 591 U.S. at 756-57. Since then, lower courts have repeatedly relied on such documents, even when plaintiffs offer contradictory testimony, emphasizing that "[i]n determining whether an employee served a religious role, we show deference to the church." *Fitzgerald*, 73 F.4th at 531; *see also Grussgott*, 882 F.3d at 660 ("[W]e defer to the [religious] organization in situations like this one, where there is no sign of subterfuge."); *Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 803 (9th Cir. 2024) ("[T]he Religion Clauses require deference to a 'religious institution's explanation of the role of [its] employees in the life of the religion in question.'"). Courts have shown this deference even when the employee has not violated any religious expectations and has not even been terminated for a religious reason. Such deference is even more appropriate here, where Mr. Ference admittedly engaged in conduct violating fundamental Catholic beliefs and values. At the very least, a reasonable jurist offering deference here could rule for the Diocese.

Courts have also applied the ministerial exception broadly in cases involving teachers in religious schools. The Fourth Circuit's decision in *Billard* is instructive. 101 F.4th 316. There, the plaintiff was a substitute English and drama teacher at a

Catholic high school who was dismissed for entering a same-sex marriage. The district court rejected application of the ministerial exception, concluding that the teacher had no important religious duties: he "did not teach religion in his classes and was not tasked with preparing students for participation in Catholic worship services"; he taught "purely secular subjects," where he "d[id] not have to reference Catholic principles"; he had minimal involvement in any prayer; he "did not have to undergo any religious training"; and he "was not required to be a Catholic or even a Christian to hold his post." *Billard v. Charlotte Catholic High Sch.*, No. 17-cv-11, 2021 WL 4037431, at *14 (W.D.N.C. Sep. 3, 2021). Beyond that, the school had "stipulated not to press the ministerial exception" and therefore "waived the argument." *Billard*, 101 F.4th at 325.

Nevertheless, the Fourth Circuit reversed. It held that the substitute teacher was a minister because he was expected to "conform[] his instruction to Christian thought" (even though the district court found that the school "discourages teachers of secular subjects from instructing students on any sort of religious subject"); he was expected to "begin each class with prayer" (even though the district court found that "sometimes there would be no prayer at all"); and "we deal here with a teacher," and "teachers are different." *Compare id.* at 331-32, *with Billard*, 2021 WL 4037431, at *4, *14.

Here, the ministerial-exception defense is even stronger. Mr. Ference isn't just a substitute drama teacher who occasionally interacts with high school students; he is the daily teacher for impressionable sixth graders. Like Mr. Billard, Mr. Ference was expected to pray before class (ECF 75 ¶ 28), attend Mass with his students (ECF 67 ¶ 30), and incorporate Catholic principles into secular subjects (ECF 75 ¶ 35); indeed, teachers at Aquinas were specifically evaluated on whether they did so (ECF 76-9 at 3, 5, 7, 9). And unlike Mr. Billard, who "did not have to undergo any religious training," *Billard*, 2021 WL 4037431, at *14, Mr. Ference was required to

receive "catechetical training on the Catholic faith … during his first year of employment and continuing" thereafter, ECF 75 ¶ 32. Thus, a reasonable jurist could conclude that Mr. Ference, like Mr. Billard, was a minister. *Cf. Demkovich v. St. Andrew the Apostle Parish*, No. 16-cv-11576, 2019 WL 8356760, at *2 (N.D. Ill. May 5, 2019) (certifying a ministerial-exception question for interlocutory review).

***Church autonomy.*** There are also substantial grounds for difference of opinion on whether the church autonomy doctrine applies in this case. This Court acknowledged that "[t]he ministerial exception is just one application" of the church autonomy doctrine, and that the church autonomy doctrine "is sensitive to a variety of considerations that might make it inappropriate to continue litigating a case, even when the employee is non-ministerial." Op.18. Even so, this court held that the "direct conflict" between Mr. Ference's claim and "the school's ability to implement Catholic views on marriage" was not a "heavy enough" burden "to trigger the church autonomy doctrine." Op.19.

Other courts have reached the opposite conclusion in factually analogous cases—applying church autonomy to bar claims brought by non-ministers who violated a religious employer's religious principles. *Butler v. St. Stanislaus Kostka Catholic Acad.*, 609 F. Supp. 3d 184, 198 (E.D.N.Y. 2022) (applying the "broader" "church autonomy principle" to bar Title VII sex-discrimination claim "[e]ven if [the plaintiff] did not qualify as a ministerial employee"); *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 871-73 (N.D. Ill. 2019); *Aparicio v. Christian Union, Inc.*, No. 18-cv-592, 2019 WL 1437618, at *7, *10 (S.D.N.Y. Mar. 29, 2019); *Payne-Elliott*, 193 N.E.3d at 1013-15; *MoChridhe v. Acad. of Holy Angels*, 29 N.W.3d 753, 760-63 (Minn. Ct. App. 2025).

For example, in *Bryce v. Episcopal Church in the Diocese of Colorado*, a church employee sued under Title VII after she was dismissed for being in a same-sex relationship in violation of the church's beliefs. 289 F.3d 648, 651-52, 660 (10th Cir.

2002). The Tenth Circuit declined to decide whether the plaintiff was a "minister" for ministerial-exception purposes. *Id.* at 658 n.2. Instead, it held that the "broader church autonomy doctrine" "extends beyond the specific ministerial exception" to include "a personnel decision based on religious doctrine." *Id.* at 656-58 & n.2, 660.

Two current Supreme Court justices have also said that church autonomy extends beyond the ministerial exception and applies to claims of employment discrimination based on sexual orientation. *See Seattle's Union Gospel Mission v. Woods*, 142 S. Ct. 1094, 1096 (2022) (Alito, J., joined by Thomas, J., respecting the denial of cert.). As Justices Alito and Thomas explained, the "guarantee of church autonomy" is not "narrowly confined" to "employment decisions regarding formal ministers." *Id.* Rather, "the Constitution protects religious organizations 'from secular control or manipulation.'" *Id.* (quoting *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952)). And far from imposing a minimal burden, Op.19, "forc[ing] religious organizations to hire messengers and other personnel who do not share their religious views would undermine not only the autonomy of many religious organizations but also their continued viability." *Union Gospel*, 142 S. Ct. at 1096.

Other judges share this view. *See, e.g.*, *Union Gospel Mission of Yakima v. Brown*, 162 F.4th 1190, 1197, 1210 (9th Cir.) (church autonomy doctrine "protects Union Gospel's non-ministerial hiring decisions based on religious beliefs"), *reh'g granted*, 181 F.4th 1331 (9th Cir. 2026). These decisions confirm that substantial grounds for difference of opinion exist.

***Expressive association.*** Reasonable jurists could also disagree with this Court's holding on expressive association. While this Court agreed that employing Mr. Ference "constitutes expressive association," it held that Mr. Ference's conduct "would not significantly affect Aquinas Academy's expressive interest" because Mr. Ference could "remain discreet about his marriage at work." Op.23-24.

The Third Circuit has not yet addressed the scope of expressive association in the religious employment context. However, the decisions of other courts offer substantial grounds for disagreeing with this Court's decision. For example, in *Slattery v. Hochul*, the Second Circuit held that a New York law prohibiting employment discrimination based on "reproductive health decision making" would significantly burden the expressive association of a pro-life pregnancy center that refused to employ anyone "who violate[d] its policies against procuring abortions." 61 F.4th 278, 283-84 (2d Cir. 2023). That's because it "imposes severe burdens" to force an expressive association "to employ individuals who act or have acted against the very mission of its organization"—regardless of whether those actions, like procuring an abortion, may be kept private. *Id.* at 288.

Similarly, in *Christian Legal Society v. Walker*, a state university sought to enforce sexual-orientation nondiscrimination rules against a Christian organization that excluded individuals "who engage in or affirm homosexual conduct." 453 F.3d 853, 857 (7th Cir. 2006). But the Seventh Circuit "ha[d] no difficulty concluding" that "[t]here can be no clearer example of an intrusion into the internal … affairs of an association than a regulation that forces the group to accept members it does not desire." *Id.* at 861, 863. That's because an expressive association cannot "sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct." *Id.* at 863.

Other courts have held similarly. *See Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 821 (E.D. Mo. 2018) ("the forced inclusion of teachers or other staff who do not adhere to [Catholic] values would significantly affect the Archdiocesan Elementary Schools' ability to advocate their viewpoints, through its teachers and staff, to their students"); *Bear Creek*, 571 F. Supp. 3d at 614-16 (government cannot "force an association that opposes homosexuality … to hire individuals engaged in that conduct"); *Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163,

1184-85 (D. Colo. 2023) ("significant burden" for "an expressive association [to] be made to associate with a person … espousing contrary views"); *cf. First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 185 (2026) (government "infringe[s] freedom of association" when it "require[s] a group to accept members it does not want"). None of these courts has suggested that the right of expressive association diminishes whenever an individual might keep his conduct "discreet." Op.24; *cf. Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 785 (9th Cir. 2022) (finding burden on expressive association "even if [contestants] tried to keep that fact [that they are not biological females] completely to themselves").

Rather, courts "must" "give deference to an association's view of what would impair its expression." *Dale*, 530 U.S. at 653. Given that required deference, and the substantial difference of opinion among jurists, the Third Circuit could disagree with this Court's expressive-association holding.

If it did so, the Third Circuit would also have strong ground for ruling in the Diocese's favor on strict scrutiny. The Supreme Court has twice held that the nondiscrimination interests underlying public accommodations laws do not outweigh the right to expressive association. *See, e.g.*, *id.* at 657-60; *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., Inc.*, 515 U.S. 557, 578-81 (1995). More broadly, the Supreme Court and lower courts have repeatedly held that however strong the interest in eliminating sexual-orientation discrimination, it does not trump First Amendment protections for religious organizations. *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018); *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

**C. Immediate appeal is likely to materially advance the termination of the litigation.**

Immediate appeal is also likely to advance the termination of this litigation. Certification "materially advance[s] the ultimate termination of the litigation" if it can "eliminate the need for trial." *Rankin v. PTC All. LLC*, No. 21-cv-1321, 2023 WL 8438604, at *4 (W.D. Pa. Dec. 5, 2023). Just so here. As this Court has recognized, if the Diocese's defenses applied, then Mr. Ference's claims would fail. *See Ference*, 2025 WL 4062039, at *4. Thus, a "trial under the current circumstances would not be an efficient use of resources for the parties or the Court." *McClatchey v. Associated Press*, No. 05-cv-145, 2007 WL 1720080, at *2 (W.D. Pa. June 8, 2007).

That is especially true where, as here, a trial presents a risk of "'civil intrusion and excessive entanglement' with matters of faith, doctrine, or governance." *Belya v. Kapral*, 188 F.4th 169, 177-78 (2d Cir. 2026). The ministerial exception and broader church autonomy doctrine both "rest[] on structural, constitutional limitations in the First Amendment," which require that these defenses "be resolved at the earliest conceivable point in litigation" to avoid "judicial entanglement in religious issues." *McRaney*, 157 F.4th at 644, 650. Thus, allowing a case like this to proceed too far can itself "impinge on rights guaranteed by the Religion Clauses." *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 983 (7th Cir. 2021) (en banc).

That is why the overwhelming majority of ministerial-exception cases are resolved at summary judgment or earlier. Both Supreme Court cases on the ministerial exception were resolved on summary judgment. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 180-81 (2012); *Our Lady*, 591 U.S. at 745. All three Third Circuit cases were resolved at summary judgment or earlier.[2] In *Lee v. Sixth Mount Zion Baptist Church*, for example, the district court even

---

2 *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 117-18 (3d Cir. 2018) (summary judgment); *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (same); *Bethea v. Nation of Islam*, 248 F. App'x 331, 332 (3d Cir. 2007) (dismissal).

raised the ministerial exception *sua sponte*, expressing "skeptic[ism] that this matter ultimately could go forward under [the] First Amendment." No. 15-cv-1599, 2017 WL 3608140, at *9, *37 (W.D. Pa. Aug. 22, 2017). In fact, since *Hosanna-Tabor*, courts have issued hundreds of opinions touching on the ministerial exception,[3] with scores of courts resolving the ministerial exception at summary judgment or earlier.[4] But we are aware of only one case that has ever held a trial to resolve the ministerial exception.[5]

---

[3] A search of all federal and state cases on Westlaw for adv: "ministerial exception" & relig! & DA(aft 01-11-2012) returns 500 results.

[4] *See, e.g.*, *Belya*, 188 F.4th at 176-77; *McMahon v. World Vision, Inc.*, 147 F.4th 959, 969-70 (9th Cir. 2025); *Markel* 124 F.4th at 802; *Behrend v. S.F. Zen Ctr., Inc.*, 108 F.4th 765, 767-68 (9th Cir. 2024); *McRaney*, 157 F.4th at 633; *Starkey*, 41 F.4th at 938; *Demkovich*, 3 F.4th at 974; *Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 569 (7th Cir. 2019); *Grussgott*, 882 F.3d at 658-61; *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 422-23 (2d Cir. 2018); *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 198 (2d Cir. 2017); *Conlon*, 777 F.3d at 832; *Cannata v. Catholic Diocese of Aus.*, 700 F.3d 169, 171 (5th Cir. 2012); *Yin v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803, 809-10, 818 (D.S.C. 2018); *Simon v. Saint Dominic Acad.*, No. 19-cv-21271, 2021 WL 6137512, at *4 (D.N.J. Dec. 29, 2021); *Puri v. Khalsa*, 321 F. Supp. 3d 1233, 1247-51 (D. Or. 2018); *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 47 n.3 (D.D.C. 2017); *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1145-46 (D. Or. 2017); *Ciurleo v. St. Regis Parish*, 214 F. Supp. 3d 647, 650 (E.D. Mich. 2016); *Bohnert v. Roman Catholic Archbishop of S.F.*, 136 F. Supp. 3d 1094, 1115 (N.D. Cal. 2015); *Herx v. Diocese of Fort Wayne-S. Bend*, 48 F. Supp. 3d 1168, 1177 (N.D. Ind. 2014); *Davis v. Balt. Hebrew Congregation*, 985 F. Supp. 2d 701, 711 (D. Md. 2013); *Doe v. Corp. of Catholic Bishop of Yakima*, 957 F. Supp. 2d 1225, 1232 (E.D. Wash. 2013); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 674-75 (N.D. Ill. 2012).

[5] The trial occurred in *Butler v. JSerra Catholic High Sch.*, No. 25-cv-1430, 2026 WL 2058163, at *5 (C.D. Cal. May 12, 2026), where the court held (incorrectly) that "the application of the ministerial exception is a question of fact for the jury to decide." That trial ultimately required the jury to decide whether the Catholic school's "religious reason was applied in such a manner that similarly situated individuals outside of [the plaintiff's] sex were treated more favorably," Jury Instructions at 13, ECF 146—the exact inquiry forbidden under *Curay-Cramer*, 450 F.3d at 139.

Given this broad consensus applying the ministerial exception at summary judgment or earlier, there is no meaningful precedent to guide this Court on how to conduct a jury trial on the ministerial exception without civil intrusion into religious matters. *Cf.* ECF 102 (ordering conference to discuss "the appropriate procedural vehicle for resolving Defendants' ministerial exception defense given the open factual disputes"). With weighty constitutional issues at stake, and a significant risk of "irreparable harm" to structural constitutional rights caused by "the very process" of adjudication, *McRaney*, 157 F.4th at 655, it would be appropriate to certify the Court's order for interlocutory appeal to determine whether such an unprecedented trial is needed.

## II. Alternatively, the Court should reconsider its ruling and grant summary judgment to the Diocese.

If the court declines to certify the issues raised by the order for immediate appeal under 28 U.S.C. § 1292(b), the Diocese respectfully requests that the court reconsider its summary judgment decision.

To prevail on a motion for reconsideration, a party must show one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). For the reasons explained in Part I.B above, as well as the Diocese's summary judgment briefing and objections to the magistrate judge's report and recommendation, reconsideration is warranted to correct clear errors of law on the interpretation of Title VII's religious exemption and the Diocese's First Amendment defenses.

## CONCLUSION

The Court should grant Defendants' motion for certification under § 1292(b) and stay further proceedings pending appeal. *See CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 120 (M.D. Pa. 2021) ("courts have routinely granted a stay where they have certified an order for interlocutory appeal") (collecting cases).

Date: October 21, 2026

Respectfully submitted,

/s/ *Luke W. Goodrich*

Luke W. Goodrich (DC 977736)*
Laura Wolk Slavis (DC 1643193)*
Richard C. Osborne (DC 90024046)*
Hannah S. Wander (DC 90040200)*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
Suite 400
Washington, DC 20006
(202) 955-0095
lgoodrich@becketfund.org

**Admitted pro hac vice*

Bernard P. Matthews, Jr. (PA 54880)
Meyer, Darragh, Buckler,
Bebenek & Eck, PLLC
40 North Pennsylvania Ave.
Suite 410
Greensburg, PA 15601
(724) 836-4840
bmatthews@mdbbe.com

Philip J. Murren (PA 21426)
Katherine M. Fitz-Patrick (PA 208863)
Ball, Murren & Connell, LLC
2303 Market Street
Camp Hill, PA 17011
(717) 232-8731
bmc-law2@msn.com